KLEIN, DENATALE, GOLDNER,
   COOPER, ROSENLIEB & KIMBALL, LLP
Hagop T. Bedoyan, Esq. (CA Bar No. 131285)
5260 North Palm Avenue, Suite 217
Fresno, California 93704
Telephone:    (559) 438-4374
Facsimile:    (559) 432-1847

Attorneys for Debtor-in-Possession
LIGHTHOUSE LODGE, LLC

JEFFER, MANGELS, BUTLER & MARMARO LLP
Robert B. Kaplan, Esq. (CA Bar No. 76950)
Nicolas De Lancie, Esq. (CA Bar No. 84934)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone:    (415) 398-8080
Facsimile:    (415) 392-5584

Attorneys for Secured Creditor
ORIX CAPITAL MARKETS, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

|  |  |
|---|---|
| In re: | Case No. 09-52610 |
| LIGHTHOUSE LODGE, LLC, | Chapter 11 |
| Debtor-in-Possession. | Date:    February 11, 2010<br>Time:    2:00 p.m.<br>Place:    United States Bankruptcy Court<br>            280 S. First Street<br>            San Jose, California<br>Judge:    Honorable Robert L. Efremsky |

## JOINT DISCLOSURE STATEMENT FOR

### (1) DEBTOR'S PLAN OF REORGANIZATION
**(Dated December 21, 2009)**

### AND

### (2) ORIX CAPITAL MARKETS, LLC,
### CREDITOR'S PLAN OF LIQUIDATION
**(Dated December 21, 2009)**

JOINT DISCLOSURE STATEMENT
948198v2

**TABLE OF CONTENTS**

DISCLAIMER..............................................................................................................1

SECTION I    INTRODUCTION ...........................................................................3
    A.    Proponents. ....................................................................................3
    B.    Filing of Plans. ...............................................................................3
    C.    Filing of Joint Disclosure Statement .............................................3
    D.    Incorporated Terms and Construction Provisions. .......................3
    E.    Exhibits and Accompanying Items. ...............................................4
    F.    Approval of Joint Disclosure Statement. .......................................4
    G.    Right to Vote on Plans..................................................................5
        1.    Debtor's Plan. ...................................................................5
        2.    Creditor's Plan. .................................................................5
    H.    Acceptance of Plans.......................................................................5
    I.    "Cram-Down" Right. .....................................................................6
    J.    Vote Recommendation. ..................................................................6
        1.    Debtor's Plan. ...................................................................6
        2.    Creditor's Plan. .................................................................7
    K.    Voting Instructions. .......................................................................7
    L.    Ballot Problems and Questions .....................................................8
        1.    Debtor's Plan. ...................................................................8
        2.    Creditor's Plan. .................................................................8
    M.    Confirmation Hearing. ...................................................................8

SECTION II    DESCRIPTION OF THE PLANS ..................................................9
    A.    Introduction....................................................................................9
    B.    Debtor's Plan. ................................................................................9
    C.    Creditor's Plan. ...........................................................................11
        1.    Generally. .........................................................................11
        2.    Appointment and Tasks of Liquidating Agent. ...............12
        3.    Management of Real Property until Closing. ...................12
        4.    Effective Date Exit Financing Advance. .........................12
        5.    Treatment of Financial Pacific Claim (Class B2).............13
        6.    Treatment of Other Secured Claims (Class B3). ..............13
        7.    Treatment of Allowed Nonclassified Priority Claims, Allowed General Priority Claims (Class A1), and Allowed General Unsecured Claims (Class C1). ...............................................................14
        8.    Treatment of Allowed Gift Certificate Priority Claims (Class A2)...........14
        9.    Funding of Operations and Payments from Rents. ..........14
        10.    ORIX Adequate Protections Payments.............................15
        11.    Sale of Lodge and Other Sale Assets. .............................15
        12.    Expenses of Sale and Reserves Withheld from Sale Proceeds. ................17
        13.    Determination of Taxes Due on Account of Sale and Tax Reserve. .........17
        14.    Treatment of ORIX Secured Claim (Class B1). ..............18
        15.    Treatment of Allowed Insider Unsecured Claims (Class C2). ..................20
        16.    Possible Supplemental Payment to Allowed General Unsecured Claims (Class C1)..........20
        17.    Possible Supplemental Payment to Allowed Insider Unsecured Claims (Class C2). ..........21
        18.    Treatment of Interests (Class D)......................................21

Case: 09-53610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 2 of 69

D.      Classification and Treatment of Claims. ................................................21
E.      Other Material Elements of Plans. .....................................................27
      1.     Debtor's Plan. ..........................................................................27
      2.     Creditor's Plan. ........................................................................27

SECTION III   INFORMATION REGARDING THE DEBTOR .......................................31

A.      The Debtor. ..........................................................................................31
B.      The Lodge. ...........................................................................................32
C.      Events Leading to Commencement of Chapter 11 Case. ....................34

SECTION IV   SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE .....................34

A.      Continuation of Business; Stay of Litigation. .....................................34
B.      No Official Unsecured Creditors' Committee. ....................................35
C.      Representation of the Debtor. ..............................................................35
D.      Use of Cash Collateral. .......................................................................35
E.      Exclusivity. ..........................................................................................36
F.      Bar Date for Filing Proofs of Claim. ..................................................37
G.      Plans Filed. ..........................................................................................37
H.      Debtor's Consideration of Refinancing or Sale of the Lodge. ...........37

SECTION V   DEBTOR'S ASSETS AND LIABILITIES...........................................37

A.      Assets. ..................................................................................................37
B.      Liabilities. ............................................................................................38

SECTION VI   CONFIRMATION AND CONSUMMATION PROCEDURE ..........................40

A.      Solicitation of Votes. ...........................................................................40
B.      Confirmation Hearing. .........................................................................41
C.      Confirmation. .......................................................................................41
      1.     Acceptance. ...............................................................................41
      2.     Unfair Discrimination and Fair and Equitable Tests. ..............42
           a)      Secured Creditors. ....................................................42
           b)      Unsecured Creditors. ...............................................42
           c)      Equity Interests. ......................................................42
      3.     Feasibility. ................................................................................42
      4.     Best Interests of Creditors. ......................................................43
D.      Consummation. ....................................................................................44
E.      Effect of Confirmation of the Plan. .....................................................45

SECTION VII   MANAGEMENT OF REORGANIZED DEBTOR OR ESTATE .....................45

A.      Debtor's Plan. ......................................................................................45
B.      Creditor's Plan. ....................................................................................45
      1.     Liquidating Agent. ...................................................................45
C.      Manager. ..............................................................................................45

SECTION VIII   CERTAIN RISK FACTORS TO BE CONSIDERED .......................................46

A.      Certain Bankruptcy Law Considerations. ...........................................46
      1.     Risk of Non-Confirmation of the Plan. ...................................46
      2.     Non-Consensual Confirmation. ...............................................46
B.      Certain Risks Related to the Plans. .....................................................46

Case: 09-53610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 3 of 69

SECTION IX  PROJECTED RESULTS AND LIQUIDATION ALTERNATIVES ...................47
    A.    Projected Revenues and Performance. ....................................................47
    B.    Projected Recoveries. ..........................................................................48
    C.    Liquidation Alternative.........................................................................48

SECTION X  CONCLUSION AND RECOMMENDATION ....................................................50

EXHIBIT A    THE OPERATING RESULTS AND THE BUDGET

Case: 09-53610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 4 of 69

## DISCLAIMER

ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ENCOURAGED TO READ THIS JOINT DISCLOSURE STATEMENT AND THE PLANS IN THEIR RESPECTIVE ENTIRETIES. SUMMARIES OF THE PLANS AND STATEMENTS MADE IN THIS JOINT DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLANS, THE EXHIBIT ANNEXED HERETO, EXHIBITS TO THE PLANS, AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION, PRIOR TO OR CONCURRENT WITH THE FILING OF THIS JOINT DISCLOSURE STATEMENT OR PRIOR TO THE CONFIRMATION HEARING. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (I) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN ARE MATERIALLY ACCURATE, OR (II) THIS JOINT DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION. ALL CLAIMANTS AND EQUITY INTEREST HOLDERS SHOULD READ CAREFULLY AND CONSIDER FULLY SECTION VIII (CERTAIN RISK FACTORS TO BE CONSIDERED) HEREOF BEFORE VOTING FOR OR AGAINST EITHER OF THE PLANS.

THE RESPECTIVE PROPONENT OF EACH PLAN BELIEVES THAT CONFIRMATION OF THE PLAN PROPOSED BY IT IS IN THE BEST INTERESTS OF ALL OF ITS CREDITORS AND RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THAT PLAN.

THE COURT HAS APPROVED THIS JOINT DISCLOSURE STATEMENT, BUT THAT APPROVAL DOES NOT CONSTITUTE A DETERMINATION OF THE MERITS OF EITHER OF THE PLANS DESCRIBED HEREIN. THE APPROVAL OF THIS JOINT DISCLOSURE STATEMENT MEANS ONLY THAT THE COURT HAS FOUND THAT THIS JOINT DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT CREDITORS AND EQUITY INTEREST HOLDERS OF THE DEBTOR TO

Case: 09-53610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 5 of 69

MAKE A REASONABLY INFORMED DECISION IN EXERCISING THEIR RIGHT VOTE ON THE PLANS.

THIS JOINT DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING OR REJECTING EITHER OF THE PLANS. NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS BUSINESS OPERATIONS, THE VALUE OF ITS ASSETS, OR THE VALUE OF ANY SECURITIES TO BE ISSUED OR BENEFITS OFFERED PURSUANT TO EITHER OF THE PLANS ARE AUTHORIZED BY THE COURT EXCEPT AS EXPLICITLY SET FORTH IN THIS JOINT DISCLOSURE STATEMENT OR IN ANY OTHER DOCUMENT APPROVED FOR DISTRIBUTION BY THE COURT.

THIS JOINT DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), ANY STATE SECURITIES COMMISSION, OR ANY OTHER REGULATORY AUTHORITY, NOR HAS THE SEC OR ANY SUCH OTHER COMMISSION OR AUTHORITY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NEITHER PROPONENT IS ABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION CONTAINED IN THIS JOINT DISCLOSURE STATEMENT OR IN EXHIBITS ATTACHED HERETO IS WITHOUT ERROR, ALTHOUGH ALL REASONABLE EFFORTS UNDER THE CIRCUMSTANCES HAVE BEEN MADE TO BE ACCURATE. IN PARTICULAR, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE PROPONENTS NOTE THAT THE ASSUMPTIONS AND PROJECTIONS OF FUTURE PERFORMANCE AND ALTERNATIVE SCENARIOS ARE ONLY PREDICTIONS OF FUTURE OR HYPOTHETICAL EVENTS, MOST OF WHICH ARE BEYOND EITHER OF THE PROPONENT'S CONTROL, AND, THEREFORE, THERE CAN BE NO ASSURANCES THAT THE ASSUMPTIONS WILL IN FACT MATERIALIZE OR THAT THE PROJECTIONS WILL IN FACT BE MET.

Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 6 of 69

**SECTION I**

I.    Introduction

A.    <u>Proponents</u>.

Lighthouse Lodge, LLC (the "Debtor"), a California limited liability company, is the debtor and debtor-in-possession in the Chapter 11 Case. The Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the Court on April 9, 2009, and thereby commenced the Chapter 11 Case. The Debtor is the proponent of the Debtor's Plan (defined below).

ORIX Capital Markets, LLC ("ORIX"; and the Debtor and ORIX, together, the "Proponents"), is one of the Debtor's creditors. ORIX is the proponent of the Creditor's Plan (defined below).

B.    <u>Filing of Plans</u>.

The Debtor has filed its Debtor's Plan of Reorganization (Dated December 21, 2009) (the "Debtor's Plan") with the Court in the Chapter 11 Case.

ORIX has filed its ORIX Capital Markets, LLC, Creditor's Plan of Liquidation (Dated December 21, 2009) (the "Creditor's Plan"; and the Debtor's Plan and the Creditor's Plan, together, the "Plans") with the Court in the Chapter 11 Case.

C.    <u>Filing of Joint Disclosure Statement</u>.

The Proponents have jointly filed this Joint Disclosure Statement for (1) Debtor's Plan of Reorganization (Dated December 21, 2009); and (2) ORIX Capital Markets, LLC, Creditor's Plan of Liquidation (Dated December 21, 2009) (this "Joint Disclosure Statement") with the Court in the Chapter 11 Case pursuant to Bankruptcy Code § 1125, for distribution to holders of Claims and Interests in connection with (i) the solicitation of acceptances or rejections of each of the Plans; and (ii) the confirmation hearing (the "Confirmation Hearing") to be scheduled by the Court on the Plans.

D.    <u>Incorporated Terms and Construction Provisions</u>.

All capitalized terms used but not defined in this Joint Disclosure Statement shall have the meanings ascribed to such terms in the Creditor's Plan.

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 7 of 69

1
Any term used but not defined herein which is defined in the Bankruptcy Code shall have the meaning given such term in the Bankruptcy Code. Any term used but not defined herein or in the Bankruptcy Code which is defined in the Bankruptcy Rules shall have the meaning given such term in the Bankruptcy Rules.

The words "herein", "hereof", "hereto", "hereunder", and the like refer to this Joint Disclosure Statement as a whole and not to any particular section, subsection, or clause contained in this Joint Disclosure Statement, unless otherwise indicated.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural; and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

The word "or" is not exclusive; the words "may not" and the construct "neither ... may" are prohibitive; and the word "including" and the like are not limiting.

E.    Exhibits and Accompanying Items.

Attached as collective **Exhibit A** to this Joint Disclosure Statement are (i) the Debtor's actual operating results for January through November 2009 (collectively, the "Operating Results"); and (ii) the Debtor's operating budgets for the calendar years 2010 and 2011 and the 2012 year ending in September, 2012 (collectively, the "Budget").

In addition, a Ballot is enclosed with this Joint Disclosure Statement submitted to the holders of Claims and Interests that either of the Proponents believes may be entitled to vote to accept or reject either of the Plans.

F.    Approval of Joint Disclosure Statement.

After notice and a hearing, the Court has approved this Joint Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable, investors typical of the holders of Claims or Interests to make an informed judgment whether to accept or reject either of the Plans. Each holder of a Claim or Interest entitled to vote to accept or reject either of the Plans should read this Joint Disclosure Statement and the Plans in their respective entireties before voting on the Plans.

Case: 09-52510    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 8 of 69

G. Right to Vote on Plans.

Pursuant to Bankruptcy Code § 1126, only holders of Allowed Claims or Interests in Classes of Claims or Interests that are impaired under each of the Plans are entitled to vote to accept or reject that Plan. Holders of Allowed Claims or Interests in Classes of Claims or Interests that are unimpaired under one of the Plans are conclusively presumed to have accepted that Plan (but not the other Plan) and therefore are not entitled to vote with respect to that Plan (but may be entitled to vote on the other Plan).

1. Debtor's Plan.

The Debtor believes that (i) holders of Claims in Classes 1, 2B, 3A, 4A, and holders of Interests in Class 7 of the Debtor's Plan are unimpaired, are thus conclusively presumed to have accepted that Plan, and therefore do not have the right to vote on that Plan; and (ii) holders of Claims in Classes 2A, 5 and 6 are impaired under the Debtor's Plan, and are thus entitled to vote to accept or reject that Plan.

2. Creditor's Plan.

ORIX believes that (i) holders of Claims in Classes A1 (General Priority Claims), A2 (Gift Certificate Priority Claims), B2 (Financial Pacific Secured Claim), B3 (Other Secured Claims), and C1 (General Unsecured Claims) of the Creditor's Plan are unimpaired, are thus conclusively presumed to have accepted that Plan, and therefore do not have the right to vote on that Plan; and (ii) holders of Claims in Classes B1 (ORIX Secured Claim) and C2 (Insider Unsecured Claims), and holders of Interests in Class D are impaired under the Creditor's Plan, and are thus entitled to vote to accept or reject that Plan.

H. Acceptance of Plans.

Bankruptcy Code § 1126(c) defines "acceptance" of a plan by a class of claims as acceptance by creditors in such class that hold at least two-thirds in dollar amount and more than one-half in number of claims in such class which cast ballots for acceptance or rejection of the plan. Bankruptcy Code § 1126(d) defines "acceptance" of a plan by a class of interests as acceptance by holders of interest in that class that hold at least two-thirds in amount of the allowed interests of such class that cast ballots for acceptance or rejection of the plan. For a more complete description of the

Case: 09-52810   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 9 of 69

requirements for confirmation of the Plans, see Section VI (Confirmation and Consummation Procedure) hereof.

I.    "Cram-Down" Right.

As to each of the Plans, if a Class of Claims or Interests rejects that Plan or is deemed to reject that Plan, the Proponent of that Plan has the right, and intends, to request confirmation of that Plan pursuant to Bankruptcy Code § 1129(b). Section 1129(b), known as the "cram-down" provision, permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims or interests if the proponent thereof complies with the provisions of that section. Under that section, a plan, may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class. For a more detailed description of the requirements for confirmation of a nonconsensual plan, see Section 2 (Unfair Discrimination and Fair and Equitable Tests) in Section VI (Confirmation and Consummation Procedure) hereof.

J.    Vote Recommendation.

As described herein, the Proponent of each Plan believes that the Plan proposed by it (i) provides the greatest and earliest possible recoveries to holders of Allowed Claims; (ii) that holders of Allowed Claims will obtain a substantially greater recovery upon their Claims than the recovery that would be available if the assets of the Debtor were liquidated now under Chapter 7 of the Bankruptcy Code; (iii) that acceptance of the Plan proposed by it is in the best interests of all holders of Allowed Claims; and (iv) that any available alternative would result in substantial delay, uncertainty, expense, and, ultimately, smaller or no distributions to holders of Allowed Claims.

1.    Debtor's Plan.

The Debtor believes that through the Debtor's Plan, holders of Allowed Claims, other than the Class 6 claim of Geneva Real Estate, will also likely obtain a full recovery upon their Claims. Under the Debtor's Plan, the holder of the Class 6 claim has a much greater possibility of getting paid in full since (i) it will receive an income stream totaling $318,920.00; and (ii) a sale of the Debtor's sole asset, the Lighthouse Lodge & Suites, located in Pacific Grove, California (the "Property") will not have to immediately occur in the current depressed market for hotel properties.

1 Therefore, the Debtor believes that after carefully reviewing the Debtor's Plan and this Joint
2 Disclosure Statement, each holder of an Allowed Claim that is entitled to vote with respect to the
3 Debtor's Plan should vote to accept that Plan and to reject the Creditor's Plan.

4         2.        <u>Creditor's Plan.</u>

5        ORIX believes that through the Creditor's Plan, holders of Allowed Claims, other than
6 Claims in Class C2 (Insider Unsecured Claims), will also obtain a full recovery upon their Claims,
7 and will do so substantially earlier than under the Debtor's Plan and with no risk since ORIX will be
8 funding the amounts necessary to pay those Allowed Claims in full on the Effective Date. Therefore,
9 ORIX believes that after carefully reviewing the Creditor's Plan and this Joint Disclosure Statement,
10 each holder of an Allowed Claim (other than an Insider Unsecured Claim) that is entitled to vote
11 with respect to the Creditor's Plan should vote to accept that Plan and to reject the Debtor's Plan.
12 ORIX does state a belief as to how holders of Insider Unsecured Claims should vote.

13         K.        <u>Voting Instructions.</u>

14        If you are entitled to vote to accept or reject either of the Plans, a Ballot is enclosed for the
15 purpose of voting on the Plans on which you are entitled to vote. If you hold a Claim or Interest in
16 more than one Class under one of the Plans and you are entitled to vote Claims or Interests in more
17 than one Class under that Plan, you may submit separate ballots that must be used for each separate
18 Class of Claims or Interests. You may vote to accept one of the Plans and reject the other, to accept
19 both of the Plans, or to reject both of the Plans.

20        **WHEN RETURNING YOUR BALLOT(S), DO NOT RETURN YOUR NOTES,**
21 **SECURITIES, OR OTHER DOCUMENTS EVIDENCING YOUR CLAIM OR INTEREST**
22 **WITH YOUR BALLOT(S). FURTHER, TO BE COUNTED, YOUR BALLOT(S)**
23 **INDICATING ACCEPTANCE OR REJECTION OF THE PLAN ON WHICH YOU ARE**
24 **VOTING MUST BE RECEIVED NO LATER THAN THE TIME AND DATE STATED ON**
25 **THE BALLOT.**

26
27
28

Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 11 of 69

Please vote and return your Ballot(s) as follows:

LIGHTHOUSE LODGE PLANS OF REORGANIZATION
c/o Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP
Attn: Hagop T. Bedoyan, Esq.
5260 North Palm Avenue, Suite 201
Fresno, California 93704

L.     Ballot Problems and Questions

    1.     Debtor's Plan.

If you are the holder of a Claim or Interest entitled to vote the Debtor's Plan and did not receive a Ballot for that Plan, received a damaged Ballot for that Plan, or have lost your Ballot for that Plan, or if you have any questions concerning this Joint Disclosure Statement, either of the Plans, or the procedures for voting for or against either of the Plans that you wish to address to a representative of the Debtor, please call Hagop T. Bedoyan, Esq., the Debtor's counsel, at (559) 438-4374.

    2.     Creditor's Plan.

If you are the holder of a Claim or Interest entitled to vote the Creditor's Plan and did not receive a Ballot for that Plan, received a damaged Ballot for that Plan, or have lost your Ballot for that Plan, or if you have any questions concerning this Joint Disclosure Statement, either of the Plans, or the procedures for voting for or against either of the Plans which you wish to address to a representative of ORIX, please call Robert B. Kaplan, Esq., one of ORIX's counsel, at (415) 398-8080.

M.     Confirmation Hearing.

Pursuant to Bankruptcy Code § 1128, the Confirmation Hearing on the Plans will be commenced on the date set forth in documents provided with this Joint Disclosure Statement before the Honorable Robert Efremsky, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of California located at the United States Courthouse, 280 S. First Street, San Jose, California. The Court has directed that objections, if any, to confirmation of either of the Plans be served and filed so that they are received on or before the deadline stated in such documents, in the manner described below in Section B (Confirmation Hearing) in Section VI (Confirmation and Consummation Procedure) hereof. The Confirmation Hearing may be adjourned

from time to time by the Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

## SECTION II

II.  Description of the Plans

A.  Introduction.

Bankruptcy Code § 1121 provides, generally, that only a debtor may file a plan within the first one hundred twenty (120) after the order for relief is entered in a bankruptcy case. If a debtor does not file a plan within this exclusive period and does not obtain an extension of this exclusivity, any party in interest may thereafter file a plan. The Debtor did not file a plan in the Chapter 11 Case within its exclusive period, nor did it seek an extension of the "exclusivity" period.

On December 21, 2009, (i) the Debtor filed the Debtor's Plan with the Court in the Chapter 11 Case; and ORIX filed the Creditor's Plan with the Court in the Chapter 11 Case. Both will be voted on and considered for confirmation together.

Both of the Plans deal with the Debtor's principal asset—the Real Property—which consists of a hotel (the "Lodge") known as the "Lighthouse Lodge and Suites", located at 1150 and 1249 Lighthouse Avenue, Pacific Grove, California, and the furniture, fixtures, and equipment with which it is outfitted. The Lodge consists of 64 rooms and 31 suites. Revenues are generated through guest room bookings, meeting room rentals, food and beverage services, and other guest services such as telephone and Internet use.

B.  Debtor's Plan.

The Debtor's Plan provides that the Debtor will use cash on hand and future revenues generated by the Lodge to maintain monthly principal and interest payments to ORIX at the non-default contractual rate of nine percent (9%) in the approximate amount of $71,542.00 until such time as the Lodge is sold on or before October 1, 2012. Until such time as the Lodge is sold, the Debtor will use cash on hand and Lodge revenues to pay in full all unclassified claims (administrative claims, professional fees and United States Trustee's fees), priority tax claims and all general unsecured claims, other than the Class 6 unsecured claim of Geneva Real Estate, either on

the Effective Date of the Plan or in monthly payments through September 1, 2012. The unclassified claim of the City of Pacific Grove for delinquent taxes will be paid in full with interest at six percent (6%) per annum from the Effective Date of the Plan. The general unsecured claims in Class 5 (e.g., vendors, etc.) will be paid in full without interest in monthly payments starting on June 1, 2010 and continuing through September 1, 2012.

The Debtor estimates that Class 2A impaired claim held by ORIX is approximately $8,606,322.00 as of November 30, 2009. This secured claim on the Confirmation Date shall include the $8,606,322.00 amount, interest at the contract rate of nine percent (9%), reasonable attorneys' fees and costs as allowed by the Debtor's contract with ORIX at the time of the Confirmation Date less payments made to that point. Payments in excess of interest accrual shall reduce principal. The loan shall be "decelerated" and the original maturity date of October 1, 2009, shall be extended to October 1, 2012. No default interest at the default rate or late charges shall accrue from the time of the initial default on December 1, 2008. The secured claim of ORIX is an over secured claim and is therefore entitled to prepetition and post petition interest, fees and costs, including reasonable attorneys' fees. Reasonable attorneys' fees and costs as allowed by the ORIX contract shall be added to the principal amount at the time of the Confirmation Date and shall begin to accrue interest at the rate of nine percent (9%) per annum. The total of the principal balance at the Confirmation Date and the allowed attorneys' fees and costs at the Confirmation Date shall be amortized from the Effective Date of the Plan over a period of 360 months in equal monthly principal and interest payments of $71,542.40, accruing interest at the rate of 9% per annum with the first payment due on the first day of the first full calendar month after the Effective Date of the Plan and continuing on that same day each succeeding month with the entire obligation due and payable on October 1, 2012. If the Lodge, which serves as the collateral for the ORIX obligation, has not been sold or refinanced by the Debtor by October 1, 2012, an auction shall take place, the Property sold and the proceeds used to fund this Plan. The loan agreement with ORIX shall be modified to reflect the above provisions and shall be further modified to incorporate the following terms:

    1.    The interest preservation provision shall be extended to October 1, 2012;

2. The Debtor will continue to pay its taxes by depositing with ORIX as a reserve the monthly amount of $11,006.41 for the April 2010 real property tax payment due to the County of Monterey. On April 1, 2010 and each succeeding April 1, the real property tax due for the following year shall be estimated and divided by 12. Beginning April 1, 2010, the 1/12th payment of the estimate tax shall be paid to ORIX every month for the payments beginning April 1, 2010;

3. The reserve for repair and maintenance ("FF&E") provision shall be eliminated.

4. The debt service reserve provision shall be eliminated;

5. The current monthly insurance reserve payments paid to ORIX will be discontinued after January, 2010. Thereafter, the Debtor will make its insurance reserve premiums annually by depositing with ORIX on July 1, 2010, and each July 1 thereafter, the entire insurance premium due in October of each respective year. The first insurance premium payment that will be paid on July 1, 2010 is $45,800.00; and

6. Any "prepayment penalty" provision shall be eliminated.

The Class 6 impaired unsecured claim of Geneva Real Estate in the amount of $5,511,392.00 will receive monthly payments commencing on June 1, 2010, with such payments to continue until the Lodge is sold, or September 1, 2012, whichever occurs first.

All other classes of creditors and holders of equity interests under the Debtor's Plan are unimpaired.

C. **Creditor's Plan.**

1. **Generally.**

ORIX does not believe that the Debtor's Plan is in the best interests of Creditors and that the Debtor's Plan cannot be confirmed over ORIX's objection. Accordingly, ORIX has filed its own plan—the Creditor's Plan—which is designed (i) to pay all Allowed Nonclassified Priority Claims, all Allowed General Priority Claims (Class A1), all Allowed Gift Certificate Priority Claims (Class A2), the Financial Pacific Secured Claim (Class B2), all Other Secured Claims (Class B3), and all Allowed General Unsecured Claims (Class C1) in full on the Effective Date Payment Date with respect to each of those Claims; and (ii) within what ORIX believes is a reasonable period of time, to maximize possible recoveries for, (A) first, the holder (ORIX) of the ORIX Secured Claim

(Class B1); (B) then, the holders of the Allowed Insider Unsecured Claims (Class C2); and (C) finally, the holders of the Interests (Class D).

2.    Appointment and Tasks of Liquidating Agent.

Under the Creditor's Plan, a Liquidating Agent will be appointed by the Court and will enter into a Liquidating Agent Agreement with ORIX as the Proponent of the Creditor's Plan. The Liquidating Agent will have the responsibility for (i) paying the Allowed Claims to be paid in full on the Effective Date under the Creditor's Plan; (ii) supervising the management of the Real Property until it is sold under the Creditor's Plan; (iii) filing and prosecuting objections to Claims within Classes A, B2, or C as provided in the Creditor's Plan; (iv) selling the Real Property at an auction sale pursuant to the Sale Procedure under the Creditor's Plan (the Sale is to occur approximately 60 days after the Effective Date, subject to extension by agreement between the Liquidating Agent and ORIX); (v) if the Sale is for Cash (that is, to a purchaser that bids more for the Real Property than the highest credit bid for the Real Property made by ORIX as the holder of the ORIX Secured Claim), disbursing (A) the Net Proceeds of the Sale to ORIX as that holder (up to the amount of the ORIX Secured Claim); and (B) the Insider Unsecured Claims Net Proceeds, if any, to the holders of the Allowed Insider Unsecured Claims (up to the respective amounts thereof); and (vi) making final disbursements of funds on hand and winding-up the Estate, all as provided in the Creditor's Plan.

3.    Management of Real Property until Closing.

Until the Closing, the Real Property will be managed by a Manager appointed by the Liquidating Agent with the consent of ORIX, which consent is not unreasonably to be withheld, pursuant to a Management Agreement into which the Liquidating Agent and the Manager will enter pursuant to the Creditor's Plan.

4.    Effective Date Exit Financing Advance.

On the Effective Date, ORIX will advance under the ORIX Loan Documents and the Creditor's Plan, as part of the ORIX Secured Claim, the Effective Date Exit Financing Advance to provide sufficient funds to pay all Allowed Nonclassified Priority Claims, all Allowed General Priority Claims, all Allowed Gift Certificate Priority Claims, the Financial Pacific Secured Claim, all Other Secured Claims, and all Allowed General Unsecured Claims in full on the Effective Date and

provide for a Disputed Claims Reserve with respect thereto for Claims of those types that are Disputed Claims.

5.     <u>Treatment of Financial Pacific Claim (Class B2)</u>.

One Creditor—Financial Pacific—is the "lessor" of certain equipment to the Debtor used in connection with the Lodge under the Financial Pacific Lease. ORIX believes that the Financial Pacific "lease" is actually a disguised financing transaction under applicable law, and that Financial Pacific is thus actually a Creditor that holds a security interests in the "leased" equipment. Financial Pacific will have an Allowed Secured Claim in the amount of the lesser of the amount of its Claim or the value of the equipment that secures its Claim, as determined by agreement or by the Court, and the Liquidating Agent will pay the Financial Pacific Secured Claims in full on the Effective Date Payment Date with respect to that Claim. That payment is anticipated to be less than the total amount of the Financial Pacific Claim, but any deficiency therein that is allowed will be an Allowed General Unsecured Claim that will be paid in full as provided by the Creditor's Plan and set forth below provided that a proof of claim in respect thereof is filed as required by the Creditor's Plan.

6.     <u>Treatment of Other Secured Claims (Class B3)</u>.

If there are any Other Secured Claims—ORIX does not believe there are—the holder of each of those Claims will, at the election of ORIX, either (i) be paid by the Liquidating Agent the amount of that Claim as of the Effective Date (that amount is limited by the value of the Collateral for that Claim and Collateral release documents will be required as a condition of that payment) on the Effective Date Payment Date with respect to that Claim; (ii) be permitted to remove, after the Effective Date, at its own cost and peril and without damage to the Real Property or any other property of the Estate, and at a time mutually convenient to that holder and the Liquidating Agent, the Collateral for that Claim, which will be deemed abandoned to that holder; or (iii) have the legal, equitable, and contractual rights to which that Claim entitles that holder left unaltered. Under either clause (i) or (ii), any deficiency remaining that is allowed will be an Allowed General Unsecured Claim that will be paid in full as provided by the Creditor's Plan and set forth below provided that a proof of claim in respect thereof is filed as required by the Creditor's Plan.

948198v2

7.  Treatment of Allowed Nonclassified Priority Claims, Allowed General Priority Claims (Class A1), and Allowed General Unsecured Claims (Class C1).

On the Effective Date Payment Date with respect to each of these Claims, the Liquidating Agent will pay the holder of each Allowed Nonclassified Priority Claim (including each Allowed Priority Tax Claim), each Allowed General Priority Claim, and each Allowed General Unsecured Claim the amount of that Claim in full.

8.  Treatment of Allowed Gift Certificate Priority Claims (Class A2).

Between the Effective Date and the Closing, the holder of each Allowed Gift Certificate Priority Claim will retain all of the legal, equitable, and contractual rights to which that Claim entitles that holder (*i.e.*, the Liquidating Agent shall honor the Gift Certificate held by that holder that underlies that Claim, up to the allowed amount of that Claim, at the Lodge as a credit against the lodging, food and beverage, goods, and services charges incurred by that holder at the Lodge until the Closing to the extent that those charges are permitted to be covered by the terms of that Gift Certificate). On the Closing Date Payment Date with respect to each of those Claims, the Liquidating Agent shall pay that holder the remaining amount of its Allowed Gift Certificate Priority Claim in full (that is, the amount of that Allowed Gift Certificate Priority Claim as of the Effective Date to the extent not satisfied by being honored pursuant to the preceding sentence).

9.  Funding of Operations and Payments from Rents.

From and after the Effective Date and until the Closing, and notwithstanding anything in the ORIX Loan Documents, any cash collateral orders previously entered in the case with respect to any ORIX Collateral, or any provision of the Creditor's Plan to the contrary, Cash from Rents and other proceeds of any ORIX Collateral will be used, as provided by the Creditor's Plan, (i) to fund the management and operations of the Estate, the Real Property, and the Personal Property, and to pay the fees and expenses of the Liquidating Agent and the Manager and the Postconfirmation Proponent Expenses; (ii) to pay the Nonclassified Priority Claims Payments, the General Priority Claims Payments, the Gift Certificate Priority Claims Payments, the Other Secured Claims Payments, the Financial Pacific Secured Claim Payment, and the General Unsecured Claims Payments; and (iii) to fund the Disputed Claims Reserve on account of Administrative Expense Claims, Priority Tax

Claims, General Priority Claims, Gift Certificate Priority Claims, Other Secured Claims, the Financial Pacific Secured Claim, and General Unsecured Claims to the extent that those Claims are Disputed Claims and the holders of those Claims would, if those Claims became Allowed Claims, be entitled to receive the payments identified in preceding clause (ii).

10.      ORIX Adequate Protections Payments.

In addition, to the payments provided in the preceding paragraph, from and after the Effective Date and until the Closing, Cash from Rents and other proceeds of any ORIX Collateral will be used to make the monthly ORIX Adequate Protections Payments to ORIX on account of the ORIX Secured Claim in the amount of $71,542.40 per month (this was the amount of the monthly principal and interest payment due to ORIX under the ORIX Note at the non-default contractual rate of nine percent (9%) before that note matured), but only to the extent that the amount of Cash held by the Liquidating Agent is neither (i) necessary to cover payments of Allowed Claims (other than the ORIX Secured Claim) due or to become due under the Creditor's Plan; (ii) part of the Disputed Claims Reserve; nor (iii) reasonably held by the Liquidating Agent, in its discretion using its sound business judgment and taking into account any Rents anticipated thereafter to be received and any other available Cash on hand, for the payment of the operating expenses of the Real Property through the Closing, the fees and expenses of the Liquidating Agent and the Manager, and the Postconfirmation Proponent Expenses.

11.      Sale of Lodge and Other Sale Assets.

The Lodge and the other Sale Assets will be sold by the Liquidating Agent at a public auction sale by competitive bidding under an Asset Purchase Agreement in accordance with the Sale Procedures that are part of the Creditor's Plan. The Sale will be a sale free and clear of liens pursuant to Bankruptcy Code § 363(f) and 1125(a)(5)(D) on a "as is, where is, with all faults" basis and without representations or warranties of any kind, nature, or description by the Debtor, the Estate, the Liquidating Agent, ORIX, or any of their respective principals, members, affiliates, employees, agents, attorneys, or other representatives. Those liens will attach to the proceeds of the Sale with the same validity, priority, and extent as they had with respect to the Sale Assets.

The Sale is to occur approximately 60 days after the Effective Date, and the Closing approximately 30 days after the Sale, both subject to extension by agreement between the Liquidating Agent and ORIX or other adjustment as provided in the Sale Procedures. The Minimum Bid Amount will be (i) the sum of (A) 95% of the amount of the ORIX Secured Claim as of the Effective Date but prior to the Effective Date Exit Financing Advance; (B) the estimated amount of the Effective Date Exit Financing Advance; and (C) the estimated amount that would be needed for the Tax Reserve if the amount of the Successful Bid were the Minimum Bid Amount; and (ii) announced at the Confirmation Hearing.

The Liquidating Agent, with the use of a Broker if he decides to use one, will (i) solicit offers to purchase the Sale Assets from Prospective Bidders on the basis of a Proposed Asset Purchase Agreement; (ii) assist in providing due diligence materials to Prospective Bidders; (iii) receive and evaluate Bid Packages (which must consist of a Bid APA, a Marked APA, a Deposit in the amount of $500,000, and an Adequate Assurance Package); (iv) handle Deposits; (v) notify Prospective Bidders that have been designated Qualified Bidders by ORIX that they are Qualified Bidders and of the identities of each other Qualified Bidder, the location of the Sale, the Sale Date, and the Sale Time; (vi) notify the Qualified Bidder that submitted the Opening Qualified Bid (that is, the Qualified Bid that ORIX considers the highest or otherwise best Qualified Bid) of that fact; (vii) provide each other Qualified Bidder with a copy of the Opening Qualified Bid; and (viii) conduct the Sale, all in accordance with the Sale Procedures.

While ORIX may reject any and all Qualified Bids, as soon as is practicable after the conclusion of the Sale, ORIX will determine, in good faith, the Successful Bid (that is, the highest or otherwise best Qualified Bid for the Sale Assets submitted by a Qualified Bidder), and, if there is a Successful Bid, the Successful Bidder must sign a Final APA. If there is a Successful Bidder, a Sale Hearing will be held to confirm the Sale pursuant to the Final APA. If there is a Runner-Up Bidder (that is, the next highest or otherwise best Qualified Bid at the Sale, if any, that was acceptable to ORIX), it will be announced at the Sale Hearing. If the Successful Bidder wrongfully fails to close, the Liquidating Agent may, but without any obligation to do so, with the consent of ORIX in its sole discretion, deem the bid of the Runner-Up Bidder, if any, to be the Successful Bid and the Runner-

Up Bidder to the Successful Bidder, and to consummate a sale of the Sale Assets to that new Successful Bidder pursuant to that new Successful Bid and its Final APA without further order of the Court.

ORIX may credit bid up to the full amount of the ORIX Secured Claim at the Sale pursuant to Bankruptcy Code § 363(k). If ORIX submits a Marked APA and a Bid APA, those will be deemed a Qualified Bid and ORIX will be deemed a Qualified Bidder even though (i) ORIX submits no Deposit or Adequate Assurance Package; and (ii) the consideration offered in its Bid APA is less than the Minimum Bid Amount and is to be paid by an offset against the ORIX Secured Claim pursuant to Bankruptcy Code § 363(k).

The Liquidating Agent may not sell the Sale Assets for Net Proceeds after the establishment of the Tax Reserve that would be less than the full amount of the ORIX Secured Claim without the prior written consent of ORIX in its sole discretion.

12.     Expenses of Sale and Reserves Withheld from Sale Proceeds.

On the Closing, the Liquidating Agent will withhold from the Cash consideration, if any, received from the Sale (i) the reasonable, necessary, and customary expenses attributable to the Sale and customarily borne by a seller in the Monterey County, including proration of real property taxes and assessments, transfer or other taxes accruing in connection with that sale, brokerage fees, commissions, escrow and closing costs, and the like; and (ii) those reserves that the Liquidating Agent deems, in its discretion using its sound business judgment and taking into account any Rents then on hand, necessary for the payment of the then-unpaid operating expenses of the Real Property through the Closing, the expenses and fees of the Liquidating Agent and the Manager, and the Postconfirmation Proponent Expenses.

13.     Determination of Taxes Due on Account of Sale and Tax Reserve.

Before the Closing, the Liquidating Agent, in consultation with consultants and pursuant to a determination of the Bankruptcy Court under Bankruptcy Code § 505 if necessary, will determine the capital gains or other taxes, fees, or charges, if any, that will be owed by the Estate to any governmental unit upon or as a consequence of the Sale. The Liquidating Agent may not close the Sale unless sufficient Net Proceeds will be generated thereby to pay any capital gains taxes or those

1  other taxes, fees, or charges that will be owed by the Estate in connection with the Sale. If any
2  capital gains taxes or other taxes, fees, or charges will be owed by the Estate in connection with the
3  Sale and sufficient Net Proceeds will be generated to pay the same, before making any other
4  payments out of the Net Proceeds, the Liquidating Agent must set aside in the Tax Reserve funds
5  from the Net Proceeds sufficient to pay the capital gains taxes or other taxes, fees, or charges that
6  will be owed by the Estate in connection with the Sale. Tax and other liabilities of the Equity
7  Holders, if any, that are not reserved for under the Creditor's Plan, such as by the Tax Reserve, will
8  remain the liability of the Equity Holders. ORIX understands that the Debtor is a pass-through tax
9  entity and, thus, no capital gains taxes will likely be due by the Estate upon or as a consequence of
10 the Sale, and the Liquidating Agent may thus not establish the Tax Reserve.

11         14.     <u>Treatment of ORIX Secured Claim (Class B1)</u>.

12         The ORIX Secured Claim will be allowed in the full amount due under the ORIX Loan
13 Documents as of the Closing, including the Effective Date Exit Financing Advance, and including
14 all interest, including interest at the default rate under the ORIX Loan Documents, from time to time
15 applicable thereunder, late charges, fees, costs, and expenses, including attorney's fees and costs,
16 and other amounts due thereunder, all as provided in the ORIX Loan Documents. The security
17 interests in the Real Property, the Rents, and the Personal Property under the ORIX Loan Documents
18 will be deemed valid, perfected and enforceable under applicable nonbankruptcy law, and not
19 subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or
20 applicable nonbankruptcy law.

21         Between the Effective Date and the Closing, ORIX may not exercise any rights or remedies
22 against the Real Property or any other ORIX Collateral. All Estate Causes of Action against ORIX
23 and any other holder of the ORIX Secured Claim are deemed fully waived and released as of the
24 Effective Date.

25         If the Real Property is sold at the Sale to a person other than ORIX, the Liquidating Agent
26 will pay to ORIX on the Closing in Cash from the escrow for the Sale the lesser of (i) the Net
27 Proceeds; and (ii) the amount of the ORIX Secured Claim then outstanding after application of the
28 ORIX Adequate Protection Payments previously made. If the Real Property is sold at the Sale to

ORIX, ORIX will be deemed at the Closing to set off against the Cash consideration owed to the Liquidating Agent by ORIX on account of the Sale the lesser of (i) the amount of that consideration; and (ii) the amount of the ORIX Secured Claim then outstanding after application of the ORIX Adequate Protection Payments theretofore made (*i.e.*, ORIX will be permitted to "credit bid" up to that outstanding amount at the Sale pursuant to Bankruptcy Code § 363(k)).

If the ORIX Secured Claim is not (i) paid in full after a Sale to a person other than ORIX; or (ii) deemed paid in full due to a full "credit bid" by ORIX at the Sale, then on and after the Closing and until the ORIX Secured Claim has been paid in full together with simple interest on the unpaid amount thereof from time to time outstanding at the then-applicable rate of interest per annum on the ORIX Loan under the ORIX Loan Documents, the Liquidating Agent shall pay to ORIX all amounts of Cash from time to time held by the Liquidating Agent that are Rents or other ORIX Collateral (including the proceeds of any ORIX Collateral and the Effective Date Exit Financing Advance) that the Liquidating Agent is not holding as a reserve in order to pay (i) the Nonclassified Priority Claims Payments, the General Priority Claims Payments, the Gift Certificate Priority Claims Payments, the Other Secured Claims Payments, the Financial Pacific Secured Claim Payment, or the General Unsecured Claims Payments (including as part of the Disputed Claims Reserve on account of any of those payments); or (ii) if the Real Property was sold at the Sale to ORIX, the then-unpaid operating expenses of the Real Property through the Closing, the fees and expenses of the Liquidating Agent and the Manager, and the Postconfirmation Proponent Expenses.

ORIX calculates that, as of November 30, 2009, the principal balance of the ORIX Note was $8,595,674.02, the amount of accrued but unpaid interest due thereunder, including interest at the default rate, was $327,124.40, the amount of late charges due thereunder was $375,501.18, and there were fees and expenses (exclusive of late charges and attorneys' fees and expenses) due under the ORIX Loan Documents of $10,648.79, a total as of that date of $9,308,948.39, all of which is part of the ORIX Secured Claim. There were also due under the ORIX Loan Documents and part of the ORIX Secured Claim late charges and attorneys' fees and expenses in an amount to be determined. Interest, fees, and expenses, including attorneys' fees and expenses, under the ORIX Loan Documents continue to accrue, all of which are part of the ORIX Secured Claim.

Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 23 of 69

15.     Treatment of Allowed Insider Unsecured Claims (Class C2).

If there are any Net Proceeds remaining after (i) payment has been made to, or a Disputed Claims Reserve has been established on account of (and as from time to time adjusted by the Liquidating Agent as Claims become Allowed Claims or Disallowed Claims), as provided by the Creditor's Plan, (A) all Allowed Class B Secured Claims; (B) all Allowed Administrative Expense Claims; (C) all Allowed Class A Claims; (D) all Allowed Priority Tax Claims; and (E) all Allowed General Unsecured Claims; and (ii) the establishment of the Tax Reserve, if any, the Liquidating Agent will pay to each holder of an Allowed Insider Unsecured Claim on the Closing Date Payment Date with respect to that Claim, and from time to time thereafter as and if Insider Unsecured Claims Net Proceeds become available for distribution, that holder's *pro rata* share of the then-available Insider Unsecured Claims Net Proceeds, but not to exceed the amount of that Claim.

If the Sale Assets are not sold by the Sale for more than the amount of the ORIX Secured Claim, it is unlikely the holders of the Allowed Insider Unsecured Claims will receive any payments.

16.     Possible Supplemental Payment to Allowed General Unsecured Claims (Class C1).

If the Real Property is sold for sufficient Net Proceeds, or other funds become available for the payment thereof (such as from the Disputed Claims Reserve due to a Disputed Claim becoming a Disallowed Claim or from a freeing-up of the Tax Reserve), and all Allowed Nonclassified Priority Claims, all Allowed General Priority Claims, all Allowed Gift Certificate Priority Claims, all Other Secured Claims, the ORIX Secured Claim, the Financial Pacific Secured Claim, and all Allowed Unsecured Claims are paid in full (including any interest due on those Claims, except Allowed Unsecured Claims, as provided in the Creditor's Plan), interest will be paid at the legal rate on Allowed General Unsecured Claims from the Petition Date through the Effective Date as provided in the Creditor's Plan.

If the Sale Assets are not sold by the Sale for more than the amount of the ORIX Secured Claim plus the amount of the Allowed Insider Unsecured Claims, it is unlikely the holders of Allowed General Unsecured Claims will receive any post-petition interest payments.

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 24 of 69

1    17.    Possible Supplemental Payment to Allowed Insider Unsecured Claims

2    (Class C2).

3        If Real Property is sold for sufficient Net Proceeds, or other funds become available for the

4    payment thereof (such as from the Disputed Claims Reserve due to a Disputed Claim becoming a

5    Disallowed Claim or from a freeing-up of the Tax Reserve), and all Allowed Nonclassified Priority

6    Claims, all Allowed General Priority Claims, all Allowed Gift Certificate Priority Claims, all Other

7    Secured Claims, the ORIX Secured Claim, the Financial Pacific Secured Claim, and all Allowed

8    Unsecured Claims are paid in full (including any interest due on those Claims, except Allowed

9    Insider Unsecured Claims, as provided in the Creditor's Plan), interest will be paid at the legal rate

10   on Allowed Insider Unsecured Claims from the Petition Date through the Effective Date as provided

11   in the Creditor's Plan.

12       If the Sale Assets are not sold by the Sale for more than the amount of the ORIX Secured

13   Claim plus the amount of the Allowed Insider Unsecured Claims plus post-petition interest on

14   Allowed General Unsecured Claims, it is unlikely the holders of Allowed Insider Unsecured Claims

15   will receive any post-petition interest payments.

16       18.    Treatment of Interests (Class D).

17       No Equity Holder will receive or retain any property or distribution from the Estate on

18   account of any Interest or have any right to exercise control over the Estate on or after the Effective

19   Date. However, if the Sale Assets are sold for sufficient Net Proceeds to pay all Claims in full,

20   including interest thereon as provided in the Creditor's Plan, and to establish the Tax Reserve, and

21   all Disputed Claims have been resolved, the Equity Holders will receive a *pro rata* share of those

22   remaining Net Proceeds in accordance with their respective prior Interests in the Debtor.

23       D.    Classification and Treatment of Claims.

24       Bankruptcy Code § 1123 requires that a plan classify certain claims and interests, not classify

25   other claims, and specify the treatment of any class of claims or interests that is impaired under the

26   plan.

27       As set forth above and below, both Plans designate several Classes of Claims and one Class

28   of Interests, and provide for the Claims which are not to be classified. Those Claims which are

classified under each Plan are classified in Classes which the Proponent of such Plan believes take into account the differing nature and priority of the respective Claims and Interests under the Bankruptcy Code and applicable nonbankruptcy law.

The following table briefly summarizes the classification and treatment of all Claims and Interests under the Plans and the consideration to be distributed to each such Class of Claims or Interests under the Plan. The information set forth in the following table is for convenience of reference only, and each holder of a Claim or Interest should refer to each of the Plans for a full understanding of the classification and treatment of Claims and Interests provided for under the Plan. Claims will receive designated treatment within a Class only to the extent Allowed within that Class. Any summary of consideration to be distributed upon Claims and Interests under each of the Plans is merely estimated based upon various assumptions. The Claim allowance procedure is an ongoing process and the actual amount of Allowed Claims may vary from the estimates. The estimates of the amount of Claims in each class are the Debtor's estimates thereof except as otherwise noted.

For a complete description of the risks associated with the recoveries provided under each of the Plans, see the Section VIII (Certain Risk Factors to Be Considered).

| CLAIMS OR INTERESTS | CLASS | SUMMARY OF TREATMENT |
|---|---|---|
| Debtor's Plan: Administrative Claims | Nonclassified | Debtor's Plan: Administrative Claims paid in full, without interest, on (i) entry of order allowing such claim, if required, or (ii) effective date of the Debtor's Plan, unless otherwise agreed. |
| Creditor's Plan: Administrative Expense Claims | Nonclassified | Creditor's Plan: Allowed Administrative Expense Claims paid in full, without interest, on latest of (i) Effective Date; (ii) later agreed payment date; (iii) when due; or (iv) when allowed by Final Order if Final Order required or Claim was a Disputed Claim. |
| | | Estimated amount of Administrative Claims/ Administrative Expense Claims (excluding ordinary course debt paid on ongoing basis from operating revenue): |
| | | $40,000 |

Case 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 26 of 69

| CLAIMS OR INTERESTS | CLASS | SUMMARY OF TREATMENT |
|---|---|---|
| Debtor's Plan: Unclassified Priority Claims | Nonclassified | Debtor's Plan: Unclassified Priority Claims other than the City of Pacific Grove, will be paid in full without interest on the effective date of the Debtor's Plan. The tax claim of the City of Pacific Grove shall be paid in full with interest at 6% per annum from the effective date of the plan in monthly payments of $9,000 from June-December 2010 and $10,000 per month in the years 2011 and through September, 2012. |
| Creditor's Plan: Priority Tax Claims | Nonclassified | Creditor's Plan: Allowed Priority Tax Claims paid in full, without interest, on latest of (i) Effective Date; (ii) later agreed payment date; (iii) when due; or (iv) when allowed by Final Order if Final Order required or Claim was a Disputed Claim.<br><br>Estimated amount of Unclassified Priority Claims/Priority Tax Claims:<br><br>$231,602 |
| Debtor's Plan: Priority Claims Other Than Unclassified Priority Claims | Debtor's Plan: Class 1 | Debtor's Plan: Priority Claims paid in full, without interest, on effective date of the Debtor's Plan. |
| Creditor's Plan: Classified Priority Claims | Creditor's Plan: Class A1 (General Priority Claims) | Creditor's Plan: Allowed General Priority Claims paid in full, without interest, on latest of (i) Effective Date; (ii) later agreed payment date; (iii) when due; or (iv) when allowed by Final Order if Final Order required or Claim was a Disputed Claim.<br><br>Estimated amount of Claims in Class 1/ Class A1:<br><br>$0 |
| | Creditor's Plan: Class A2 (Gift Certificate Priority Claims) | Creditor's Plan: Allowed Gift Certificate Priority Claims redeemable according to Gift Certificate terms from Effective Date through Closing and then remaining amount, if any, paid in full, without interest, on latest of (i) 30 days after Closing Date; (ii) later agreed payment date; or (iii) when allowed by Final Order if Claim was a Disputed Claim.<br><br>Estimated amount of Claims in Class A2:<br><br>$56,299 |

Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 27 of 69

| CLAIMS OR INTERESTS | CLASS | SUMMARY OF TREATMENT |
|---|---|---|
| Debtor's Plan: ORIX Capital Loan | Debtor's Plan: Class 2A | Debtor's Plan: The First Loan shall be restructured, accrue interest at the rate of 9.00% from the time of confirmation. The First Loan shall be "decelerated" and the original maturity date of October 1, 2009, shall be extended to October 1, 2012. No default interest at the default rate shall accrue from the time of the initial default, December 1, 2008. Pre- and post-petition fees, costs and reasonable attorneys' fees shall be added to the principal amount at the time of confirmation and shall accrue interest from confirmation at the rate of 9.00%. The obligation shall be amortized over thirty (30) years payable in monthly payments of $71,542. If the Debtor has not sold the Lodge by October 1, 2012, the Lodge will be sold at auction.<br><br>Estimated amount of Claims in Class 2A:<br><br>$8,606,322<br><br>(as of November 30, 2009, including non-interest and fees and costs, but not including default interest, late charges, or attorneys' fees and costs; interest and other amounts will continue to accrue after that date) |
| Creditor's Plan: ORIX Secured Claim | Creditor's Plan: Class B1 | Creditor's Plan: Must make Effective Date Exit Financing Advance to Estate; receives adequate protection payments of $71,542 per month after Effective Date if sufficient Cash available to pay same; **collection action enjoined**; may credit bid for Sale Assets at Sale or will be paid from escrow on Closing if Sale Assets sold to third person at Sale; if not paid or deemed paid in full from Sale, paid from available remaining Cash to extent available; interest continues to accrue after Effective Date per ORIX Loan Documents.<br><br>Estimated amount of Claims in Class B1:<br><br>$9,308,948<br><br>(as of November 30, 2009, including default interest, late charges, and fees and costs, but not including attorneys' fees and costs, which are also part of the ORIX Secured Claim; interest and other amounts will continue to accrue after that date) |

| CLAIMS OR INTERESTS | CLASS | SUMMARY OF TREATMENT |
|---|---|---|
| Debtor's Plan: Financial Pacific Leasing | Debtor's Plan: Class 3B | Debtor's Plan: Treats claim as a secured unimpaired claim since monthly payments of $622.58 are current.<br><br>Estimated amount of Claims in Class 3B:<br><br>$0 |
| Creditor's Plan: Financial Pacific Secured Claim | Creditor's Plan: Class B2 | Creditor's Plan: Treats claim as an Allowed Secured Claim to extent of value of Collateral for Claim; that value paid in full on latest of (i) Effective Date; (ii) later agreed payment date; or (iii) when allowed by Final Order if Claim was a Disputed Claim.<br><br>Estimated amount of Claims in Class B2:<br><br>unknown<br><br>(to be determined by Court or agreement) |
| Debtor's Plan: Monterey County Secured Claim | Debtor's Plan: Class 2B | Debtor's Plan: Unimpaired since claim has been paid in full due to Debtor making reserve payments through ORIX.<br><br>Estimated amount of Claims in Class 2B:<br><br>$0 |
| Creditor's Plan: [n/a] | Creditor's Plan: [n/a] | Creditor's Plan: No Class for this purported Claim as all prepetition Monterey County Property Taxes have been paid in full. |
| Debtor's Plan: [n/a] | Debtor's Plan: [n/a] | Debtor's Plan: No Class for these Claims. |
| Creditor's Plan: Other Secured Claims | Creditor's Plan: B3 | Creditor's Plan: At election of ORIX, (i) paid in full; (ii) Collateral returned; or (iii) rights unaltered; if treated per (i) or (ii), General Unsecured Claim for any deficiency.<br><br>Estimated amount of Claims in Class B3:<br><br>$0 |

[Continued on Following Page]

Case: 09-52510   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 29 of 69

| CLAIMS OR INTERESTS | CLASS | SUMMARY OF TREATMENT |
|---|---|---|
| Debtor's Plan: General Unsecured Claims | Debtor's Plan: Class 5 | Debtor's Plan: General Unsecured claims shall be paid in full on a pro-rata basis without interest in monthly payments commencing on June 1, 2010 and continuing thereafter through September 1, 2012. Payments range between $4,000 -$17,000 per month.<br><br>Estimated amount of Claims in Class 5:<br><br>$177,000 |
| Creditor's Plan: General Unsecured Claims | Creditor's Plan: Class C1 | Creditor's Plan: Allowed General Unsecured Claims paid in full, without interest (unless excess Net Proceeds after payment in full with interest according to Creditor's Plan of all other Claims, except interest on Insider Unsecured Claims), on latest of (i) Effective Date; (ii) later agreed payment date; (iii) when due; or (iv) when allowed by Final Order if Claim was a Disputed Claim.<br><br>Estimated amount of Claims in Class C1:<br><br>$177,000 |
| Debtor's Plan: Unsecured Claim of Geneva Real Estate | Debtor's Plan: Class 6 | Debtor's Plan: Assuming the Debtor has not sold the Lodge until October 1, 2012, Geneva Real Estate will receive a total of $318,920 in monthly payments. Depending upon the eventual sale price for the Lodge, Geneva Real Estate may receive additional monies up to the amount of its claim from the net proceeds of a sale in excess of all secured claims and costs of sale.<br><br>Estimated amount of Claim in Class 6:<br><br>$5,511,392 |
| Creditor's Plan: Insider Unsecured Claims | Creditor's Plan: Class C2 | Creditor's Plan: Allowed Insider Unsecured Claims paid to the extent of Insider Unsecured Claims Net Proceeds, without interest (unless excess Net Proceeds after payment in full with interest according to Creditor's Plan of all other Claims), on latest of (i) 30 days after Closing Date; (ii) later agreed payment date; or (iii) when allowed by Final Order if Claim was a Disputed Claim.<br><br>Estimated amount of Claims in Class C2:<br><br>$5,518,874 |

| CLAIMS OR INTERESTS | CLASS | SUMMARY OF TREATMENT |
|---|---|---|
| Debtor's Plan: Equity Interests | Debtor's Plan: Class 7 | Debtor's Plan: The interests of the Debtor's members are unimpaired and they will retain their interests. |
| Creditor's Plan: Interests | Creditor's Plan: Class D | Creditor's Plan: No payments or distributions from the Estate and no control rights over the Estate on account of Interests; but Net Proceeds remaining after payment of all Claims in full, including interest thereon at legal rate on Class C Claims, and establishment of Tax Reserve, paid to holders in accordance with their respective Interests. |

E.    Other Material Elements of Plans.

The following is a brief summary of the other material provisions of the Plans. This overview is qualified in its entirety by reference to the provisions of the Plans themselves, as well as to financial and other information contained elsewhere in this Joint Disclosure Statement and in the Budget.

1.    Debtor's Plan.

Ms. Pflieger shall continue as the manager of the Debtor with compensation of $5,000 per month plus commissions for sales until such time as the Debtor's Plan is completed. No sum shall be paid to any member or insider of the Debtor until such time as the Debtor's Plan is complete. The Debtor is not aware of any preferential transfers or fraudulent transfers. The Debtor is a limited liability company on an accrual basis of accounting. As of December 31, 2008, the Debtor had a federal net operating loss-carry-forward ("NOL") of $541,517 and a state NOL of $537,412. Any sale of the Lodge in the vicinity of its $14,200,000 appraised value will generate capital gains taxes for its members in an amount in excess of $1,000,000.

2.    Creditor's Plan.

The Creditor's Plan contemplates that there will be sufficient operating revenue from the Lodge to fund the management and operations of the Estate, the Real Property, and the Personal Property, and to pay the fees and expenses of the Liquidating Agent and the Manager and the Postconfirmation Proponent Expenses.

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 31 of 69

Each executory contract and unexpired lease to which the Debtor is a party that has not been rejected by the Debtor pursuant to a Final Order entered in the Case prior to the Effective Date, including any of those executory contracts or unexpired leases that were assumed by the Debtor pursuant to a Final Order entered in the Case prior to the Effective Date, is deemed rejected as of the Effective Date. Except to the extent that the Court, the Bankruptcy Code, or the Bankruptcy Rules may establish an earlier deadline with regard to the rejection of executory contracts or unexpired leases, any Claims arising out of the rejection of executory contracts or unexpired leases pursuant to the Creditor's Plan must be filed in the Case and served on the Liquidating Agent and ORIX no later than 30 days after the Effective Date. Any of those Claims not filed within that time will be forever barred from assertion. Each Claim arising from the rejection of an executory contract or unexpired lease (i) may be asserted only to the extent permitted by Bankruptcy Code § 365(g); and (ii) will be classified and treated within Class C.

On the Effective Date, the Liquidating Agent will become the representative of the Estate under Bankruptcy Code § 1123(b)(3). Except to the extent otherwise provided in this Plan as to the Proponent, the Liquidating Agent will have full and exclusive authority over all decisions relating to the sale, management, and leasing of the Real Property and the Personal Property, and will exclusively operate, manage, control, care for, preserve, and maintain the Real Property and the Personal Property, all without interference by the Debtor. The Liquidating Agent will manage the Estate, including the Real Property and the Personal Property, in a manner consistent with its sound business judgment. The Liquidating Agent will act as disbursing agent of the Effective Date Exit Financing Advance, the Net Proceeds after the Allowed Class B1 Claims are paid through escrow at the Closing, and all other amounts to be distributed by the Liquidating Agent pursuant to the Creditor's Plan.

The Liquidating Agent will be compensated from the Rents and the rents, issue, profits, and proceeds of the Personal Property after the Effective Date as described in the Creditor's Plan and as will be described in the Liquidating Agent Agreement.

From time to time after the Effective Date, the Liquidating Agent may employ, engage the services of, and compensate consultants, other persons or professionals reasonably necessary to

assist the Liquidating Agent in performing its duties under the Liquidating Agent Agreement and the Creditor's Plan without approval or order of the Court, including the Broker. The Liquidating Agent's consultants, professionals, and other persons, shall be compensated in accordance with the procedures that will be set forth in the Liquidating Agent Agreement. There will be limitations of the liability of the Liquidating Agent set forth in the Liquidating Agent Agreement. The Liquidating Agent will also reimburse, subject to its right to object thereto, from available Cash of the Estate, ORIX for the Postconfirmation Proponent Expenses, that is, the fees and costs, including reasonable attorneys' fees and costs, of ORIX arising after the Confirmation Date in connection with the matters that ORIX is authorized or required to address under the Creditor's Plan.

The Manager will be compensated from the Rents and the rents, issue, profits, and proceeds of the Personal Property after the Effective Date.

As of the Closing Date, (i) the Debtor will be deemed to have been dissolved and liquidated and its affairs wound up; and (ii) all Interests in the Debtor will be deemed to have been cancelled and extinguished, all without the need for any further action by the Court or any entity.

As of the Effective Date, pursuant to Bankruptcy Code §§ 1123(a)(5) and 1141(b) and otherwise, all title, ownership, possession, and interests of the Estate in any property will be deemed fully preserved and retained by, and vested in, the Estate, subject to all of the powers provided to the Liquidating Agent as set forth in the Creditor's Plan and the Liquidating Agent Agreement, free and clear of any and all claims, interests, liens, security interests, and obligations other than those that are expressly created or preserved by the Creditor's Plan or the Confirmation Order.

As of the Effective Date, all Estate Causes of Action other than those waived or released by the express terms of the Creditor's Plan or the Confirmation Order, will be deemed fully preserved and retained by, and vested in, the Estate, subject to all of the powers provided to the Liquidating Agent as set forth in the Creditor's Plan and the Liquidating Agent Agreement, free and clear of any and all claims, interests, liens, security interests, and obligations other than those that are expressly created or preserved by this Plan or the Confirmation Order. The Liquidating Agent may pursue Estate Causes of Action, or not, in its sole discretion, under those arrangements with counsel and the holders of Allowed General Unsecured Claims as are agreed by them. No part of the Net Proceeds,

the Rents, or the rents, issues, profits, or proceeds of any Personal Property may be used, and neither the Proponent, the Liquidating Agent, nor any other entity will have any obligation to fund the prosecution of any Estate Causes of Action.

The rights afforded in the Creditor's Plan, and the treatment of all Claims and Interests set forth therein, will be in full exchange for, and in complete satisfaction, discharge, and release of, all Claims and Interests of any kind or nature whatsoever, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due, prior to the Effective Date, including any Claims, or interest on Claims, accruing on or after the Petition Date, against the Estate, or any assets or property thereof. Except as, and to the extent, expressly provided in the Creditor's Plan or the Confirmation Order, at all times on and after the Effective Date, (i) all those Claims against the Estate, and all those Interests in the Debtor, will be deemed fully and finally satisfied, discharged, and released; (ii) all persons will be fully and finally barred, enjoined, and precluded from asserting against the Estate or any of its assets, any Claims or Interests based on any act or omission, transaction, agreement, right, privilege, duty, entitlement, obligation, or other event or activity of any kind or nature whatsoever that occurred prior to the Effective Date; and (iii) all Claims and Interests will be fully and finally discharged and deemed satisfied to the fullest extent permitted by Bankruptcy Code § 1141.

As of the Effective Date, the Creditor's Plan will be deemed to satisfy, waive, and release in full any and all claims of the Debtor or the Estate against any of the officers, directors, agents, advisors, servicers, representatives, consultants, attorneys, or accountants of ORIX (whether as the Proponent of the Creditor's Plan, the holder of the ORIX Loan, or any other capacity) from any claims arising out of or in connection with any act or failure to act in connection with rights and duties arising under or related to the Case from the Petition Date to and including the Effective Date, except any claims expressly created or preserved under the terms of the Creditor's Plan or any documents executed, or to be executed, in connection with that Plan. Except as expressly provided in the Creditor's Plan or any other document executed or to be executed in connection with that Plan, neither ORIX (in any capacity) nor any of its officers, directors, shareholders, partners, members, managers, agents, advisors, representatives, servicers, consultants, attorneys, or accountants, will

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 34 of
69

have any liability to or on behalf of the Estate for actions taken or omitted to be taken under or in connection with the Creditor's Plan or the Case from the Petition Date to and including the Effective Date.

On and after the Effective Date, (i) only a Permitted Claim Objector may file or prosecute objections to Nonclassified Priority Claims, Priority Tax Claims, and Claims within Classes A, B2, or C. Those objections, to the extent prosecuted, must be filed in the Case and served on the respective holders of those Claims within one-hundred eighty (180) days following the later of (i) the Effective Date; and (ii) the service of a proof of claim in respect of that Claim on the Proponent, the Liquidating Agent, and their respective counsel. At any time after the Effective Date, each of the Proponent and the Liquidating Agent may abandon, defer, narrow, dismiss, or compromise any objection it is entitled to prosecute, in its sole discretion and business judgment, without review or further order by the Court.

## SECTION III

III.     Information Regarding the Debtor

The following information is provided in summary form with respect to the Debtor and related topics:

A.     The Debtor.

The Debtor is a California limited liability company. The Debtor was formed in 1998 and its sole business is and has been the ownership and operation of the Lodge, consisting of the Real Property and the Personal Property. The suites portion of the Lodge was built by the late Robert Johnson in 1988 and opened for business on April 20, 1991. In October of 1993, Mr. Johnson acquired the Butterfly Trees Lodge and made that the lodge portion of the Lodge. Mr. Johnson died in an automobile accident in Mexico on January 23, 2004.

The members of the Debtor on the Petition Date were Jacci Pflieger ("Ms. Pflieger") 26.353%, Bennie Johnson (her family trust), 27.294%, Carl Miller ("Mr. Miller") 20.000%, Sheri Pflieger/Brian Pflieger, 26.353%. Jacci and Sheri Pflieger are the daughters of the late Robert L. Johnson. Bennie Johnson is the mother of the late Robert Johnson and the grandmother of Jacci and

Sheri Pflieger. Brian Pflieger is the estranged husband of Jacci Pflieger and the brother-in-law of Sheri Pflieger.

Ms. Pflieger has been managing the Lodge for Debtor since April of 1996.

B.     The Lodge.

The Debtor is the fee owner of the Real Property and the associated Personal Property, which the Debtor originally valued on the Schedules at $18,500,000. Based upon a recent appraisal obtained by the Debtor from Hanna & Associates, dated December 3, 2009, the Debtor now believes that as of November 18, 2009, the fair market value of the Lodge is $14,200,000.

The Lodge is located in Pacific Grove, California, approximately 125 miles south of San Francisco, California, and 80 miles south of San Jose, California. Pacific Grove is a popular weekend "getaway" for residents of the San Francisco Bay Area.

The Lodge consists of ninety-seven (95) rooms mixed, as noted above, between suites and rooms, and is located on two parcels, approximately 100 feet apart, on opposite sides of Lighthouse Avenue in Pacific Grove, and a residence. Lodge is comprised of two distinct facilities containing 19 buildings, consisting of 31,679 square feet located on these two separate sites. During the years 2000 through 2002, approximately $1,456,000 was spent by the Debtor for capital improvements at the Lodge.

Due to extensive debt used for the renovation of the Lodge through 2002, as well as debt that was incurred by the Debtor to support Mr. Johnson's real estate projects in Hemet, California, the Debtor was forced to file Chapter 11 in the Fresno Division of the Eastern District of California on February 21, 2003 (Case No. 03-11635-A-11). On October 7, 2004, the Debtor was able to confirm its Sixth Amended Plan of Reorganization (the "First Plan").

The First Plan provided the Debtor with $4,000,000 in new capital and new investors. This cash infusion was sufficient to payoff all of the Debtor's trade creditors and an existing second deed of trust secured loan. Finally, the First Plan restructured the existing first deed of trust secured ORIX Loan and extended the maturity date of the ORIX Loan to October 1, 2009.

From 2004 through early 2007, the Debtor was operating the Lodge, more or less successfully. In early 2007, the Debtor sought and found a "take-out" lender, who would refinance

the debt on the Lodge for approximately $14,000,000. This amount would have been sufficient to payoff the ORIX Loan and provide Geneva Real Estate with a $3,000,000 "cash out". When ORIX was contacted regarding what the amount of the prepayment premium would be under the ORIX Loan Documents, it provided the Debtor with an estimate of the amount thereof for a loan payoff on November 1, 2007, of approximately $87,000. That estimate was in error because it was calculated based on the prior maturity date of the ORIX Loan rather than on the maturity date thereof as extended pursuant to the First Plan. When funding with the new lender was approved, the Debtor requested a formal payoff statement and, on January 3, 2008, ORIX provided the Debtor with a that statement, which included a prepayment premium of approximately $811,000. The Debtor asserts that this discrepancy caused the take-out financing to collapse.

The recession in the economy and its inordinate damaging affect on the travel and lodging industry caused the Debtor to once again experience cash-flow problems. In 2008, Geneva Real Estate, through its managing member, Mr. Miller, expressed a willingness to loan the Debtor another $1,500,000 to renovate the Lodge. The loan from Geneva Real Estate was made and renovations to the Lodge began. However, the Debtor did not always receive timely draw checks from Geneva Real Estate and, as a result, pricing discounts previously negotiated with the contractors were lost. November through December 2008 were extremely difficult months for the lodging industry generally and the Debtor specifically. The continuing effects of the recession had caused the Debtor to experience the worst year (2008) it had experienced in over ten (10) years. The Debtor paid the October 1, 2008, monthly payment due on the ORIX Loan more than three weeks late, and it paid the monthly payment due on November 1, 2008, a month late.

By February of 2009, the Debtor's gross revenues had declined by fifty percent (50%) from the year before, and it had not paid the monthly payments due on December 1, 2008, and January 1 and February 1, 2009. In late February 2009, ORIX reassigned Sara Owen to the Debtor's account. Ms. Owen, who was familiar with the Debtor and the ORIX Loan permitted the Debtor to use funds in the debt service reserve to service the ORIX Loan notwithstanding the Debtor's defaults. But it was too late. Despite additional cash infusions from Mr. Miller and/or Geneva Real Estate, the Debtor remained in default on the ORIX Loan.

C.     Events Leading to Commencement of Chapter 11 Case.

On March 2, 2009, ORIX accelerated all amounts due and owing by the Debtor under the ORIX Loan and filed a complaint in the Superior Court of the State of California, Monterey County, seeking specific performance and the appointment of a receiver.

Accordingly, rather than suffer the appointment of a receiver and the substantial disruption and harm to both the Debtor's operations and the Debtor's ongoing efforts to sell the Lodge, the Debtor commenced the Chapter 11 Case on April 9, 2009.

**SECTION IV**

IV.     Significant Events During the Chapter 11 Case

Since the Debtor commenced the Chapter 11 Case, it has continued to operate its business and manage its property as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. The results of operations of the Lodge during the Chapter 11 Case are reported on the Debtor's Monthly Operating Reports filed with the Court in this case and are available from the Clerk of the Court. The following is a brief description of some of the major events that have occurred during the Chapter 11 Case.

A.     Continuation of Business; Stay of Litigation.

The Court has certain supervisory powers over the Debtor's operations during the Chapter 11 Case, which are generally limited to reviewing and ruling upon any objections raised with respect to the Debtor's operations or proposed transactions outside of the ordinary course of business. The Debtor must notify parties in interest and obtain Court approval of any transactions that are outside the ordinary course of business. In addition, the Debtor must obtain Court approval of certain other transactions, such as the borrowing of money on a secured basis or the employment of attorneys, accountants, and other professionals.

As noted, an immediate effect of the commencement of the Chapter 11 Case was the imposition of the automatic stay under the Bankruptcy Code, which, with limited exceptions, enjoins the commencement or continuation of all pre-petition litigation against, and efforts to collect funds from, the Debtor. This injunction remains in effect unless modified or lifted by order of the Court.

B. No Official Unsecured Creditors' Committee.

Although the Debtor has non-insider creditors holding unsecured non-priority claims in the total amount of approximately $177,000, no committee of unsecured creditors has been appointed. Appointment of such a committee is under the authority of the United States Trustee.

C. Representation of the Debtor.

Under the Bankruptcy Code, the Debtor is entitled to retain needed professionals, subject to approval by the Court. Those professionals' compensation and reimbursement of costs must be paid from funds of the Estate, unless other arrangements are made with Court approval. In the Chapter 11 Case, the Debtor has been, and continues to be, represented by Hagop T. Bedoyan and the Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, to provide general bankruptcy services. The Debtor has also obtained orders employing Slater Moffat, as the Debtor's accountant and Sofi Choi of Grubb & Ellis as the Debtor's real estate broker. The listing agreement with Ms. Choi and Grubb & Ellis has expired. In addition, the Court has entered an order employing Hanna & Associates, as the appraiser for the estate.

D. Use of Cash Collateral.

Under Bankruptcy Code § 363, a debtor-in-possession may not use cash assets—known as "cash collateral"—in which third parties assert liens or other interests absent those parties' consent or an order of the Court. In order to incur and satisfy normal, postpetition operating obligations and expenses, however, the Debtor must be able to use its cash assets, principally the rents (generally, "Cash Collateral") in order to meet such obligations as payroll charges and benefits, postpetition vendor claims, equipment rental obligations, utilities charges, interest upon secured claims, professional fees and costs, and the like. Failure to pay those normal expenses would cause irreparable harm to the Debtor's business and its prospects for reorganization. ORIX has an interest in the Debtor's cash collateral.

On April 14, 2009, the Debtor filed its First Motion for Authority to Use Cash Collateral and Grant Adequate Protection, which sought authorization to use the cash collateral of ORIX. The Court granted the relief requested on May 7, 2009. The Debtor has been operating under the terms of the bi-monthly consensual cash collateral authorization mechanism approved by the Court and

JOINT DISCLOSURE STATEMENT
94819v2

Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 39 of 69   PAGE 35

1  currently has cash collateral use authorization through January, 2010. ORIX has been receiving
2  regular monthly principal and interest payments of approximately $71,542, and additional amounts
3  for insurance and tax reserves.

4      The Debtor expects to accumulate sufficient cash prior to the Effective Date of the Plan to
5  pay for all administrative claims and non-classified claims on the Effective Date of the Plan, other
6  than the tax claim owed to the City of Pacific Grove. As of November 30, 2009, the Debtor had
7  approximately $144,000 in cash on hand, $76,942 in ORIX's property tax reserve account and
8  another $5,383 in ORIX's insurance reserve account. As noted above, the Debtor's cash flow from
9  operations is seasonal, with the months of December through March being significantly lower than
10 the best months of June through August. The Debtor must thus accumulate funds from the high-
11 income months to enable it to make required payments in the low-income months, which payments
12 include real property tax installments due in December and April totaling approximately $122,000.
13 The Budget (part of **Exhibit A**) demonstrates that the Debtor will be able to pay ORIX ongoing
14 reserves for property taxes and insurance. Through the use of Cash Collateral under successive
15 budgets, the Debtor is current on all post-petition operating expenses, including insurance, real and
16 personal property taxes, and room taxes.

17     E.    Exclusivity.

18     As discussed above, pursuant to Bankruptcy Code § 1121(b), a debtor-in-possession is given
19 the exclusive right to file a plan until the expiration of the 120 day period following the date of the
20 order for relief (the "Exclusivity Period"), unless such Exclusivity Period is extended or shortened
21 by the court after notice and hearing. In addition, pursuant to Bankruptcy Code section 1121(c)(3), a
22 debtor-in-possession is given the exclusive right to solicit acceptances of a plan it does file within
23 the Exclusivity Period for 180 days following the date of the order for relief (the "Acceptance
24 Period"). The initial Exclusivity Period for the Debtor has expired. The Debtor did not file a plan
25 within the Exclusivity Period and did not file a motion with the Court seeking an extension of the
26 Exclusivity Period.

27
28

**JOINT DISCLOSURE STATEMENT**    PAGE 36
Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 40 of 69
9487987v2

1    F.    Bar Date for Filing Proofs of Claim.

2        The Court established August 11, 2009 (the "Bar Date") as the last date for filing claims in

3    the Chapter 11 Case.

4    G.    Plans Filed.

5        As noted above, the Debtor and ORIX have each filed competing plans in the Chapter 11

6    Case.

7    H.    Debtor's Consideration of Refinancing or Sale of the Lodge.

8        The Debtor continues to explore all avenues in order to repay its creditors. It is presently

9    discussing refinancing options with one entity, but given the current market value of the Lodge, such

10   efforts are problematic. Throughout this Chapter 11 case, the Debtor has pursued the sale of the

11   Lodge and, in fact, received from American Pacific International Capital, Inc. ("APIC") a signed

12   letter of intent for $16,000,000, with several conditions. The APIC offer as well as the status of the

13   case and its future, including the filing a plan and disclosure statement were discussed during a

14   conference at the offices of ORIX's attorneys, Jeffer, Mangels, et al. on October 7, 2009.

15       After the meeting with ORIX's representatives, the Debtor informed APIC that there would

16   have to be some modification in the letter of intent in order to obtain ORIX's approval for any sale.

17   In response to the proposed changes, and as part of its due diligence, APIC decided to significantly

18   reduce its purchase offer and continued to insist on obtaining bankruptcy court approval for the sale

19   without "higher or better bids." On October 29, 2009, the Debtor made a counter-offer to APIC,

20   which was rejected on November 2, 2009.

21       At the present time, the Debtor has no offers for the purchase of the Lodge and its listing

22   agreement with Sofi Choi and Grubb & Ellis has expired.

23                                   **SECTION V**

24                        V.    Debtor's Assets and Liabilities

25       The following is a summary description of the assets and liabilities of the Debtor.

26   A.    Assets.

27       The values stated below are the Debtor's values. In most or all cases, the stated values are

28   book values, not fair market values. Book values are determined by the Debtor's books and records,

and fair market values are the Debtor's valuations based on the opinion of Ms. Pflieger and the recently obtained appraisal from Hanna & Associates. As noted above, as of November 30, 2009, the Debtor had a combined total of $226,284 cash on hand between its debtor-in-possession and reserve accounts (maintained by ORIX). A detailed balance sheet as of November 30, 2009, is attached as part of the Operating Results (part of **Exhibit A**).

| DESCRIPTION | VALUE AS OF | |
|---|---|---|
| | PETITION DATE | NOV. 30, 2009 |
| Lodge Real and Personal Property | $18,5000.00 | $14,200,000.00 |
| Bank Deposits/DIP Accounts | 29,717.00 | 143,957.00 |
| FF&E Reserve Account at ORIX | 19,929.00 | 2.00 |
| Property Tax and Insurance Reserve Accounts at ORIX | 59,240.00 | 82,325.00 |
| Interest Reserve Account at ORIX | 104,568.00 | 0.00 |
| Miscellaneous Accounts Receivable | 76,014.00 | 48,420.00 |
| Due from Northwestern (Insider) | 198,996.00 | 198,996.00 |
| Due from Court of Fountains (Insider) | 2,735.00 | 2,735.00 |
| Due from Anton Inn/Lighthouse Lodge II (Insider) | 115,665.00 | 113,173.00 |
| Due from Mercy Springs Road (Insider) | 20,131.00 | 20,131.00 |
| Usury Claim v. Geneva Real Estate and/or Carl Miller | UNKNOWN | UNKNOWN |
| Phone Equipment | 10,000.00 | 10,000.00 |
| Credit Card Terminals | UNKNOWN | UNKNOWN |
| Total | $19,136,995.00 | $14,809,738 |

B.    Liabilities.

The Debtor's liabilities set out below are based on the proofs of claim filed by various Creditors in the Chapter 11 Case and updated information in respect thereof accumulated by the Debtor.

The Real Property (including all of the furniture, fixtures, and equipment associated therewith) comprising the Lodge and the Rents are encumbered by the first deed of trust loan in favor of ORIX. The Debtor estimates the balance of the ORIX Loan to be $8,606,322.00 as of November 30, 2009. ORIX calculates the balance thereof to be $9,308,948.39 as of that date. Neither of these balances includes attorneys' fees and costs. The Debtor's balance also does not include default interest or late charges that ORIX asserts is due. The Debtor's Plan, in reliance on In re Entz-White Lumber and Supply, 850 F.2d 1338 (9th Cir. 1988), and General Electric Capital Corporation v. Future Media Productions, Inc., 536 F.3d 969 (9th Cir. 2008), proposes to

"decelerate" the Debtor's defaults under the ORIX Loan, allow only non-default interest on the ORIX claim from December 1, 2008, forward at the contractual rate of nine percent (9%), and not allow the accrual of late charges. ORIX asserts that the Debtor may not "decelerate" a matured loan under these cases and that all default interest and late charges due under the ORIX Loan Documents will remain due under the Debtor's Plan.

Financial Pacific has filed a secured claim for the purchase/lease of the Debtor's telephone system in the amount of $32,188.39. Both the Debtor and ORIX believe that this Claim is in fact a disguised security interest and each has treated it as such in its Plan. The Debtor has been making monthly payment of $622.58 to Financial Pacific during the Chapter 11 Case.

The County of Monterey filed a proof of claim for real property taxes presumably for the 2008-2009 tax year. Both the Debtor and ORIX believe that all real property taxes have been paid through the tax reserve account established by ORIX and nothing is currently owed to the County of Monterey on its filed Claim. Under the Debtor's Plan, all future real property tax claims will also be paid by ORIX through the tax reserve account.

The unclassified priority tax claims are the Claims of the City of Pacific Grove ($231,602.20), the California State Board of Equalization ($1,765.86) and the Internal Revenue Service ($1,985.76).

The unsecured claims listed on the Debtor's schedules, other than the claim of Geneva Real Estate in the amount of $5,511,392, total only $214,099. The Debtor has reviewed the proofs of claim that have been filed and believes that there is no more than $177,000 in claims that will be allowed and paid.

The large unsecured $5,511,392 claim of Geneva Real Estate is treated separately in the Debtor's Plan. The Debtor has scheduled this claim as disputed and that dispute has not been settled in the Chapter 11 Case by a compromise of controversy approved by the Bankruptcy Court under Bankruptcy Rule 9019. As noted above, the Debtor asserts a usury claim against Geneva Real Estate and/or Mr. Miller, Geneva Real Estate's principal. Under the Debtor's Plan, while Geneva Real Estate will receive monthly payments without interest starting on June 1, 2010, those payments will total no more than $318,920, depending upon when the Lodge is sold, and any additional payments

to Geneva Real Estate will only be made if the Lodge is sold in excess of the amounts needed to pay all secured claims and costs of sale.

ORIX notes that the claim asserted by Geneva Real Estate includes $3,000,000 (and the "interest" claimed to have accrued thereon) that appears to be the result of a "re-characterization" of a prior capital contribution to the Debtor. Under the First Plan, Mr. Miller and Geneva Real Estate made a $3,200,000 capital contribution to the Debtor in September 2004. On January 31, 2008, Mr. Miller, Geneva Real Estate, and the Debtor agreed that $3,000,000 of that $3,200,000 capital contribution was "re-characterized" as a $3,000,000 loan to the Debtor by Geneva Real Estate.

The estimated cost of Administrative Expense Claims for Professional Fees, which would be the only Administrative Expense Claims not paid in the ordinary course, are estimated to be $40,000.

### SECTION VI

VI.    Confirmation and Consummation Procedure

A.    <u>Solicitation of Votes</u>.

In accordance with the Bankruptcy Code §§ 1126 and 1129, the holders of the claims or interests under each of the Plans identified above as impaired with respect to such Plan in classes are entitled to vote to accept or reject the Plan, and the holders of the claims or interests under each such Plan identified above as unimpaired are conclusively presumed to have accepted such Plan and the solicitation of acceptances with respect to such classes is not required under Bankruptcy Code § 1126(f).

As to the Classes of claims and interests entitled to vote on a plan, the Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and one-half in number of the claims of that class that have timely voted to accept or reject a plan, and by a class of interests as acceptance by holders of at least two-thirds in number of shares of that class that have timely voted to accept or reject a plan. A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any creditor of an impaired Class (i) whose Claim has been listed by the Debtor in the Schedules (provided that such claim has not been scheduled as disputed, contingent, or

unliquidated), or (ii) who filed a proof of claim within any applicable period of limitations, or with leave of the Court, which Claim is not the subject of an objection, is entitled to vote to accept or reject the Plan.

B.  Confirmation Hearing.

Bankruptcy Code § 1128(a) requires the Court, after notice, to hold a hearing on confirmation of the Plan. The Confirmation Hearing with respect to the Plan will be conducted as discussed above. Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of either of the Plans must be made in writing and filed with the Court and served upon those parties identified for such service in other documents accompanying this Joint Disclosure Statement. Objections to confirmation of either of the Plans are governed by Bankruptcy Rules 3017 and 9014.

**UNLESS AN OBJECTION TO CONFIRMATION OF A PLAN IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE COURT.**

C.  Confirmation.

At the Confirmation Hearing, the Court will confirm a Plan only if all of the requirements of Bankruptcy Code § 1129 are met. Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class; (ii) feasible; and (iii) in the "best interests" of holders of claims and interests which are impaired under the plan. However, pursuant to Bankruptcy Code § 1129(c), the Court may only confirm one of the Plans, and if both of the Plans have satisfied the confirmation requirements of Bankruptcy Code §1129(a) and, if applicable, (b), the Court shall consider the preferences of creditors and equity interest holders in determining which of the Plans to confirm.

1.  Acceptance.

As stated, claims which are within Classes that are impaired under either of the Plans are entitled to vote to accept or reject that Plan. The Proponent of each Plan reserves the right to seek nonconsensual confirmation of the Plan proposed by it under Bankruptcy Code § 1129(b) with respect to any Class of Claims or Interests that rejects or is deemed to reject the Plan.

2.     Unfair Discrimination and Fair and Equitable Tests.

To obtain nonconsensual confirmation of a plan, it must be demonstrated to the Court that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, nonaccepting Class. The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable". The Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors, and equity holders, as follows:

a)     Secured Creditors.

Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds is provided in clause (i) or (ii) of this subparagraph.

b)     Unsecured Creditors.

Either (i) each impaired unsecured creditor receives or retains under the plan property of value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the plan.

c)     Equity Interests.

Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of (A) the fixed liquidation preference to which such holder is entitled, (B) the fixed redemption price to which such holder is entitled, or (C) the value of the interest, or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

The Proponent believes that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

3.     Feasibility.

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization, although liquidating plan, such as the

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 46 of 69

Plan, are permitted. For purposes of determining whether each of the Plans meets this requirement, each of the Proponents has analyzed the Reorganized Debtor's or the Estate's ability to meet its obligations under each Plan. Each Proponent believes that the Budget demonstrates that the Reorganized Debtor or the Estate (with receipt of the Effective Date Exit Financing Advance) will have sufficient funds on hand during the term of the Plan proposed by it to meet all its obligations under such Plan. On the Effective Date, all Claims other than the ORIX Secured Claim and the Insider Unsecured Claims will be paid in full or provision will have been made for the payment thereof in full. At the end of the term of the Creditor's Plan—that is, after the Closing—ORIX believes, based on the Debtor's appraisal, that the Lodge will likely have been sold for sufficient Net Proceeds to establish the Tax Reserve and to pay all Creditors in full.

4.     Best Interests of Creditors.

With respect to each impaired class of claims and interests, confirmation of each Plan requires that each holder of a claim or interest either (i) accept the Plan, or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. To determine what holders of claims and interests of each impaired Class would receive if the Debtor were liquidated under Chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a Chapter 7 liquidation case. The cash amount which would be available for satisfaction of Unsecured Claims and Interests would consist of the proceeds resulting from the disposition of the unencumbered assets of the Debtor, augmented by the unencumbered cash held by the Debtor at the time of commencement of the liquidation case (all cash of the Debtor being derived from Rents or otherwise subject to the security interests of ORIX, there would be no such unencumbered cash). Such cash amount would be reduced by the amount of costs and expenses of the liquidation and by such additional administrative and priority claims that may result from the termination of the Debtor's businesses and the use of Chapter 7 for the purposes of liquidation.

The Debtor's costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy, as well as those which might be payable to attorneys and other professionals that such

a trustee may engage. In addition, claims would arise by reason of the breach or rejection of obligations incurred and leases and executory contracts assumed or entered into by the Debtor during the pendency of the Chapter 11 Case. The foregoing types of claims and other claims which may arise in a liquidation case or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, financial advisors, and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition Unsecured Claims.

To determine if either Plan is in the best interest of each impaired class, the present value of the distributions from the proceeds of the liquidation of the Debtor's unencumbered assets and properties after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims and Interests under that Plan.

After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in a Chapter 7 case, including (i) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such Trustee, (ii) the erosion in value of assets in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" atmosphere that would prevail, and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with Creditors in the Chapter 11 Case, each of the Proponents has determined that confirmation of the Plan proposed by it will provide each holder of an Allowed Claim or Interest with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtor under Chapter 7. Further information and projections with respect to that conclusion are set forth in Section IX (Projected Results and Liquidation Alternatives) hereof.

D.    Consummation.

The Creditor's Plan will be substantially consummated on the Effective Date, which will be a date no fewer than eleven (11) and nor more than thirty (30) days following entry of the Confirmation Order, absent a stay of implementation. The Debtor's Plan will be substantially consummated no earlier than June 30, 2010, at which time the Debtor may file an ex parte application seeking the entry of a final decree, with supporting evidence indicating that the all

payments to creditors to that date have been made. Such application shall be noticed only to the United States Trustee, those parties requesting special notice and to the counsel for ORIX, the City of Pacific Grove and Geneva Real Estate.

E.    Effect of Confirmation of the Plan.

Confirmation and effectuation of either of the Plans will bind the Debtor, all Creditors, and all other parties in interest to the provisions of the Plan that is confirmed, whether or not the claim of such Creditor is impaired under that Plan and whether or not such Creditor has accepted that Plan. Nothing contained in either of the Plans will limit the effect of confirmation as described in Bankruptcy Code § 1141.

**SECTION VII**

VII.    Management of Reorganized Debtor or Estate

A.    Debtor's Plan.

Under the Debtor's Plan, the Lodge and the Debtor will continue to be managed by Ms. Pflieger, subject to the terms of the Debtor's operating agreement.

B.    Creditor's Plan.

1.    Liquidating Agent.

As set forth above, the Court will appoint the Liquidating Agent in accordance with the terms of the Liquidating Agent Agreement, the Liquidating Agent will have authority over all decisions relating to the sale, management, and leasing of the Real Property and the Personal Property, will exclusively operate, manage, control, care for, preserve, maintain, and sell the Real Property and the Personal Property, and will be the representative of the Estate and make disbursements from the Estate on account of Claims, all subject to the Creditor's Plan and the Liquidating Agent Agreement.

C.    Manager.

As set forth above, the Liquidating Agent will appoint a Manager for the Real Property pursuant to the Management Agreement. The Manager will be a professional hotel manager having complete day-to-day authority for the management of the Lodge.

## SECTION VIII

VIII.    Certain Risk Factors to Be Considered

**HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS JOINT DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT EITHER OF THE PLANS. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

    A.    <u>Certain Bankruptcy Law Considerations</u>.

        1.    <u>Risk of Non-Confirmation of the Plan</u>.

Although each of the Proponents believes that the Plan proposed by it will satisfy all requirements necessary for confirmation by the Court, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications to either of the Plans will not be required for confirmation, or that such modifications would not necessitate the resolicitation of votes.

        2.    <u>Non-Consensual Confirmation</u>.

In the event one or more impaired Classes of Claims does not accept one of the Plans, the Court may nevertheless confirm that Plan at request of the Proponent thereof if all other conditions for confirmation have been met and at least one impaired Class has accepted such Plan (such acceptance being determined without including the vote of any "insider" in such Class) and, as to each impaired Class that has not accepted such Plan, if the Court determines that such Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the rejecting impaired classes. Each Proponent believes that the Plan proposed by it will satisfy those requirements.

    B.    <u>Certain Risks Related to the Plans</u>.

Successful implementation and completion of the Plans are subject to certain risks and uncertainties, including whether (i) the Lodge will generate the contemplated operating revenue,

Case 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 50 of 69

under the Debtor's Plan, during the time the Post-Confirmation Debtor seeks to sell the Lodge, or, under the Creditor's Plan, until the Closing, and, of course, whether the ultimate sales price obtained for the Lodge under either Plan will be sufficient to pay all Creditors in full (although, under the Creditor's Plan, that operating revenue and sales price risk will not exist for Creditors other than the holders of the ORIX Secured Claim or the Insider Unsecured Claims as all other Claims will be paid in full on, or provision for payment in full thereof will be made as of, the Effective Date by ORIX making the Effective Date Exit Financing Advance).

**SECTION IX**

IX.    Projected Results and Liquidation Alternatives

Based upon the Debtor's best estimates of the future performance of the Reorganized Debtor's business, the prospects for liquidation proceeds of the Debtor's various assets, and review of claims asserted against the Estate herein, the Debtor provides the following estimates of future results of the implementation of the Debtor's Plan, as well as the likely result of available liquidation alternatives, which ORIX believes are also applicable to the Creditor's Plan.

A.    <u>Projected Revenues and Performance</u>.

The Operating Results and the Budget (**Exhibit A**) are attached. For comparison purposes, interested parties may wish to refer to the Debtor's Monthly Operating Reports filed in the Chapter 11 Case for the Debtor's operating results over the past year plus in the Chapter 11 Case. The Debtor believes that the assumptions and projections which underlie the Budget are reasonable and achievable, although of course future events cannot be predicted with certainty. As discussed in this Joint Disclosure Statement, substantial risks exist. Nonetheless, the Debtor believes that the projected performance following reorganization is reasonably achievable. Further, ORIX believes that the benefit that will be derived from an orderly but speedy marketing of the Lodge will permit the Creditor's Plan to succeed in its intended purpose. Therefore, each Proponent believes that the Plan proposed by it is fully and demonstrably feasible. Further, each Proponent believes that its Plan constitutes the best alternative for recoveries by the Creditors.

Case: 09-52610   Doc# 96   Filed: 12/21/09   Entered: 12/21/09 16:10:25   Page 51 of 69

B.  Projected Recoveries.

The Budget does not include any amounts attributable to any Estate Causes of Action that may be asserted by the Reorganized Debtor, under the Debtor's Plan, or the Liquidating Agent, under the Creditor's Plan, against third parties for return of preferential transfers or fraudulent conveyances, and do not assume any costs of pursuing such causes of action. Neither of the Proponents nor any other party is committing to fund the prosecution of any such actions and no Rents or other proceeds from Collateral may be used for such purposes.

Under the Creditor's Plan, the holders of Claims in Class C1 will, together with the Liquidating Agent and any counsel to be used will need to agree, if at all, on how any Estate Causes of Action are to be prosecuted and funded. Under the Debtor's Plan, such matters will be under the control of the Post-Confirmation Debtor.

Listed as assets of the estate are accounts receivable from insiders of the Debtor. The receivables owed by Mercy Springs Road, Northwest and Court of Fountains, which total approximately $221,862, arise from a failed real estate venture undertaken by Ms. Pflieger and her estranged husband, Brian Pflieger. The Debtor believes such receivables are uncollectable. Lighthouse Lodge, II is a limited liability company controlled by Ms. Pflieger and Brian Pflieger. It operates another motel near the Lodge known as the Anton Inn. The receivable from Lighthouse Lodge II, $113,173, may be collectable in the future depending upon whether or not the hotel industry rebounds from the current recession.

Under the Creditor's Plan, ultimate recoveries made upon claims within Class C2 may be increased by actual results of prosecution of Estate Causes of Action.

Finally, the projections discussed herein are subject to all of the cautionary statements contained elsewhere herein, including the prospect of material changes in assumed facts and events.

C.  Liquidation Alternative.

ORIX believes that the only practical alternative for resolving the Debtor's finances, other than the attempted marketing of the Lodge pursuant to the Creditor's Plan is foreclosure liquidation of the Real Property and any of the Personal Property necessary to its operation (which may all be included within the definition of Real Property) which would result from a Chapter 7 case and the

trustee therein recognizing that the Real Property cannot be sold for an amount sufficient to repay ORIX. Each of the Proponents believes that the liquidation alternative would produce a far less favorable outcome for all Creditors and other parties in interest that the proposal embodied in the Plan proposed by it.

In a Chapter 7 liquidation, an independent trustee would be appointed by the United States Trustee in order to liquidate all of the Estate's assets for a fee, or abandon those with no value to the Estate, and Creditors would receive proceeds of that liquidation, on a *pro rata* basis, net of costs of liquidation and after payment of senior obligations, such as ORIX. In both Proponents' views, the gross proceeds of that liquidation would be less, the Secured Claims would be greater, the costs of liquidation would be greater, and the ultimate outcome for Creditors would be materially worse, such that a Chapter 7 trustee would probably abandon the Lodge, leading to a non-judicial foreclosure by ORIX. The likely outcome of a liquidation of the Debtor's assets by foreclosure is that unsecured Creditors would receive nothing.

The liquidation analysis does not include any recoveries upon Estate Causes of Action, given the unknown extent and outcome of those causes of action at this time. However, because such caused of action are preserved in both of the Plans, each Proponent believes that essentially the same benefit that would be derived by Creditors from those causes of action in a Chapter 7 liquidation would also be derived by those Creditors under the terms of the Plan proposed by it.

Given the anticipated results of a Chapter 7 liquidation of the Debtor, the probable outcome for holder's of general Unsecured Claims under either of the Plans is decidedly more favorable. In sum, such Creditors would likely receive no distribution at all in a Chapter 7 liquidation.

[Continued on Following Page]

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 53 of 69

# SECTION X

X.    Conclusion and Recommendation

Based upon the foregoing, each Proponent believes that confirmation and implementation of the Plan proposed by it is in the best interests of all of the Creditors. The Debtor further believes that confirmation and implementation of the Debtor's Plan is in the best interest of all Equity Holders. Each Proponent therefore recommends that all Claimants that are entitled to vote with respect to the Plan proposed by it cast Ballots to accept that Plan.

Dated: December 21, 2009                LIGHTHOUSE LODGE, LLC

                                        KLEIN, DENATALE, GOLDNER, COOPER,
                                            ROSENLIEB & KIMBALL


                                        By:    _____/s/ Hagop T. Bedoyan_____
                                               Hagop T. Bedoyan, Esq.
                                               Attorneys for Debtor LIGHTHOUSE LODGE,
                                               LLC

Dated: December 21, 2009                ORIX CAPITAL MARKETS, LLC

                                        JEFFER, MANGELS, BUTLER & MARMARO LLP


                                        By:    _____/s/ Robert B. Kaplan_____
                                               Robert B. Kaplan, Esq.
                                               Attorneys for Secured Creditor
                                               ORIX CAPITAL MARKETS, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT A

## OPERATING RESULTS AND BUDGET

**[SEE FOLLOWING PAGES]**

| Account | Title | Current Activity | Current Budget | MTD Variance | YTD Net | YTD Budget | Variance |
|---|---|---|---|---|---|---|---|
| **Statistical Analysis** | | | | | | | |
| 0500.00 | # Lodge Rev Prod Rooms | 961.00 | 0 | 961.00 | 14,814.00 | 0 | 14,814.00 |
| 0505.00 | # Suite Rev Prod Rooms | 658.00 | 0 | 658.00 | 7,318.00 | 0 | 7,318.00 |
| Total Revenue Producing Rooms | | 1,619.00 | 0 | 1,619.00 | 22,132.00 | 0 | 22,132.00 |
| 0510.00 | # Lodge Rooms Avail | 1,920.00 | 0 | 1,920.00 | 21,376.00 | 0 | 21,376.00 |
| 0515.00 | # Suite Rooms Available | 930.00 | 0 | 930.00 | 10,354.00 | 0 | 10,354.00 |
| Total Rooms Available | | 2,850.00 | 0 | 2,850.00 | 31,730.00 | 0 | 31,730.00 |
| **Revenues** | | | | | | | |
| 5155.01 | LHL Lodge Room Revenue | 85,453.54 | 0 | 85,453.54 | 1,444,914.41 | 0 | 1,444,914.41 |
| 5155.02 | LHL Suite Room Revenue | 88,019.91 | 0 | 88,019.91 | 1,066,107.46 | 0 | 1,066,107.46 |
| 5155.03 | No Show Charge Revenue | 10,153.43 | 0 | 10,153.43 | 26,308.32 | 0 | 26,308.32 |
| 5156.00 | Phone Sales | 0 | 0 | 0 | 1,334.94 | 0 | 1,334.94 |
| 5157.00 | Misc Sales | 2,495.50 | 0 | 2,495.50 | 13,916.45 | 0 | 13,916.45 |
| 5157.03 | Internet Access Fees | 470.82 | 0 | 470.82 | 8,203.02 | 0 | 8,203.02 |
| 5170.00 | In Room Movies | 10.00 | 0 | 10.00 | 9,433.12 | 0 | 9,433.12 |
| 5171.00 | Banquet Revenue | 2,630.22 | 0 | 2,630.22 | 41,195.69 | 0 | 41,195.69 |
| 5173.00 | Aquarium Tickets | 1,648.75 | 0 | 1,648.75 | 26,233.49 | 0 | 26,233.49 |
| 5174.00 | Coffee Bar | 667.21 | 0 | 667.21 | 15,141.72 | 0 | 15,141.72 |
| 5175.00 | Honor Bar | 831.27 | 0 | 831.27 | 10,078.83 | 0 | 10,078.83 |
| 5177.00 | Resort Amenities | 0 | 0 | 0 | 85,140.00 | 0 | 85,140.00 |
| 5200.00 | Interest Income | 0 | 0 | 0 | 82.99 | 0 | 82.99 |
| 5207.00 | Other Income | (8,487.26) | 0 | (8,487.26) | (6,798.34) | 0 | (6,798.34) |
| Total Revenues | | 183,893.39 | 0 | 183,893.39 | 2,741,292.10 | 0 | 2,741,292.10 |
| **Cost of Sales** | | | | | | | |
| 7250.00 | Salary & Wages | 64,860.00 | 0 | 64,860.00 | 738,678.40 | 0 | 738,678.40 |
| 7400.00 | Payroll Tax Expense | 5,516.66 | 0 | 5,516.66 | 71,026.48 | 0 | 71,026.48 |
| 7530.00 | Worker's Comp Expense | 7,150.94 | 0 | 7,150.94 | 52,557.18 | 0 | 52,557.18 |
| 7701.00 | Employee Expense | 1,051.92 | 0 | 1,051.92 | 6,714.87 | 0 | 6,714.87 |
| 8700.00 | Health Insurance | 4,242.73 | 0 | 4,242.73 | 46,571.07 | 0 | 46,571.07 |
| Total Cost of Sales | | 82,822.25 | 0 | 82,822.25 | 915,548.00 | 0 | 915,548.00 |
| Gross Margin | | 101,071.14 | 0 | 101,071.14 | 1,825,744.10 | 0 | 1,825,744.10 |
| **Operating Expenses** | | | | | | | |
| **Purchases** | | | | | | | |
| 7752.00 | Equipment Purchases | 622.58 | 0 | 622.58 | 1,917.74 | 0 | 1,917.74 |
| Total Purchases | | 622.58 | 0 | 622.58 | 1,917.74 | 0 | 1,917.74 |
| **Utilities** | | | | | | | |
| 7852.00 | Cal American Utility | 2,258.21 | 0 | 2,258.21 | 23,914.82 | 0 | 23,914.82 |
| 7854.00 | PG&E Gas & Electric | 7,222.64 | 0 | 7,222.64 | 104,104.36 | 0 | 104,104.36 |
| 7856.00 | Telephone Utility | 1,209.24 | 0 | 1,209.24 | 16,560.16 | 0 | 16,560.16 |
| 7858.00 | (800) Phone Utility | 185.56 | 0 | 185.56 | 2,278.26 | 0 | 2,278.26 |
| 7860.00 | Cabel Television | 0 | 0 | 0 | 557.73 | 0 | 557.73 |
| 7862.00 | MRWPCA (Water & Sewer) | 0 | 0 | 0 | 14,529.52 | 0 | 14,529.52 |
| 7864.00 | Misc Utility | 570.71 | 0 | 570.71 | 6,218.86 | 0 | 6,218.86 |
| 8965.00 | Trash Removal | 1,499.54 | 0 | 1,499.54 | 18,679.19 | 0 | 18,679.19 |
| Total Utilities | | 12,945.90 | 0 | 12,945.90 | 186,842.90 | 0 | 186,842.90 |
| **General & Administrative** | | | | | | | |
| 7709.00 | Equipment Expense | 0 | 0 | 0 | 4,848.78 | 0 | 4,848.78 |
| 7710.00 | Office Supplies | 1,106.41 | 0 | 1,106.41 | 9,131.21 | 0 | 9,131.21 |
| 7711.00 | Postage & Federal Express | 164.50 | 0 | 164.50 | 2,483.75 | 0 | 2,483.75 |
| 7715.00 | Education & Training | 0 | 0 | 0 | 37.72 | 0 | 37.72 |
| 8620.00 | Customer Refunds | 1,428.80 | 0 | 1,428.80 | 3,079.05 | 0 | 3,079.05 |
| 8650.00 | Auto Expense | 0 | 0 | 0 | 4,262.97 | 0 | 4,262.97 |
| 8652.00 | Meals & Entertainment | 0 | 0 | 0 | 2,036.32 | 0 | 2,036.32 |
| 8653.00 | Dues & Subscriptions | 0 | 0 | 0 | 7,205.11 | 0 | 7,205.11 |
| 3750.00 | Auto Insurance | 0 | 0 | 0 | 1,115.00 | 0 | 1,115.00 |
| 3756.00 | Insurance Misc | 0 | 0 | 0 | 298.75 | 0 | 298.75 |
| 3850.00 | Permits & Fees | 0 | 0 | 0 | 4,325.00 | 0 | 4,325.00 |
| 3900.00 | Accounting Fees | 0 | 0 | 0 | 8,252.92 | 0 | 8,252.92 |
| 3910.00 | Legal Fees | 4,750.10 | 0 | 4,750.10 | 55,251.26 | 0 | 55,251.26 |

| Account | Title | Current Activity | Current Budget | MTD Variance | YTD Net | YTD Budget | Variance |
|---|---|---|---|---|---|---|---|
| 8920.00 | Professional Fees | 8,298.96 | 0 | 8,298.96 | 85,353.74 | 0 | 85,353.74 |
| 8930.00 | Bad Debts | 0 | 0 | 0 | 200.00 | 0 | 200.00 |
| 8950.00 | Bank Charges | 0 | 0 | 0 | 4,436.12 | 0 | 4,436.12 |
| 8952.00 | Credit Card Fees | 6,524.94 | 0 | 6,524.94 | 90,435.57 | 0 | 90,435.57 |
| 8953.00 | Charge Backs on Credit Cards | (727.98) | 0 | (727.98) | 10,381.19 | 0 | 10,381.19 |
| 8970.00 | Travel & Lodging | 0 | 0 | 0 | 381.61 | 0 | 381.61 |
| 9000.00 | Miscellaneous | 0 | 0 | 0 | 810.00 | 0 | 810.00 |
| 9025.00 | TeleVideo Movies | 1,173.00 | 0 | 1,173.00 | 25,938.56 | 0 | 25,938.56 |
| | **Total General & Administrative** | **22,718.73** | **0** | **22,718.73** | **320,264.63** | **0** | **320,264.63** |
| **Housekeeping** | | | | | | | |
| 7756.00 | Guest Amenities | 829.12 | 0 | 829.12 | 13,480.91 | 0 | 13,480.91 |
| 7758.00 | Cleaning Supply Purchase | 1,488.72 | 0 | 1,488.72 | 18,479.88 | 0 | 18,479.88 |
| 7760.00 | Paper Supply Purchase | 0 | 0 | 0 | 5,101.19 | 0 | 5,101.19 |
| 7766.00 | Linen & Terry Purchases | 527.35 | 0 | 527.35 | 903.44 | 0 | 903.44 |
| 7770.00 | Room Supply Purchases | 0 | 0 | 0 | 9,971.24 | 0 | 9,971.24 |
| 7772.00 | Laundry Supply Purchases | 1,438.82 | 0 | 1,438.82 | 9,593.74 | 0 | 9,593.74 |
| | **Total Housekeeping** | **4,284.01** | **0** | **4,284.01** | **57,530.40** | **0** | **57,530.40** |
| **Maintenance & Grounds** | | | | | | | |
| 7902.00 | Alarm & Security | 151.14 | 0 | 151.14 | 3,022.82 | 0 | 3,022.82 |
| 7903.00 | Pool Services | 500.00 | 0 | 500.00 | 8,603.00 | 0 | 8,603.00 |
| 8600.00 | Repairs & Maintenance | 455.79 | 0 | 455.79 | 22,125.13 | 0 | 22,125.13 |
| 8600.01 | Fish Maintenance & Repair | 341.09 | 0 | 341.09 | 4,241.40 | 0 | 4,241.40 |
| 8963.00 | Landscaping | 2,000.00 | 0 | 2,000.00 | 21,700.00 | 0 | 21,700.00 |
| | **Total Maintenance & Grounds** | **3,448.02** | **0** | **3,448.02** | **59,692.35** | **0** | **59,692.35** |
| **Food & Beverage** | | | | | | | |
| 7762.00 | Kitchen Supply Purchase | 1,123.88 | 0 | 1,123.88 | 22,924.96 | 0 | 22,924.96 |
| 7764.00 | Food Purchases | 10,908.04 | 0 | 10,908.04 | 160,380.29 | 0 | 160,380.29 |
| 7765.00 | Wine & Beer | 1,398.00 | 0 | 1,398.00 | 14,485.86 | 0 | 14,485.86 |
| 9030.00 | Honor Bar Expenses | 1,176.68 | 0 | 1,176.68 | 5,495.97 | 0 | 5,495.97 |
| | **Total Kitchen** | **14,606.60** | **0** | **14,606.60** | **203,287.08** | **0** | **203,287.08** |
| **Affiliation** | | | | | | | |
| | **Total Affiliation** | **0** | **0** | **0** | **0** | **0** | **0** |
| **Sales** | | | | | | | |
| 8610.00 | Commissions | 5,969.32 | 0 | 5,969.32 | 36,697.23 | 0 | 36,697.23 |
| 8615.00 | Sales Commissions | 9,860.64 | 0 | 9,860.64 | 72,353.88 | 0 | 72,353.88 |
| 8630.00 | Overbooked Room Charges | 0 | 0 | 0 | 4,724.01 | 0 | 4,724.01 |
| 8651.00 | Donations & Contributions | 0 | 0 | 0 | 150.00 | 0 | 150.00 |
| 8654.00 | Advertising | (95.54) | 0 | (95.54) | 2,844.00 | 0 | 2,844.00 |
| 8655.00 | Marketing & Promotion | 0 | 0 | 0 | 2,162.85 | 0 | 2,162.85 |
| 9010.00 | Promo Offset Misc Sale | 1,245.90 | 0 | 1,245.90 | 28,702.70 | 0 | 28,702.70 |
| 9015.00 | Promo Offset Room Sales | 0 | 0 | 0 | 246.08 | 0 | 246.08 |
| 9020.00 | Group Expenses | 76.78 | 0 | 76.78 | 6,770.12 | 0 | 6,770.12 |
| | **Total Sales Expense** | **17,057.10** | **0** | **17,057.10** | **154,650.87** | **0** | **154,650.87** |
| | **Total Operating Expense** | **75,682.94** | **0** | **75,682.94** | **984,185.97** | **0** | **984,185.97** |
| | **Total Operating Income/Loss** | **25,388.20** | **0** | **25,388.20** | **841,558.13** | **0** | **841,558.13** |
| **Uncontrollable Expenses** | | | | | | | |
| 8751.00 | Property Insurance | 0 | 0 | 0 | 65,761.00 | 0 | 65,761.00 |
| 8940.00 | Interest Expense | 0 | 0 | 0 | 145.13 | 0 | 145.13 |
| 8941.00 | Debt Service Interest | 65,712.99 | 0 | 65,712.99 | 707,130.68 | 0 | 707,130.68 |
| 8980.00 | Late Fees | 0 | 0 | 0 | 26,457.50 | 0 | 26,457.50 |
| 9213.00 | Property Taxes | 0 | 0 | 0 | 184.88 | 0 | 184.88 |
| 9870.00 | State Income Taxes | 0 | 0 | 0 | 6,800.00 | 0 | 6,800.00 |
| | **Total Uncontrollable Expenses** | **65,712.99** | **0** | **65,712.99** | **806,479.19** | **0** | **806,479.19** |
| **Officer's Expense** | | | | | | | |
| | **Total Officers Expense** | **0** | **0** | **0** | **0** | **0** | **0** |
| | **Profit/Loss After Officer Expense** | **(40,324.79)** | **0** | **(40,324.79)** | **35,078.94** | **0** | **35,078.94** |

**Balance Sheet Cash Flow Activity**

**Asset Activity**

| Account | Title | Current Activity | Current Budget | MTD Variance | YTD Net | YTD Budget | Variance |
|---|---|---|---|---|---|---|---|
| 1200.00 | Accounts Receivable | (56,106.62) | 0 | (56,106.62) | (22,066.49) | 0 | (22,066.49) |
| 1290.00 | Due To From Intercompany-LHL | 0 | 0 | 0 | 13,064.11 | 0 | 13,064.11 |
| 1298.00 | Due To/From Intercompany-P | 0 | 0 | 0 | 5,272.10 | 0 | 5,272.10 |
| 1320.00 | Prepaid Group Deposits | 0 | 0 | 0 | 9,838.95 | 0 | 9,838.95 |

1150 Lighthouse Avenue
Pacific Grove, California 93950
Income Statement
For the Period Ended November 30, 2009

| Account | Title | Current Activity | Current Budget | MTD Variance | YTD Net | YTD Budget | Variance |
|---|---|---|---|---|---|---|---|
| 1325.00 | Prepaid Gift Certificates | 0 | 0 | 0 | (2,038.92) | 0 | (2,038.92) |
| 2010.00 | FF&E | 0 | 0 | 0 | 7,922.30 | 0 | 7,922.30 |
| | **Total Asset Activity** | **(56,106.62)** | **0** | **(56,106.62)** | **11,992.05** | **0** | **11,992.05** |
| **Liability & Equity Activity** | | | | | | | |
| 3100.00 | Accounts Payable | (1,529.74) | 0 | (1,529.74) | 78,682.32 | 0 | 78,682.32 |
| 3130.00 | Wages Payable | (578.14) | 0 | (578.14) | (511.59) | 0 | (511.59) |
| 3150.00 | Employee Withheld Payable | (220.51) | 0 | (220.51) | 127.75 | 0 | 127.75 |
| 3189.00 | Payroll Taxes Payable | (630.03) | 0 | (630.03) | (2,198.62) | 0 | (2,198.62) |
| 3195.00 | Room Tax Payable | 903.52 | 0 | 903.52 | 6,893.43 | 0 | 6,893.43 |
| 3200.00 | Sales Tax Payable | 127.37 | 0 | 127.37 | 459.31 | 0 | 459.31 |
| 3210.00 | Tourism Tax | (15.00) | 0 | (15.00) | 529.00 | 0 | 529.00 |
| 3514.00 | NP First National Bank | 0 | 0 | 0 | (495.03) | 0 | (495.03) |
| 3533.00 | NP Nations Bank | (5,829.41) | 0 | (5,829.41) | (65,140.70) | 0 | (65,140.70) |
| 4009.00 | Partner Capital | 0 | 0 | 0 | (55,703.14) | 0 | (55,703.14) |
| | **Total Liability & Equity Activity** | **(7,771.94)** | **0** | **(7,771.94)** | **(37,357.27)** | **0** | **(37,357.27)** |
| | **Total Balance Sheet Cash Flow Activity** | **48,334.68** | **0** | **48,334.68** | **(49,349.32)** | **0** | **(49,349.32)** |
| | **Net Cash Flow** | **8,009.89** | **0** | **8,009.89** | **(14,270.38)** | **0** | **(14,270.38)** |

Confidential: For Internal Use Only

| Account | Account Title | Current Balance |
|---|---|---|
| **Assets** | | |
| **Current Assets** | | |
| **Cash** | | |
| 1028.13 | 1st Operating Dip | $ 143,956.97 |
| 1050.03 | Key Bank  FF&E Reserve | 1.74 |
| 1050.04 | Key Bank Property Tax Reserve | 76,942.75 |
| 1050.05 | Key Bank  Insurance Reserve | 5,382.62 |
| | **Total Cash** | **$ 226,284.08** |
| **Accounts Receivable** | | |
| 1200.00 | Accounts Receivable | $ 40,577.04 |
| 1200.01 | AR-Hotel In House Guest Ledger | 7,842.85 |
| | **Total Accounts Receivable** | **$ 48,419.89** |
| **Inter Project Loans** | | |
| 1290.12 | Inter Co LHL and NWD | $ 198,996.05 |
| 1290.13 | Due To/From LHL and COF | 2,735.55 |
| 1290.15 | Due To/From LHL and Anton Inn | 113,173.09 |
| 1298.00 | Due To/From LHL & Mercy Spirngs Road | 20,131.62 |
| | **Total Inter Project Loans** | **$ 335,036.31** |
| **Prepaid Expenses** | | |
| 1325.00 | Prepaid Gift Certificates | $ (55,315.14) |
| | **Total Prepaid Expenses** | **$ (55,315.14)** |
| **Work In Progress** | | |
| | **Total Work In Progress** | |
| | **Total Current Assets** | **$ 554,425.14** |
| **Fixed  & Long Term Assets** | | |
| 2000.00 | Land | $ 2,023,834.12 |
| 2010.00 | FF&E | 2,263,630.29 |
| 2010.06 | FF&E Fire Damage Repair | 1,437.23 |
| 2010.07 | FF&E LHL 2008 Improvements | 540,639.88 |
| 2020.00 | Building | 9,303,174.55 |
| 2035.00 | Amortization-Land | (4,718,632.00) |
| 2040.00 | Accumulated Deprn. - FF&E | (792,974.13) |
| 2042.00 | Accum Depr -Improvements | (78,470.00) |
| 2230.00 | Loan Fees (Asset) | 164,061.50 |
| | **Total Fixed & Long Term Assets** | **$ 8,706,701.44** |
| | **Total Assets** | **$ 9,261,126.58** |

## Lighthouse Lodge & Suites LLC
### For the 11 Periods Ended November 30, 2009

| Account | Account Title | Current Balance |
|---|---|---|
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Accounts Payable** | | |
| 3100.00 | Accounts Payable | $ 495,703.22 |
| 3130.00 | Wages Payable | 29,918.13 |
| 3150.00 | Employee Withheld Payable | 127.75 |
| 3189.00 | Payroll Taxes Payable | 6,517.98 |
| 3195.00 | Room Tax Payable | 6,893.43 |
| 3200.00 | Sales Tax Payable | 899.05 |
| 3210.00 | Tourism Tax | 529.00 |
| | **Total Accounts Payable** | **$ 540,588.56** |
| **Bank Payables** | | |
| | **Total Bank Payables** | |
| | **Total Current Liabilities** | **$ 540,588.56** |
| **Long Term Liabilities** | | |
| 3514.01 | NP First National Bank--Line of Credit | $ 24,504.97 |
| 3533.00 | NP Key BankReal Estate Capital | 8,594,732.65 |
| | **Total Long Term Liabilities** | **$ 8,619,237.62** |
| | **Total Liabilities** | **$ 9,159,826.18** |
| **Equity** | | |
| | Net Income | $ 35,078.94 |
| 4009.00 | Partner Capital | (112,897.34) |
| 4012.00 | Bennie Johnson Draw | 52,211.21 |
| 4015.00 | General Partner Contributio | 1,721,361.69 |
| 4017.00 | Carl Miller | 4,091,834.69 |
| 4018.00 | Jacci Pflieger-Capital | (761,661.96) |
| 4019.00 | Sheri Pflieger-Capital | (950,561.96) |
| 4020.00 | Retained Earnings | (1,339,124.15) |
| 4021.00 | Prior Years RE | (2,634,940.72) |
| | **Total Equity** | **$ 101,300.40** |
| | **Total Liabilities & Equity** | **$ 9,261,126.58** |

| | Dec-09 | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Occupancy | 57.03% | 56.07% | 69.55% | 88.96% | 73.79% | 75.28% | 73.72% | 79.80% | 81.49% | 74.70% | 62.63% | 57.39% | | 70.64% |
| Rooms Available | 2945 | 2945 | 2660 | 2945 | 2850 | 2945 | 2850 | 2945 | 2945 | 2850 | 2945 | 2850 | 2945 | 40570 |
| Rooms Occupied | 1680 | 1650 | 1850 | 2620 | 2160 | 2217 | 2101 | 2350 | 2400 | 2230 | 2200 | 1785 | 1690 | 28708 |
| ADR | $105.25 | $100.03 | $113.87 | $85.89 | $112.82 | $112.16 | $178.49 | $162.98 | $160.83 | $125.00 | $126.05 | $105.92 | | $135.22 |
| **Rooms Revenue** | $176,823.19 | $165,052.83 | $210,651.08 | $225,025.67 | $243,690.00 | $248,649.53 | $375,000 | $383,000 | $386,000 | $285,000.00 | $275,000.00 | $225,000.00 | $179,000 | $3,594,592.58 |
| **Revenue** | | | | | | | | | | | | | | |
| LHL Lodge Room | $106,093.91 | $99,031.70 | $126,390.65 | $135,015.40 | $146,214.00 | $149,189.72 | $225,000.00 | $229,800.00 | $231,600.00 | $171,000.00 | $165,000.00 | $135,000.00 | $107,400.00 | $2,156,971.55 |
| LHL Suites | $70,729.28 | $66,021.13 | $84,260.43 | $90,010.27 | $97,476.00 | $99,459.81 | $150,000.00 | $153,200.00 | $154,400.00 | $114,000.00 | $110,000.00 | $90,000.00 | $71,600.00 | $1,437,183.10 |
| Phone | $285.60 | $280.50 | $314.50 | ($445.40) | $367.20 | $376.89 | $357.17 | $399.50 | $408.00 | $379.10 | $374.00 | $303.45 | $287.30 | $4,880.36 |
| Misc. Sales | $3,040.80 | $2,986.50 | $3,348.20 | $4,742.20 | $3,909.60 | $4,012.77 | $3,802.81 | $4,253.50 | $4,344.00 | $4,036.30 | $3,982.00 | $3,230.85 | $3,058.90 | $51,961.48 |
| Movie Sales | $2,016.00 | $1,980.00 | $2,220.00 | $3,144.00 | $2,592.00 | $2,660.40 | $2,521.20 | $2,820.00 | $2,880.00 | $2,676.00 | $2,640.00 | $2,142.00 | $2,028.00 | $34,449.60 |
| Honor Bar Sales | $823.20 | $808.50 | $906.50 | $1,283.80 | $1,058.40 | $1,086.33 | $1,029.49 | $1,151.50 | $1,176.00 | $1,092.70 | $1,078.00 | $874.65 | $828.10 | $14,066.92 |
| Banquet & Aquarium Reve | $6,216.00 | $6,105.00 | $6,845.00 | $9,694.00 | $7,992.00 | $8,202.90 | $7,773.70 | $8,695.00 | $8,860.00 | $8,251.00 | $8,140.00 | $6,604.50 | $6,253.00 | $106,419.60 |
| Other Income | ($285.60) | ($314.50) | ($445.40) | ($367.20) | ($376.89) | ($357.17) | ($399.50) | ($408.00) | ($379.10) | ($374.00) | ($903.45) | ($287.30) | | ($4,880.74) |
| **Total Income** | $188,910.19 | $176,652.83 | $233,971.08 | $241,889.67 | $259,242.00 | $264,611.90 | $390,127.26 | $399,000.00 | $403,280.00 | $301,036.00 | $290,840.00 | $237,852.00 | $191,168.00 | $3,801,650.18 |
| **Total Revenue** | $188,910.19 | $176,652.83 | $233,971.08 | $241,889.67 | $259,242.00 | $264,611.90 | $390,127.26 | $399,000.00 | $403,280.00 | $301,036.00 | $290,840.00 | $237,852.00 | $191,168.00 | $3,801,650.18 |
| Property Tax | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $154,089.74 |
| Insurance | $4,600.00 | $4,600.00 | | | | | | | | | | | | $60,000.00 |
| **Total Fixed** | $15,606.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $11,006.41 | $214,089.74 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Net Operating Expenses** | $173,312.78 | $161,326.42 | $212,964.67 | $232,883.26 | $248,235.59 | $253,605.50 | $343,113.59 | $392,273.59 | $290,649.59 | $279,833.59 | $226,845.59 | $180,161.59 | | $3,587,560.44 |
| **Labor & Burden** | | | | | | | | | | | | | | |
| Wages | $55,000.00 | $55,000.00 | $60,000.00 | $62,000.00 | $62,000.00 | $64,000.00 | $68,500.00 | $68,500.00 | $68,500.00 | $68,500.00 | $68,500.00 | $68,500.00 | $68,500.00 | $991,500.00 |
| Payroll Tax Expense | $6,050.00 | $6,050.00 | $6,600.00 | $6,820.00 | $6,820.00 | $7,040.00 | $7,535.00 | $7,535.00 | $7,535.00 | $7,535.00 | $7,535.00 | $7,535.00 | $7,535.00 | $54,991.50 |
| Workers Comp. | $3,355.00 | $3,355.00 | $3,660.00 | $3,782.00 | $3,782.00 | $3,904.00 | $4,178.50 | $4,178.50 | $4,178.50 | $4,178.50 | $4,178.50 | $4,178.50 | $4,178.50 | $54,991.50 |
| Health Insurance | $3,493.50 | $3,404.50 | $3,714.00 | $3,837.80 | $3,837.80 | $3,961.60 | $4,240.15 | $4,240.15 | $4,240.15 | $4,240.15 | $4,240.15 | $4,240.15 | $4,240.15 | $55,802.85 |
| **Total Labor & Burden** | $67,809.50 | $67,809.50 | $73,974.00 | $76,439.80 | $76,439.80 | $78,905.60 | $84,453.65 | $84,453.65 | $84,453.65 | $84,453.65 | $84,453.65 | $84,453.65 | $84,453.65 | $1,111,459.35 |
| **Purchases** | | | | | | | | | | | | | | |
| Equipment Purchase | $268.80 | $264.00 | $296.00 | $419.20 | $343.60 | $354.72 | $336.16 | $376.00 | $384.00 | $356.80 | $352.00 | $270.40 | | $4,593.28 |
| Financial Pacific Lease | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $622.58 | $8,716.12 |
| **Total Equipment Purchase** | $891.38 | $886.58 | $918.58 | $1,041.78 | $966.18 | $977.30 | $958.74 | $998.58 | $1,006.58 | $979.38 | $974.58 | $908.18 | $892.98 | $13,309.40 |

| Category | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Utilities** | | | | | | | | | | | | | | | |
| Cal Am | $1,965.60 | $1,930.50 | $2,164.50 | $3,063.40 | $2,327.20 | $2,593.89 | $2,458.17 | $2,749.50 | $2,808.10 | $2,574.00 | $2,699.10 | $2,088.45 | $1,977.30 | | $33,588.36 |
| PG&E | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | | $147,000.00 |
| Telephone | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | | $12,073.88 |
| 800 Phone | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | | $7,000.00 |
| Cable TV | $100.80 | $99.00 | $111.00 | $157.20 | $129.60 | $131.02 | $126.06 | $141.00 | $144.00 | $133.80 | $132.00 | $107.10 | $101.40 | | $1,722.48 |
| Misc Utility | $470.40 | $462.00 | $518.00 | $733.60 | $694.80 | $620.76 | $588.28 | $638.00 | $624.00 | $616.00 | $499.80 | $473.20 | | | $8,038.24 |
| MRWPCA | $1,596.00 | $1,596.00 | $1,596.00 | $1,596.00 | $1,596.00 | $1,596.00 | $1,596.00 | | $1,596.00 | $1,596.00 | $1,596.00 | $1,596.00 | $1,596.00 | | $11,172.00 |
| Trash Removal | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | | $22,400.00 |
| **Total Utilities** | $17,595.22 | $15,503.92 | $17,851.92 | $17,416.62 | $18,330.02 | $18,810.09 | $18,230.93 | $17,010.92 | $18,682.42 | $16,820.72 | $18,380.42 | $16,157.77 | $17,610.12 | | $242,994.96 |
| **General & Admin** | | | | | | | | | | | | | | | |
| Equipment Expense | $218.40 | $214.50 | $240.50 | $340.60 | $280.80 | $288.21 | $273.13 | $305.50 | $312.00 | $286.00 | $289.90 | $232.05 | $219.70 | | $3,732.04 |
| Office Supplies | $991.20 | $973.50 | $1,091.50 | $1,545.80 | $1,274.40 | $1,308.03 | $1,386.50 | $1,416.00 | $1,298.00 | $1,315.70 | $1,053.15 | $997.10 | | | $16,937.72 |
| Postage & Fed Ex. | $184.80 | $181.50 | $203.50 | $288.20 | $237.67 | $243.87 | $231.11 | $258.50 | $264.00 | $245.30 | $242.00 | $198.35 | $185.90 | | $3,157.88 |
| Customer Refunds | $201.60 | $198.00 | $222.00 | $314.40 | $266.04 | $259.20 | $252.12 | $282.00 | $288.00 | $267.60 | $264.00 | $214.20 | $202.80 | | $3,444.96 |
| Auto Expense | $84.00 | $82.50 | $92.50 | $131.00 | $108.00 | $110.85 | $105.05 | $117.50 | $120.00 | $111.50 | $110.00 | $89.25 | $84.50 | | $1,435.40 |
| Meals & Entertainment | $672.00 | $660.00 | $740.00 | $1,048.00 | $864.00 | $886.80 | $840.00 | $940.00 | $960.00 | $892.00 | $880.00 | $714.00 | $676.00 | | $11,483.20 |
| Dues & Subscriptions | $487.20 | $478.50 | $536.50 | $759.80 | $626.40 | $642.93 | $609.29 | $681.50 | $696.00 | $646.70 | $638.00 | $517.65 | $490.10 | | $8,325.32 |
| Permits & Fees | $302.40 | $297.00 | $333.00 | $471.60 | $388.80 | $399.06 | $378.18 | $423.00 | $432.00 | $401.40 | $396.00 | $321.30 | $304.20 | | $5,167.44 |
| Accounting Fees | | | | | | | | | | | | | | | |
| Legal Fees | $1,680.00 | $1,650.00 | $1,850.00 | $2,620.00 | $2,160.00 | $2,217.00 | $2,101.00 | $2,350.00 | $2,400.00 | $2,230.00 | $2,200.00 | $1,785.00 | $1,690.00 | | $28,106.00 |
| Professional Fees | $5,040.00 | $4,950.00 | $5,550.00 | $7,860.00 | $6,480.00 | $6,651.00 | $6,303.00 | $7,050.00 | $7,200.00 | $6,690.00 | $6,600.00 | $5,355.00 | $5,070.00 | | $86,124.00 |
| Bank Charges | $672.00 | $660.00 | $740.00 | $1,048.00 | $864.00 | $886.80 | $840.00 | $940.00 | $960.00 | $892.00 | $880.00 | $714.00 | $676.00 | | $11,483.20 |
| Credit Card Fees | $5,208.00 | $5,115.00 | $5,735.00 | $8,122.00 | $6,696.00 | $6,872.70 | $6,513.10 | $7,285.00 | $7,440.00 | $6,913.00 | $6,820.00 | $5,533.50 | $5,239.00 | | $88,994.80 |
| CC Chargebacks | $588.00 | $577.50 | $647.50 | $917.00 | $756.00 | $775.95 | $735.35 | $822.50 | $780.50 | $770.00 | $624.75 | $591.50 | | | $10,937.80 |
| Miscellaneous | $504.00 | $495.00 | $555.00 | $786.00 | $648.00 | $665.10 | $630.30 | $705.00 | $720.00 | $669.00 | $660.00 | $535.50 | $507.00 | | $8,612.40 |
| In Room Movies | $2,520.00 | $2,475.00 | $2,775.00 | $3,930.00 | $3,240.00 | $3,325.50 | $3,151.50 | $3,525.00 | $3,600.00 | $3,345.00 | $3,300.00 | $2,677.50 | $2,535.00 | | $75,962.00 |
| **Total Gen & Adm** | $19,555.20 | $19,206.00 | $21,534.00 | $30,496.80 | $25,142.40 | $25,805.88 | $24,455.64 | $27,354.00 | $27,936.00 | $25,957.20 | $25,608.00 | $20,777.40 | $19,671.60 | | $366,161.12 |
| **Housekeeping** | | | | | | | | | | | | | | | |
| Guest Amenity | $1,848.00 | $1,815.00 | $2,035.00 | $2,882.00 | $2,376.00 | $2,438.70 | $2,311.10 | $2,585.00 | $2,640.00 | $2,453.00 | $2,420.00 | $1,963.50 | $1,859.00 | | $31,578.00 |
| Cleaning Supply | $1,428.00 | $1,402.50 | $1,572.50 | $2,227.00 | $1,884.15 | $1,884.45 | $1,997.50 | $2,040.00 | $1,895.50 | $1,870.00 | $1,517.25 | $1,436.50 | | | $24,401.80 |
| Paper Supply | $672.00 | $660.00 | $740.00 | $1,048.00 | $854.00 | $840.40 | $940.00 | $1,057.50 | $960.00 | $880.00 | $714.40 | $676.00 | | | $11,483.20 |
| Linen & Terry | $756.00 | $742.50 | $832.50 | $1,179.00 | $972.00 | $997.65 | $1,057.20 | $922.50 | $1,080.30 | $990.00 | $803.25 | $761.00 | | | $12,918.60 |
| Laundry Supplies | $840.00 | $825.00 | $925.00 | $1,310.00 | $1,080.00 | $1,108.30 | $1,050.00 | $1,175.00 | $1,100.30 | $1,113.00 | $1,100.00 | $892.50 | $845.00 | | $14,354.00 |
| Room Supplies | $1,596.00 | $1,567.50 | $2,489.00 | $2,052.00 | $2,106.15 | $1,995.95 | $2,232.50 | $2,280.00 | $2,118.50 | $2,090.00 | $1,695.75 | $1,605.50 | | | $27,222.60 |
| **Total Housekeeping** | $7,140.00 | $7,012.50 | $7,862.50 | $9,180.00 | $9,422.25 | $8,929.25 | $9,987.50 | $10,200.00 | $9,477.90 | $9,350.00 | $7,586.25 | $7,182.50 | | | $122,090.00 |

| | | | | | | | | | | Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| **Maintenance & Grounds** | | | | | | | | | | |
| Alarm & Security | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 1,530.00 |
| Pool | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 6,300.00 |
| Fish Repairs & Maintenance | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 5,400.00 |
| Repairs & Maintenance | 1,512.00 | 1,485.00 | 1,665.00 | 2,358.00 | 1,944.00 | 1,995.30 | 1,890.90 | 2,115.00 | 2,160.00 | 16,942.70 |
| Landscaping | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 18,000.00 |
| **Total Maintenance** | 4,982.00 | 4,955.00 | 5,135.00 | 5,828.00 | 5,414.00 | 5,465.30 | 5,360.90 | 5,585.00 | 5,630.00 | 47,792.70 |
| **Kitchen Expense** | | | | | | | | | | |
| Kitchen Supply | 1,512.00 | 1,485.00 | 1,665.00 | 2,358.00 | 1,944.00 | 1,995.30 | 1,890.90 | 2,115.00 | 2,160.00 | 16,562.70 |
| Honor Bar | 218.40 | 214.50 | 240.50 | 280.80 | 288.21 | 273.13 | 305.50 | 312.00 | 289.90 | 2,392.39 |
| Food | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 150,975.00 |
| Wine & Beer | 1,260.00 | 1,237.50 | 1,387.50 | 1,965.00 | 1,620.00 | 1,662.75 | 1,575.75 | 1,800.00 | 1,672.50 | 13,892.25 |
| **Total Kitchen** | 19,765.40 | 19,712.00 | 20,068.00 | 21,338.60 | 20,619.80 | 20,721.26 | 20,514.78 | 21,047.00 | 20,958.00 | 183,722.34 |
| **Sales Expense** | | | | | | | | | | |
| TA Commissions | 1,680.00 | 1,650.00 | 1,850.00 | 2,620.00 | 2,160.00 | 2,101.00 | 2,350.00 | 2,160.00 | 2,230.00 | 18,403.00 |
| Sales & Reservation Comm | 5,204.70 | 4,951.38 | 6,319.53 | 6,750.77 | 7,310.70 | 7,459.49 | 11,250.00 | 11,490.00 | 11,580.00 | 70,636.77 |
| Advertising & Promo | 420.00 | 412.50 | 462.50 | 655.00 | 540.00 | 525.25 | 525.25 | 600.00 | 587.50 | 4,600.75 |
| Marketing & Paper | 420.00 | 412.50 | 462.50 | 655.00 | 540.00 | 525.25 | 587.50 | 587.50 | 557.50 | 4,600.75 |
| Promo Offer | 2,352.00 | 2,310.00 | 2,590.00 | 3,668.00 | 3,024.00 | 3,103.80 | 2,941.40 | 3,290.00 | 3,360.00 | 25,764.20 |
| Overbooked Rooms | 420.00 | 412.50 | 462.50 | 655.00 | 540.00 | 554.25 | 525.25 | 557.50 | 550.00 | 4,600.75 |
| Group Expense | 504.00 | 495.00 | 555.00 | 786.00 | 648.00 | 665.10 | 587.50 | 720.00 | 660.00 | 5,520.90 |
| **Total Sales Expense** | 11,100.70 | 10,644.08 | 12,702.03 | 15,769.77 | 14,762.70 | 15,108.14 | 18,494.45 | 19,597.50 | 19,860.00 | 134,127.12 |
| **Accounts Receivable** | | | | | | | | | | |
| Payments + Balance Forwrd | 25,000.00 | 20,000.00 | 10,000.00 | | | | | | | 212,000.00 |
| **Total Receivables** | 25,000.00 | 20,000.00 | 10,000.00 | | | | | | | 212,000.00 |
| **Total Operating Expense** | | | | | | | | | | |
| **Net Income** | 49,473.38 | 33,146.84 | 62,918.64 | 53,294.80 | 77,388.69 | 80,389.70 | 157,168.44 | 203,457.94 | 109,887.24 | 1,153,074.45 |
| **WIP Improvements** | | | | | | | | | | |
| Oxrs | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 1,001,593.60 |
| Payments to Unsecured tiors | | | | | | | 6,000.00 | 6,000.00 | 6,000.00 | 42,000.00 |
| Geneva | | | | | | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 98,000.00 |
| City of Pacific Grove - PIU | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 63,000.00 |
| **Total Debt Service** | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 100,542.40 | 100,542.40 | 100,542.40 | 100,542.40 | 1,204,593.60 |
| **NET - NET** | (22,069.02) | (38,395.56) | 18,623.76 | (18,247.51) | 5,846.29 | 8,847.30 | 56,626.04 | 102,915.54 | 9,344.84 | (50,619.15) |
| **ROLL OVER** | | | | | | | | | | |
| Order Cum Forward | 880,137.10 | 843,741.54 | 35,117.78 | 16,870.27 | 22,716.56 | 31,563.86 | 183,365.93 | 288,281.49 | 297,626.33 | 168,486.90 |

Case: 09-52610    Doc# 96    Filed: 12/21/09    Entered: 12/21/09 16:10:25    Page 63 of 69

| | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Rooms Revenue** | $ 178,200.00 | $ 220,000.00 | $ 225,025.67 | $ 243,690.00 | $ 248,649.53 | $ 256,291.00 | $ 383,000.00 | $ 402,000.00 | $ 285,000.00 | $ 282,500.00 | $ 225,000.00 | $ 179,000.00 | $ 3,128,356.20 |
| Occupancy | 56.03% | 69.55% | 88.96% | 75.79% | 75.28% | 71.93% | 79.80% | 81.49% | 78.25% | 62.63% | 57.39% | 72.68% | |
| Rooms Available | 2945 | 2660 | 2945 | 2850 | 2945 | 2850 | 2945 | 2945 | 2850 | 2945 | 2850 | 2945 | 34675 |
| Rooms Occupied | 1650 | 1850 | 2620 | 2160 | 2217 | 2050 | 2350 | 2400 | 2230 | 2200 | 1785 | 1690 | 25202 |
| ADR | $ 108.00 | $ 118.92 | $ 85.89 | $ 112.82 | $ 112.16 | $ 125.02 | $ 162.98 | $ 167.50 | $ 127.80 | $ 128.41 | $ 126.05 | $ 105.92 | $ 124.13 |
| **Revenue** | | | | | | | | | | | | | |
| Lift Locker Room | $ 106,920.00 | $ 132,000.00 | $ 135,015.40 | $ 146,214.00 | $ 149,189.72 | $ 153,774.60 | $ 229,800.00 | $ 241,200.00 | $ 171,000.00 | $ 169,500.00 | $ 135,000.00 | $ 107,400.00 | $ 1,877,013.72 |
| L/R Suites | $ 71,280.00 | $ 88,000.00 | $ 90,010.27 | $ 97,476.00 | $ 99,459.81 | $ 102,516.40 | $ 153,200.00 | $ 160,800.00 | $ 114,000.00 | $ 113,000.00 | $ 90,000.00 | $ 71,600.00 | $ 1,251,342.48 |
| Phone | $ 280.50 | $ 314.50 | $ 445.40 | $ 367.20 | $ 376.89 | $ 348.90 | $ 399.50 | $ 466.00 | $ 379.10 | $ 374.00 | $ 363.45 | $ 287.30 | $ 4,284.34 |
| Misc. Sales | $ 2,986.50 | $ 3,348.50 | $ 4,742.20 | $ 3,909.60 | $ 4,012.77 | $ 3,710.50 | $ 4,253.50 | $ 4,344.00 | $ 4,036.90 | $ 3,982.00 | $ 3,058.90 | | $ 45,618.62 |
| Move Sales | $ 1,980.00 | $ 2,220.00 | $ 3,144.00 | $ 2,592.00 | $ 2,660.40 | $ 2,460.00 | $ 2,820.00 | $ 2,880.00 | $ 2,676.00 | $ 2,640.00 | $ 2,142.00 | $ 2,028.00 | $ 30,242.40 |
| Honor Bar Sales | $ 808.50 | $ 906.50 | $ 1,283.80 | $ 1,058.40 | $ 1,096.33 | $ 1,004.50 | $ 1,151.50 | $ 1,176.00 | $ 1,092.70 | $ 1,078.00 | $ 874.65 | $ 828.10 | $ 12,348.98 |
| Banquet & Aquarium Rent | $ 6,105.00 | $ 6,845.00 | $ 9,694.00 | $ 7,992.00 | $ 7,585.00 | $ 8,695.00 | $ 8,880.00 | $ 8,251.00 | $ 6,664.90 | $ 6,253.00 | $ 6,253.00 | | $ 93,247.40 |
| Other Income | $ (280.50) | $ (314.50) | $ (445.40) | $ (367.20) | $ (348.50) | $ (399.50) | $ (408.00) | $ (379.10) | $ (374.00) | $ (303.45) | $ (287.30) | | $ (4,284.34) |
| Total Income | $ 190,080.00 | $ 233,320.00 | $ 243,889.67 | $ 259,241.00 | $ 264,611.93 | $ 271,051.00 | $ 399,020.00 | $ 419,280.00 | $ 301,056.00 | $ 298,340.00 | $ 237,853.00 | $ 191,168.00 | $ 3,309,810.60 |
| **Fixed Expenses** | | | | | | | | | | | | | |
| Property Tax | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 132,076.92 |
| Insurance | | | | | | $ 60,000.00 | | | | | | | $ 60,000.00 |
| Total Fixed | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 71,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 192,076.92 |
| Net Operating Revenue | $ 179,073.59 | $ 222,313.59 | $ 232,883.26 | $ 248,235.59 | $ 253,605.52 | $ 260,044.59 | $ 328,013.59 | $ 408,273.59 | $ 290,049.59 | $ 287,333.59 | $ 226,845.59 | $ 180,161.59 | $ 3,117,733.68 |
| **Operating Expenses** | | | | | | | | | | | | | |
| **Labor & Benefits** | | | | | | | | | | | | | |
| Wages | $ 55,000.00 | $ 60,000.00 | $ 62,000.00 | $ 62,000.00 | $ 64,000.00 | $ 66,000.00 | $ 68,500.00 | $ 68,500.00 | $ 68,500.00 | $ 68,500.00 | $ 68,500.00 | $ 68,500.00 | $ 780,000.00 |
| Payroll Tax Expense | $ 6,600.00 | $ 6,600.00 | $ 6,820.00 | $ 6,820.00 | $ 7,040.00 | $ 7,315.00 | $ 7,535.00 | $ 7,535.00 | $ 7,535.00 | $ 7,535.00 | $ 7,535.00 | $ 7,535.00 | $ 85,835.00 |
| Workers Comp | $ 3,355.00 | $ 3,660.00 | $ 3,782.00 | $ 3,782.00 | $ 3,904.00 | $ 4,056.50 | $ 4,178.50 | $ 4,178.50 | $ 4,178.50 | $ 4,178.50 | $ 4,178.50 | $ 4,178.50 | $ 47,610.50 |
| Health Insurance | $ 3,494.00 | $ 3,714.00 | $ 3,837.80 | $ 3,961.60 | $ 4,116.35 | $ 4,240.15 | $ 4,240.15 | $ 4,240.15 | $ 4,240.15 | $ 4,240.15 | $ 4,240.15 | $ 4,240.15 | $ 48,312.95 |
| Total Labor & Burden | $ 67,809.50 | $ 73,974.00 | $ 76,439.80 | $ 76,439.80 | $ 78,905.60 | $ 81,987.85 | $ 84,453.65 | $ 84,453.65 | $ 84,453.65 | $ 84,453.65 | $ 84,453.65 | $ 84,453.65 | $ 963,278.43 |
| **Purchases** | | | | | | | | | | | | | |
| Equipment Purchase | $ 264.00 | $ 296.00 | $ 419.20 | $ 345.60 | $ 354.72 | $ 328.00 | $ 376.00 | $ 384.00 | $ 356.00 | $ 352.00 | $ 285.60 | $ 270.40 | $ 4,032.32 |
| Financial Pacific Lease | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 7,470.96 |
| Total Equipment Purchase | $ 886.58 | $ 918.58 | $ 1,041.78 | $ 968.18 | $ 977.30 | $ 950.58 | $ 998.58 | $ 1,006.58 | $ 978.58 | $ 974.58 | $ 908.18 | $ 892.98 | $ 11,503.28 |

Rotated landscape financial projection table.

| Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Utilities** | | | | | | | | | | | | | |
| Cal Am | $1,930.50 | $2,164.90 | $3,065.40 | $2,327.20 | $2,593.89 | $2,398.50 | $2,749.30 | $2,608.00 | $2,609.10 | $2,574.00 | $2,088.45 | $1,977.30 | $29,486.34 |
| PG&E | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $10,500.00 | $126,000.00 |
| Telephone | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $862.42 | $10,349.04 |
| 800 Phone | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $6,000.00 |
| Cable TV | $99.00 | $111.00 | $157.20 | $129.60 | $133.02 | $123.00 | $141.00 | $144.00 | $133.80 | $132.00 | $107.10 | $101.40 | $1,512.12 |
| Misc Utility | $462.00 | $518.00 | $733.60 | $604.80 | $620.76 | $574.00 | $658.00 | $672.00 | $624.40 | $616.00 | $499.80 | $473.20 | $7,056.56 |
| MPWFCA | $1,596.00 | | $1,596.00 | $1,596.00 | | $1,596.00 | $1,596.00 | | $1,596.00 | $1,596.00 | | $1,596.00 | $9,576.00 |
| Trash Removal | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $19,200.00 |
| **Total Utilities** | $15,953.92 | $17,281.92 | $17,418.62 | $18,320.02 | $16,810.99 | $18,153.92 | $17,010.92 | $18,587.42 | $16,639.72 | $18,380.42 | $16,157.77 | $17,610.32 | $209,180.06 |
| **General & Admin** | | | | | | | | | | | | | |
| Equipment Expense | $214.50 | $245.50 | $340.60 | $280.80 | $288.21 | $266.50 | $303.50 | $312.00 | $289.90 | $286.00 | $232.05 | $219.70 | $3,276.26 |
| Office Supplies | $973.50 | $1,091.50 | $1,545.80 | $1,274.40 | $1,308.03 | $1,299.50 | $1,386.90 | $1,416.00 | $1,315.70 | $1,298.00 | $1,053.15 | $997.10 | $14,869.18 |
| Postage & Fed Ex | $181.50 | $203.50 | $288.20 | $237.60 | $243.87 | $225.50 | $258.50 | $264.00 | $245.30 | $242.00 | $196.35 | $185.90 | $2,772.22 |
| Customer Refunds | $198.00 | $222.00 | $314.40 | $259.20 | $266.04 | $246.00 | $282.00 | $288.00 | $267.60 | $264.00 | $214.20 | $202.80 | $3,024.24 |
| Auto Expense | $198.00 | $222.00 | $314.40 | $259.20 | $266.04 | $246.00 | $282.00 | $288.00 | $267.60 | $264.00 | $214.20 | $202.80 | $3,024.24 |
| Meals & Entertainment | $82.50 | $92.50 | $131.00 | $108.00 | $110.85 | $102.50 | $117.50 | $120.00 | $111.50 | $110.00 | $89.25 | $84.50 | $1,260.10 |
| Dues & Subscriptions | $660.00 | $740.00 | $1,048.00 | $864.00 | $886.80 | $820.00 | $940.00 | $960.00 | $892.00 | $880.00 | $714.00 | $676.00 | $10,080.80 |
| Permits & Fees | $478.50 | $536.50 | $759.80 | $626.40 | $642.33 | $594.50 | $681.50 | $696.00 | $646.70 | $638.00 | $517.65 | $490.10 | $7,308.48 |
| Accounting Fees | $297.00 | $333.00 | $471.60 | $388.80 | $399.06 | $369.00 | $423.00 | $432.00 | $401.40 | $396.00 | $321.30 | $304.20 | $4,536.36 |
| Legal Fees | $1,650.00 | $1,850.00 | $2,620.00 | $2,160.00 | $2,217.00 | $2,050.00 | $2,350.00 | $2,400.00 | $2,230.00 | $2,200.00 | $1,785.00 | $1,650.00 | $25,202.00 |
| Professional Fees | $4,950.00 | $5,550.00 | $7,860.00 | $6,480.00 | $6,651.00 | $6,150.00 | $7,050.00 | $7,200.00 | $6,690.00 | $6,600.00 | $5,355.00 | $5,070.00 | $75,606.00 |
| Bank Charges | $660.00 | $740.00 | $1,048.00 | $864.00 | $886.80 | $820.00 | $940.00 | $960.00 | $892.00 | $880.00 | $714.00 | $676.00 | $10,080.80 |
| CC Chargebacks | $577.50 | $647.50 | $917.00 | $756.00 | $775.95 | $717.50 | $822.50 | $840.00 | $780.50 | $770.00 | $624.75 | $591.50 | $8,820.70 |
| Credit Card Fees | $3,115.00 | $5,735.00 | $3,122.00 | $6,696.00 | $6,872.70 | $7,285.00 | $7,440.00 | $6,913.00 | $6,820.00 | $5,833.50 | $5,299.00 | $5,070.00 | $78,126.40 |
| Miscellaneous | $495.00 | $555.00 | $786.00 | $648.00 | $665.10 | $615.00 | $705.00 | $720.00 | $669.00 | $660.00 | $535.50 | $507.00 | $7,560.60 |
| In Room Movies | $2,475.00 | $2,775.00 | $3,930.00 | $3,240.00 | $3,325.50 | $3,075.00 | $3,525.00 | $3,600.00 | $3,345.00 | $3,300.00 | $2,677.50 | $2,535.00 | $37,803.00 |
| **Total Gen. & Admin.** | $19,206.00 | $21,334.00 | $30,496.80 | $25,142.40 | $25,805.88 | $21,996.50 | $25,215.90 | $25,732.00 | $23,927.90 | $23,606.00 | $19,153.00 | $18,133.70 | $279,969.73 |
| **Housekeeping** | | | | | | | | | | | | | |
| Guest Amenity | $1,650.00 | $1,850.00 | $2,620.00 | $2,160.00 | $2,017.00 | $2,050.00 | $2,350.00 | $2,400.00 | $2,230.00 | $2,200.00 | $1,785.00 | $1,650.00 | $25,202.00 |
| Cleaning Supply | $1,320.00 | $1,480.00 | $2,096.00 | $1,728.00 | $1,773.60 | $1,640.00 | $1,880.00 | $1,920.00 | $1,784.00 | $1,760.00 | $1,428.00 | $1,352.00 | $20,161.60 |
| Paper Supply | $577.50 | $647.50 | $917.00 | $756.00 | $775.95 | $717.50 | $822.50 | $840.00 | $780.50 | $770.00 | $624.75 | $591.90 | $8,820.70 |
| Pest Supply | $742.50 | $832.50 | $1,179.00 | $972.00 | $997.65 | $922.50 | $1,057.50 | $1,080.00 | $1,003.50 | $990.00 | $802.35 | $760.50 | $11,340.00 |
| Linen & Term | $825.00 | $925.00 | $1,310.00 | $1,080.00 | $1,108.50 | $1,025.00 | $1,175.00 | $1,200.00 | $1,115.00 | $1,100.00 | $892.50 | $845.00 | $12,601.00 |
| Laundry Supplies | $1,485.00 | $1,665.00 | $2,358.00 | $1,944.00 | $1,995.30 | $1,845.00 | $2,115.00 | $2,160.00 | $2,007.00 | $1,980.00 | $1,606.50 | $1,521.00 | $22,681.80 |
| Room Supply | | | | | | | | | | | | | |
| **Total Housekeeping** | $6,600.00 | $7,400.00 | $10,480.00 | $8,640.00 | $8,868.00 | $8,200.00 | $9,400.00 | $9,600.00 | $8,920.00 | $8,800.00 | $7,140.00 | $6,760.00 | $100,808.00 |

Monthly financial projection (12 periods + Total). Values are best-effort readings from a rotated, low-resolution scan; some cells are uncertain.

| Line Item | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Maintenance & Grounds** | | | | | | | | | | | | | |
| Alarm & Security | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 1,190.00 |
| Pool | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 4,900.00 |
| Fish Repairs & Maintenance | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 4,200.00 |
| Repairs & Maintenance | 1,485.00 | 1,665.00 | 2,358.00 | 1,944.00 | 1,945.30 | 2,115.00 | 2,160.00 | 2,007.00 | 1,980.00 | 1,606.50 | 1,521.00 | | 13,407.30 |
| Landscaping | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 14,000.00 |
| **Total Maintenance** | 4,955.00 | 5,135.00 | 5,828.00 | 5,414.00 | 5,315.00 | 5,585.00 | 5,630.00 | 5,477.00 | 5,450.00 | 5,075.50 | 4,991.00 | 4,591.00 | 37,667.30 |
| **Kitchen Expense** | | | | | | | | | | | | | |
| Kitchen Supply | 1,485.00 | 1,665.00 | 2,358.00 | 1,944.00 | 1,995.30 | 2,115.00 | 2,160.00 | 2,007.00 | 1,980.00 | 1,606.50 | 1,521.00 | | 13,407.30 |
| Honor Bar | 214.30 | 240.50 | 340.60 | 280.80 | 288.21 | 305.00 | 312.00 | 265.50 | 289.00 | 232.05 | 219.70 | | 1,936.61 |
| Food | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 16,775.00 | 117,425.00 |
| Wine & Beer | 1,155.00 | 1,295.00 | 1,834.00 | 1,512.00 | 1,351.90 | 1,435.00 | 1,645.00 | 1,561.00 | 1,540.00 | 1,249.50 | 1,183.00 | | 10,427.90 |
| **Total Kitchen** | 19,629.30 | 19,975.50 | 21,307.60 | 20,511.80 | 20,521.50 | 20,321.50 | 20,840.50 | 20,927.00 | 20,581.00 | 19,863.05 | 19,698.70 | | 143,196.81 |
| **Sales Expense** | | | | | | | | | | | | | |
| TA Commissions | 1,650.00 | 1,850.00 | 2,620.00 | 2,160.00 | 2,217.00 | 2,050.00 | 2,350.00 | 2,400.00 | 2,250.00 | 2,200.00 | 1,785.00 | 1,690.00 | 14,897.00 |
| Sales & Reservation Comm | 5,346.00 | 6,600.00 | 6,750.77 | 7,310.70 | 7,459.49 | 7,688.73 | 11,490.00 | 12,060.00 | 8,550.00 | 8,475.00 | 6,750.00 | 5,370.00 | 52,643.69 |
| Advertising & Promo | 412.50 | 462.50 | 655.00 | 540.00 | 554.25 | 512.50 | 587.50 | 600.00 | 557.50 | 550.00 | 446.25 | 422.50 | 3,724.25 |
| Marketing & Paper | 412.50 | 462.50 | 655.00 | 540.00 | 554.25 | 512.50 | 587.50 | 600.00 | 557.50 | 550.00 | 446.25 | 472.50 | 3,724.25 |
| Promo Offset | 2,310.00 | 2,590.00 | 3,668.00 | 3,024.00 | 3,103.80 | 2,255.00 | 3,290.00 | 3,360.00 | 3,122.00 | 3,060.00 | 2,499.00 | 2,366.00 | 20,240.80 |
| Overbooked Rooms | 412.50 | 462.50 | 655.00 | 540.00 | 554.25 | 512.50 | 587.50 | 600.00 | 557.50 | 550.00 | 446.25 | 422.50 | 3,724.25 |
| Group Expense | 495.00 | 555.00 | 786.00 | 648.00 | 665.10 | 615.00 | 705.00 | 720.00 | 669.00 | 660.00 | 535.50 | 507.00 | 4,469.10 |
| **Total Sales Expense** | 10,838.50 | 12,982.50 | 14,789.77 | 14,762.70 | 15,108.14 | 14,146.23 | 19,997.50 | 20,340.00 | 16,243.50 | 16,065.00 | 12,908.25 | 11,200.50 | 103,423.34 |
| **Accounts Receivable** | | | | | | | | | | | | | |
| Receivables | 20,000.00 | 10,000.00 | | | | | | | | | | | 30,000.00 |
| **Total FF&E** | 20,000.00 | 10,000.00 | | | | | | | | | | | 30,000.00 |
| **Total Operating Expense** | 52,694.59 | 72,543.70 | 54,060.89 | 78,036.68 | 81,054.80 | 88,073.01 | 145,811.94 | 221,881.94 | 112,565.54 | 109,022.94 | 61,885.14 | 16,420.14 | 1,239,674.71 |
| Net Income | (44,807.81) | (25,410.31) | (43,871.31) | 19,919.71 | 116,997.60 | 8,079.39 | 47,839.94 | 123,929.54 | 14,633.14 | 11,070.54 | 136,767.26 | (81,551.66) | |
| **WFP Improvements** | | | | | | | | | | | | | |
| Oth. | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 71,542.40 | 858,508.80 |
| Payments to Unsecured Cr. | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 |
| Geneva Real Estate | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 11,410.00 | 136,920.00 |
| City Of Pacific Grove | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 120,000.00 |
| **Total Debt Service** | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 97,952.40 | 1,175,428.80 |
| **NET - NET** | (44,957.81) | (25,410.31) | (43,871.31) | 19,919.71 | 116,997.60 | 8,079.39 | 47,839.94 | 123,929.54 | 14,633.14 | 11,070.54 | 136,767.26 | (81,551.66) | 64,243.91 |
| Carry Forward | 166,486.20 | 135,528.59 | 98,118.88 | 54,246.57 | 34,326.86 | | | | | | | | |
| ROLL OVER | 135,528.59 | 98,118.88 | 54,246.57 | 34,326.86 | 17,483.27 | | | | | | | | 87,647.72 |

| | Jan-12 | Feb-12 | Mar-12 | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 | Sep-12 | Totals | Cumulatens |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Occupancy | 56.03% | 69.55% | 88.96% | 75.79% | 75.28% | 71.50% | 79.80% | 81.49% | 78.29% | 75.29% | |
| Rooms Available | 2945 | 2660 | 2945 | 2850 | 2945 | 2850 | 2945 | 2945 | 2850 | 25955 | |
| Rooms Occupied | 1650 | 1850 | 2600 | 2160 | 2217 | 2050 | 2350 | 2400 | 2230 | 19327 | |
| ADR | $ 103.03 | $ 122.40 | $ 88.46 | $ 116.20 | $ 115.52 | $ 125.02 | $ 167.87 | $ 172.53 | $ 151.64 | $ 128.11 | |
| Rooms Revenue | $ 170,004.41 | $ 226,600.00 | $ 231,775.75 | $ 251,000.00 | $ 256,109.00 | $ 263,979.73 | $ 394,490.00 | $ 414,060.00 | $ 293,550.00 | $ 2,501,568.89 | $ 9,224,877.67 |
| **Expenses** | 170000.41 | 226600 | 231775.75 | 251000 | 256109 | 263979.73 | 394490 | 414060 | 293550 | | |
| LHL Lodge Room | $ 102,002.65 | $ 135,960.00 | $ 139,065.45 | $ 150,000.00 | $ 153,665.40 | $ 158,387.84 | $ 236,694.00 | $ 248,436.00 | $ 176,130.00 | $ 1,500,941.33 | |
| LHL Suites | $ 68,001.76 | $ 90,640.00 | $ 92,710.30 | $ 100,400.00 | $ 102,443.60 | $ 105,591.89 | $ 157,796.00 | $ 165,624.00 | $ 117,420.00 | $ 1,000,627.56 | |
| Phone | $ 280.50 | $ 314.50 | $ 445.40 | $ 367.20 | $ 376.89 | $ 348.50 | $ 399.50 | $ 408.00 | $ 379.10 | $ 3,319.59 | |
| Misc. Sales | $ 2,986.50 | $ 3,348.50 | $ 4,742.20 | $ 3,909.60 | $ 4,012.77 | $ 3,710.50 | $ 4,253.50 | $ 4,344.00 | $ 4,036.30 | $ 33,343.87 | |
| Movie Sales | $ 1,980.00 | $ 2,220.00 | $ 3,144.00 | $ 2,592.00 | $ 2,660.40 | $ 2,460.00 | $ 2,820.00 | $ 2,880.00 | $ 2,676.00 | $ 23,432.40 | |
| Honor Bar Sales | $ 808.50 | $ 906.50 | $ 1,283.80 | $ 1,058.40 | $ 1,086.33 | $ 1,004.50 | $ 1,151.50 | $ 1,176.00 | $ 1,092.70 | $ 9,568.23 | |
| Banquet & Aquarium Reve | $ 6,105.00 | $ 6,845.00 | $ 9,694.00 | $ 7,992.00 | $ 8,202.90 | $ 7,585.00 | $ 8,695.00 | $ 8,880.00 | $ 8,251.00 | $ 72,249.90 | |
| Other Income | $ 280.50 | $ 314.50 | $ 445.40 | $ 367.20 | $ 376.89 | $ 348.50 | $ 399.50 | $ 408.00 | $ 379.10 | $ 3,319.59 | |
| **Total Income** | $ 181,884.41 | $ 239,920.00 | $ 250,639.75 | $ 266,532.00 | $ 272,071.40 | $ 278,739.73 | $ 411,410.00 | $ 431,340.00 | $ 309,686.00 | $ 2,647,163.79 | $ 9,753,624.07 |
| **Fixed Expenses** | | | | | | | | | | | |
| Property Tax | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 99,057.69 | |
| Insurance | | | | | | | $ 60,000.00 | | | $ 60,000.00 | |
| **Total Fixed** | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 11,006.41 | $ 71,006.41 | $ 11,006.41 | $ 11,006.41 | $ 159,057.69 | |
| **Net Operating Revenue** | $ 170,878.00 | $ 228,913.59 | $ 239,633.34 | $ 255,545.59 | $ 261,064.99 | $ 267,733.32 | $ 340,403.59 | $ 420,333.59 | $ 298,599.99 | $ 2,483,105.60 | $ 9,188,399.72 |
| **Operating Expenses** | | | | | | | | | | | |
| **Labor & Burden** | | | | | | | | | | | |
| Wages | $ 55,000.00 | $ 60,000.00 | $ 62,000.00 | $ 62,000.00 | $ 64,000.00 | $ 66,500.00 | $ 66,500.00 | $ 66,500.00 | $ 66,500.00 | $ 569,000.00 | |
| Payroll Tax Expense | $ 6,050.00 | $ 6,600.00 | $ 6,820.00 | $ 6,820.00 | $ 7,040.00 | $ 7,315.00 | $ 7,315.00 | $ 7,315.00 | $ 7,315.00 | $ 62,590.00 | |
| Workers Comp | $ 3,355.00 | $ 3,660.00 | $ 3,782.00 | $ 3,782.00 | $ 3,904.00 | $ 4,056.00 | $ 4,056.00 | $ 4,056.00 | $ 4,056.00 | $ 34,769.00 | |
| Health Insurance | $ 3,404.30 | $ 3,714.00 | $ 3,837.80 | $ 3,837.90 | $ 3,961.60 | $ 4,116.55 | $ 4,116.55 | $ 4,116.55 | $ 4,116.55 | $ 35,221.10 | |
| **Total Labor & Burden** | $ 67,809.30 | $ 73,974.00 | $ 76,439.80 | $ 76,439.80 | $ 78,905.60 | $ 81,987.85 | $ 81,987.85 | $ 81,987.85 | $ 81,987.85 | $ 701,520.10 | $ 2,775,257.90 |
| **Purchases** | | | | | | | | | | | |
| Equipment Purchase | $ 264.00 | $ 296.00 | $ 419.20 | $ 345.60 | $ 354.72 | $ 328.00 | $ 376.00 | $ 384.00 | $ 356.90 | $ 3,124.32 | |
| Financial Pacific Lease | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 622.58 | $ 5,603.22 | |
| **Total Equipment Purchase** | $ 886.58 | $ 918.58 | $ 1,041.78 | $ 968.18 | $ 977.30 | $ 950.58 | $ 998.58 | $ 1,006.58 | $ 979.38 | $ 8,727.54 | $ 33,540.22 |

| | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Utilities** | | | | | | | | | | |
| Cut Am | 1,930.30 | 2,164.50 | 3,065.40 | 2,527.20 | 2,593.89 | 2,388.30 | 2,749.50 | 2,808.00 | 2,699.10 | 22,846.59 |
| PG&E | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 94,500.00 |
| Telephone | 862.42 | 862.42 | 862.42 | 862.42 | 862.42 | 862.42 | 862.42 | 862.42 | 862.42 | 7,761.78 |
| 800 Phone | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 4,500.00 |
| Cable TV | 99.00 | 111.00 | 137.20 | 125.60 | 133.02 | 123.00 | 141.00 | 144.00 | 133.80 | 1,171.62 |
| Misc Utility | 462.00 | 518.00 | 733.60 | 604.80 | 620.76 | 571.00 | 658.00 | 672.00 | 624.40 | 5,467.56 |
| MBWPCA | - | - | - | - | - | - | - | - | - | 6,384.00 |
| Trash Removal | 1,600.00 | 1,596.00 | 1,600.00 | 1,596.00 | 1,596.00 | 1,596.00 | 1,596.00 | 1,596.00 | 1,596.00 | 14,400.00 |
| **Total Utilities** | 15,953.92 | 17,851.92 | 17,418.62 | 18,320.02 | 16,810.80 | 18,153.72 | 17,010.92 | 18,682.42 | 16,829.72 | 157,031.55 |
| **General & Admin** | | | | | | | | | | |
| Equipment Expense | 214.50 | 246.50 | 340.60 | 280.80 | 288.21 | 266.50 | 305.50 | 312.00 | 289.90 | 2,538.51 |
| Office Supplies | 973.50 | 1,061.90 | 1,545.60 | 1,274.40 | 1,308.03 | 1,209.50 | 1,386.50 | 1,416.00 | 1,315.70 | 11,520.93 |
| Postage & Fed Ex | 181.50 | 203.50 | 288.20 | 237.60 | 243.87 | 225.50 | 258.50 | 264.00 | 245.30 | 2,147.97 |
| Customer Refunds | 198.00 | 222.00 | 314.40 | 259.20 | 266.04 | 246.00 | 282.00 | 288.00 | 267.60 | 2,343.24 |
| Auto Expense | 132.00 | 148.00 | 209.60 | 172.80 | 177.36 | 164.00 | 188.00 | 192.00 | 178.40 | 1,562.16 |
| Meals & Entertainment | 82.50 | 92.50 | 131.00 | 108.00 | 110.85 | 102.50 | 117.50 | 120.00 | 111.50 | 976.33 |
| Dues & Subscriptions | 412.80 | 462.30 | 655.00 | 540.00 | 554.25 | 512.50 | 587.50 | 600.00 | 557.50 | 4,881.73 |
| Permits & Fees | 478.50 | 536.50 | 759.80 | 626.40 | 642.93 | 594.50 | 681.50 | 696.00 | 646.70 | 5,662.83 |
| Accounting Fees | 297.00 | 333.00 | 471.60 | 388.80 | 399.06 | 369.00 | 423.00 | 432.00 | 401.40 | 3,514.86 |
| Legal Fees | 148.50 | 166.50 | 235.80 | 194.40 | 199.53 | 184.50 | 211.50 | 216.00 | 200.70 | 1,757.43 |
| Professional Fees | 4,950.00 | 5,550.00 | 7,860.00 | 6,480.00 | 6,651.00 | 6,150.00 | 7,050.00 | 7,200.00 | 6,690.00 | 58,581.00 |
| Bank Charges | 660.00 | 740.00 | 1,048.00 | 864.00 | 886.80 | 820.00 | 940.00 | 960.00 | 892.00 | 7,810.80 |
| Credit Card Fees | 5,115.00 | 5,735.00 | 8,122.00 | 6,696.00 | 6,872.70 | 6,355.00 | 7,285.00 | 7,440.00 | 6,913.00 | 60,533.70 |
| CC ChargeChecks | 577.50 | 647.50 | 917.00 | 756.00 | 775.93 | 717.50 | 822.50 | 840.00 | 780.50 | 6,834.45 |
| Miscellaneous | 495.00 | 555.00 | 786.00 | 648.00 | 665.10 | 615.00 | 705.00 | 720.00 | 669.00 | 5,858.10 |
| In Room Movies | 2,475.00 | 2,775.00 | 3,930.00 | 3,240.00 | 3,325.90 | 3,075.00 | 3,525.00 | 3,600.00 | 3,345.00 | 29,290.90 |
| **Total Gen & Admin** | 17,291.00 | 19,499.00 | 27,614.80 | 22,266.40 | 23,567.18 | 21,607.00 | 24,769.00 | 25,296.00 | 23,504.20 | 205,814.58 |
| **Housekeeping** | | | | | | | | | | |
| Guest Amenity | 1,650.00 | 1,850.00 | 2,620.00 | 2,160.00 | 2,217.00 | 2,050.00 | 2,350.00 | 2,400.00 | 2,230.00 | 19,527.00 |
| Cleaning Supply | 1,320.00 | 1,480.00 | 2,096.00 | 1,728.00 | 1,773.60 | 1,640.00 | 1,880.00 | 1,920.00 | 1,784.00 | 15,621.60 |
| Paper Supply | 577.50 | 647.50 | 917.00 | 756.00 | 775.93 | 717.50 | 822.50 | 840.00 | 780.50 | 6,834.45 |
| Linen & Terry | 660.00 | 740.00 | 1,048.00 | 864.00 | 886.80 | 820.00 | 940.00 | 960.00 | 892.00 | 7,810.80 |
| Laundry Supplies | 825.00 | 925.00 | 1,310.00 | 1,080.00 | 1,108.50 | 1,025.00 | 1,175.00 | 1,200.00 | 1,115.00 | 9,763.50 |
| Room Supply | 1,485.00 | 1,665.00 | 2,358.00 | 1,944.00 | 1,995.30 | 1,845.00 | 2,115.00 | 2,160.00 | 2,007.00 | 17,574.30 |
| **Total Housekeeping** | 6,517.50 | 7,307.50 | 10,349.00 | 8,532.00 | 8,757.15 | 8,097.50 | 9,282.50 | 9,480.00 | 8,808.50 | 77,131.65 |

| Maintenance & Overhals | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alarm & Security | $170.00 | $170.00 | $170.00 | $170.00 | $170.00 | $170.00 | $170.00 | $170.00 | | | | | $1,190.00 |
| Pool | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | | | | | $4,900.00 |
| Fish Repairs & Maintenance | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | | | | | $4,200.00 |
| Repairs & Maintenance | $1,485.00 | $1,665.00 | $2,358.00 | $1,944.00 | $1,995.30 | $1,845.00 | $2,115.00 | $2,160.00 | | | | | $13,407.50 |
| Landscaping | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | | | | | $14,000.00 |
| Total Maintenance | $4,955.00 | $5,135.00 | $5,838.00 | $5,414.00 | $5,465.30 | $5,315.00 | $5,585.00 | $5,630.00 | | | | | $37,697.50 |
| Kitchen Expense | | | | | | | | | | | | | |
| Kitchen Supply | $1,320.00 | $1,480.00 | $2,096.00 | $1,728.00 | $1,773.60 | $1,640.00 | $1,880.00 | $1,920.00 | | | | | $13,917.60 |
| Honor Bar | $214.50 | $246.50 | $340.60 | $280.80 | $288.21 | $266.50 | $305.50 | $312.00 | | | | | $1,936.61 |
| Food | $16,775.00 | $16,775.00 | $16,775.00 | $16,775.00 | $16,775.00 | $16,775.00 | $16,775.00 | $16,775.00 | | | | | $117,475.00 |
| Wine & Beer | $1,237.50 | $1,387.50 | $1,965.00 | $1,620.00 | $1,662.75 | $1,537.50 | $1,762.50 | $1,800.00 | | | | | $11,172.75 |
| Total Kitchen | $19,547.00 | $19,883.00 | $21,176.60 | $20,403.80 | $20,499.56 | $20,219.00 | $20,723.00 | $20,807.00 | | | | | $142,453.96 |
| Sales Expense | | | | | | | | | | | | | |
| TA Commissions | $1,650.00 | $1,850.00 | $2,620.00 | $2,160.00 | $2,217.00 | $2,050.00 | $2,350.00 | $2,400.00 | | | | | $13,897.00 |
| Sales & Reservation Comm | $5,100.13 | $6,788.00 | $6,953.27 | $7,530.00 | $7,693.27 | $7,919.39 | $11,834.70 | $12,421.80 | | | | | $53,618.77 |
| Advertising & Promo | $412.50 | $482.50 | $635.00 | $540.00 | $554.25 | $512.50 | $587.50 | $600.00 | | | | | $8,806.50 |
| Marketing & Paper | $412.50 | $482.50 | $635.00 | $540.00 | $554.25 | $512.50 | $587.50 | $600.00 | | | | | $3,724.25 |
| Promo Offset | $2,310.00 | $2,590.00 | $3,666.00 | $3,024.00 | $3,103.80 | $2,050.00 | $3,290.00 | $3,360.00 | | | | | $20,035.80 |
| Overbooked Rooms | $412.50 | $462.50 | $655.00 | $540.00 | $554.25 | $512.50 | $587.50 | $600.00 | | | | | $3,724.25 |
| Group Expense | $495.00 | $555.00 | $786.00 | $648.00 | $665.10 | $615.00 | $705.00 | $720.00 | | | | | $4,469.10 |
| Total Sales Expenses | $10,791.63 | $13,180.50 | $15,692.27 | $14,982.00 | $15,331.92 | $14,171.89 | $19,942.20 | $20,701.80 | | | | | $104,393.42 |
| Accounts Receivable | | | | | | | | | | | | | |
| Receivables | $20,000.00 | $10,000.00 | | | | | | | | | | | $30,000.00 |
| Total Receivables | $20,000.00 | $10,000.00 | | | | | | | | | | | $30,000.00 |
| Total Operating Expense | $47,024.87 | $81,164.09 | $63,772.47 | $87,270.59 | $90,900.89 | $97,230.58 | $160,104.54 | $236,741.64 | | | | | $1,018,337.50 |
| Total FF&E | | | | | | | | | | | | | |
| Net Income | $47,024.87 | $63,772.47 | $87,270.59 | $90,900.89 | $97,230.58 | $160,104.54 | $236,741.64 | $123,991.54 | | | | | $3,441,986.67 |
| WTF Improvements | | | | | | | | | | | | | |
| Own | $71,542.40 | $71,542.40 | $71,542.40 | $71,542.40 | $71,542.40 | $71,542.40 | $71,542.40 | $71,542.40 | | | | | $643,881.60 |
| Payments to Creditors | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $5,000.00 | $5,000.00 | | | | | $75,000.00 |
| Geneva Real Estate | $3,200.00 | $3,500.00 | $3,500.00 | $14,000.00 | $14,000.00 | $14,000.00 | $14,000.00 | $14,000.00 | | | | | $177,000.00 |
| City of Pacific Grove | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | | | | | $316,929.00 |
| Total Debt Service | $89,042.40 | $89,042.40 | $89,042.40 | $99,542.40 | $99,542.40 | $99,542.40 | $112,542.40 | $112,542.40 | | | | | $890,581.60 |
| NET - DEBT | $(42,017.53) | $(7,878.31) | $(25,269.93) | $(11,323.01) | $(8,391.51) | $47,562.14 | $124,199.54 | $123,991.54 | | | | | $3,272,904.00 |
| Carry Forward | $87,647.22 | $37,751.87 | $12,481.94 | $11,158.93 | $2,367.42 | $253.60 | $172,017.26 | | | | | | $125,455.90 |
| ROLL OVER | $45,630.18 | $37,751.87 | $12,481.94 | $11,158.93 | $2,367.42 | $253.60 | $17,817.74 | $172,017.26 | | | | | $183,466.42 |