JEFFER, MANGELS, BUTLER &
  MARMARO LLP
ROBERT B. KAPLAN (Bar No. 76950)
NICOLAS DE LANCIE (Bar. No. 84934)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone: (415) 398-8080
Facsimile: (415) 398-5584
e-mail:     rbk@jmbm.com
            nde@jmbm.com

Attorneys for Secured Creditor and Plan
Proponent ORIX CAPITAL MARKETS, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 09-52610 |
| LIGHTHOUSE LODGE, LLC, | Chapter 11 |
| Debtor. | |

**ORIX CAPITAL MARKETS, LLC,**
**CREDITOR'S SECOND AMENDED PLAN OF LIQUIDATION**
**(Dated May 4, 2010)**

PRINTED ON
RECYCLED PAPER

Page 1

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-52610    Doc# 139    Filed: 05/04/10    Entered: 05/04/10 16:32:38    Page 1 of 64

# TABLE OF CONTENTS

ARTICLE I—DEFINITIONS AND RULES OF CONSTRUCTION ........................................................ 6
    1.1.     Definitions ............................................................................................. 6
    1.2.     Other Terms ........................................................................................... 6
    1.3.     Rules of Construction ............................................................................ 6
    1.4.     Plan Controls ......................................................................................... 7
    1.5.     Computation of Time ............................................................................ 7

ARTICLE II—CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT ....................... 7
    2.1.     Classification ......................................................................................... 7
        2.1.1.     Class A (Classified Priority Claims) ..................................... 8
            2.1.1.1.   Class A1 (General Priority Claims) ......................... 8
            2.1.1.2.   Class A2 (Gift Certificate Priority Claims) ............. 8
        2.1.2.     Class B (Secured Claims) ...................................................... 8
            2.1.2.1.   Class B1 (ORIX Secured Claim) ............................. 8
            2.1.2.2.   Class B2 (Financial Pacific Secured Claim) ........... 8
            2.1.2.3.   Class B3 (Other Secured Claims) ............................ 8
        2.1.3.     Class C (Unsecured Nonpriority Claims) .............................. 8
            2.1.3.1.   Class C1 (General Unsecured Claims) ..................... 9
            2.1.3.2.   Class C2 (Insider Unsecured Claims) ...................... 9
        2.1.4.     Class D (Interests) ................................................................. 9
    2.2.     Impairment ............................................................................................ 9
        2.2.1.     Unimpaired Classes ............................................................... 9
        2.2.2.     Impaired Classes ................................................................... 9

ARTICLE III—TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS ....................................... 9
    3.1.     Amount .................................................................................................. 9
    3.2.     Penalties and Interest ............................................................................ 9
    3.3.     Administrative Expense Claim Procedures ........................................... 9
        3.3.1.     Administrative Bar Date ........................................................ 9
        3.3.2.     Objections ............................................................................ 10
    3.4.     Payment ............................................................................................... 10

ARTICLE IV—TREATMENT OF UNIMPAIRED CLASSES ............................................................. 10
    4.1.     Class A1 (General Priority Claims) ................................................... 10
        4.1.1.     Amount ................................................................................ 10
        4.1.2.     Payment ............................................................................... 11
    4.2.     Class A2 (Gift Certificate Priority Claims) ....................................... 11
        4.2.1.     Treatment before Closing .................................................... 11
        4.2.2.     Treatment on Closing .......................................................... 11
            4.2.2.1.   Amount ..................................................................... 11
            4.2.2.2.   Payment .................................................................... 11
    4.3.     Class B2 (Financial Pacific Secured Claim) ..................................... 11
        4.3.1.     Characterization .................................................................. 11
        4.3.2.     Amount ................................................................................ 12
        4.3.3.     Payment ............................................................................... 12
        4.3.4.     Termination of Existing Security Interests ......................... 12
        4.3.5.     Collection Injunction .......................................................... 12
        4.3.6.     Unsecured Deficiency Claim ............................................... 12

JMBM | Jeffer Mangels Butler & Marmaro LLP

Case: 09-52610-639-009-0139    Filed: 05/04/10    Entered: 05/04/10 13:32:88    Page 2 of 64

4.4. Class B3 (Other Secured Claims) .......................................................... 13
    4.4.1. Alternative Treatments ..................................................... 13
        4.4.1.1. Full Satisfaction ............................................... 13
        4.4.1.2. Abandonment/Return of Collateral ............ 13
        4.4.1.3. Rights Unaltered ........................................ 14
    4.4.2. Unsecured Deficiency Claim ............................................ 14
4.5. Class C1 (General Unsecured Claims) ............................................... 14
    4.5.1. Amount ................................................................................ 14
    4.5.2. Penalties and Interest ........................................................ 14
    4.5.3. Payment .............................................................................. 14
        4.5.3.1. Payment on Effective Date ........................ 14
        4.5.3.2. Supplemental Payment ............................. 14

ARTICLE V—TREATMENT OF IMPAIRED CLASSES ................................................. 15
5.1. Class B1 (ORIX Secured Claim) ........................................................ 15
    5.1.1. Amount ................................................................................ 15
    5.1.2. Security Interests Valid, Perfected, Enforceable, and Non-Avoidable ..................................................................... 15
    5.1.3. Adequate Protection Payments before Closing.................. 16
    5.1.4. Proceeds from Sale If Real Property Sold Other Than to Holder .............................................................................. 16
    5.1.5. Credit Against Claim If Real Property Sold to Holder ....... 16
    5.1.6. Payment of Non-Net Proceeds to Holder.......................... 16
    5.1.7. Collection Injunction ......................................................... 17
    5.1.8. Prior Loan Documentation; Preservation of Existing Security Interests ............................................................... 17
    5.1.9. Estate Causes of Action against ORIX Waived and Released .............................................................................. 18
5.2. Class C2 (Insider Unsecured Claims) ................................................ 18
    5.2.1. Amount ................................................................................ 18
    5.2.2. Penalties and Interest ........................................................ 18
    5.2.3. Payment .............................................................................. 18
        5.2.3.1. Payment on Sale ........................................ 18
        5.2.3.2. Supplemental Payment ............................. 18
5.3. Class D (Interests) ............................................................................... 19
    5.3.1. No Distribution, Retention, or Control .............................. 19
    5.3.2. Payment of Surplus ........................................................... 19

ARTICLE VI—EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................... 19
6.1. Generally ............................................................................................ 19
6.2. Rejection ............................................................................................ 20
6.3. Approval of Rejection ........................................................................ 20
6.4. Bar Date for Rejection Claims .......................................................... 20

ARTICLE VII—MEANS FOR EXECUTION OF PLAN ............................................... 20
7.1. Plan Effectiveness .............................................................................. 20
7.2. Liquidating Agent .............................................................................. 20
    7.2.1. Appointment ....................................................................... 20
    7.2.2. Estate Representative ......................................................... 21
    7.2.3. Authority ............................................................................. 21
    7.2.4. Compensation ..................................................................... 21
    7.2.5. Banking Relations .............................................................. 22
    7.2.6. Employment of Agents and Professionals ........................ 22
    7.2.7. Postconfirmation Liquidating Agent Expenses ................ 22

JMBM | Jeffer Mangels Butler & Marmaro LLP

Case: 09-52646-3 09-00139    Filed: 05/04/10    Entered: 05/04/10 12:32:38    Page 3 of 64

|  |  | 7.2.7.1. | Statements for Services Rendered and Expenses Incurred | 22 |
|  |  | 7.2.7.2. | Objections to Statements; Resolution of Objections | 23 |
|  |  | 7.2.7.3. | Payment of Postconfirmation Liquidation Agent Expenses | 23 |
|  | 7.2.8. | Records and Reporting | | 23 |
|  |  | 7.2.8.1. | Records | 23 |
|  |  | 7.2.8.2. | Provision of Requested Information | 24 |
|  |  | 7.2.8.3. | Reports and Filings | 24 |
|  | 7.2.9. | Liability of Liquidating Agent | | 24 |
|  |  | 7.2.9.1. | Standard of Care | 24 |
|  |  | 7.2.9.2. | No Personal Liability | 24 |
|  |  | 7.2.9.3. | No Liability for Acts of Predecessors | 24 |
|  |  | 7.2.9.4. | Advice of Professionals | 24 |
|  |  | 7.2.9.5. | Exculpation of Liquidating Agent | 25 |
|  | 7.2.10. | Resignation or Removal of Liquidating Agent | | 25 |
|  |  | 7.2.10.1. | Right to Resign; Right to Remove | 25 |
|  |  | 7.2.10.2. | Rights and Powers of Successor Liquidating Agent | 25 |
|  |  | 7.2.10.3. | Continuance | 26 |
|  | 7.2.11. | Tax Identification Number | | 26 |
|  | 7.2.12. | Termination | | 26 |
| 7.3. | Management of Real Property | | | 26 |
| 7.4. | Effective Date Exit Financing Advance | | | 27 |
| 7.5. | Use of Rents To Make Certain Payments | | | 27 |
| 7.6. | Sale of Real and Personal Property | | | 28 |
| 7.7. | Taxes Due on or As Consequence of Sale of Real Property | | | 29 |
| 7.8. | Vesting of Estate Property | | | 29 |
| 7.9. | Liquidation and Dissolution | | | 29 |
| 7.10. | Preservation of Estate Causes of Action | | | 30 |
| 7.11. | Effective Date Actions | | | 30 |
|  | 7.11.1. | Liquidating Agent Agreement and Management Agreement | | 30 |
|  | 7.11.2. | Other Documents and Actions | | 30 |
| 7.12. | Dissolution Documents | | | 30 |
| 7.13. | Other Actions | | | 31 |
| 7.14. | Objections to Claims | | | 31 |
| 7.15. | Unclaimed Distributions | | | 31 |
| 7.16. | No Distributions Pending Allowance | | | 31 |
| 7.17. | Distributions under Plan | | | 32 |
| 7.18. | Quarterly Reports and Fees | | | 33 |
| 7.19. | Term of Injunctions and Stays | | | 33 |
| 7.20. | Postconfirmation Proponent Expenses | | | 33 |

ARTICLE VIII—DISCHARGE AND EXCULPATION ............................................ 33
| 8.1. | Discharge | | | 33 |
| 8.2. | Exculpation of Certain Persons | | | 34 |

ARTICLE IX—RETENTION OF JURISDICTION ............................................ 35
| 9.1. | Generally | | | 35 |

ARTICLE X—MISCELLANEOUS PROVISIONS ............................................ 36
| 10.1. | Exemption from Transfer Taxes | | | 36 |
| 10.2. | Binding Effect | | | 36 |
| 10.3. | Notices | | | 36 |
| 10.4. | Governing Law | | | 37 |
| 10.5. | Closing Case | | | 37 |

| | | |
|---|---|---|
| 10.6. | Expenses | 37 |
| 10.7. | Modification and Enforcement | 38 |
| | 10.7.1. Modification | 38 |
| | 10.7.2. Enforcement | 38 |

### EXHIBITS

| | |
|---|---|
| Exhibit A | Schedule of Definitions |
| Exhibit B | Sale Procedures |

PRINTED ON
RECYCLED PAPER

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 89-52610   Doc# 139   Filed: 05/04/10   Entered: 05/04/10 12:32:38   Page 5 of
64

JMBM | Jeffer Mangels Butler & Marmaro LLP

## CREDITOR'S SECOND AMENDED PLAN OF LIQUIDATION

ORIX CAPITAL MARKETS, LLC, hereby proposes, pursuant to Bankruptcy Code Section 1121(a), this ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (Dated May 4, 2010) in the Case for the liquidation of the Debtor.

### ARTICLE I

### DEFINITIONS AND RULES OF CONSTRUCTION

1.1. <u>Definitions</u>. When used herein, (i) the capitalized terms set forth in the Schedule of Definitions attached hereto as **Exhibit A** have the meanings given those terms in that exhibit; and (ii) the capitalized terms defined in the Sale Procedures attached hereto as **Exhibit B** have the meanings given those terms in that exhibit.

1.2. <u>Other Terms</u>. Any term used but not defined herein that is defined in the Bankruptcy Code has the meaning given that term in the Bankruptcy Code. Any term used but not defined herein or in the Bankruptcy Code that is defined in the Bankruptcy Rules has the meaning given that term in the Bankruptcy Rules.

1.3. <u>Rules of Construction</u>. In addition to the foregoing, the following apply to this Plan:

1.3.1. The words "herein", "hereof", "hereto", "hereunder", and the like refer to this Plan as a whole and not to any particular section or other part of this Plan, unless otherwise indicated.

1.3.2. The word "or" is not exclusive; the word "shall" is mandatory; the words "may not" and the construct "neither ... may" are prohibitive; and the words "including" and the like are not limiting.

1.3.3. Wherever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural; and pronouns stated in the masculine, feminine, or neuter gender includes the other genders.

1.3.4.   All references to articles, sections (other than to sections of the Bankruptcy Code or another statute), schedules (other than the Schedules), or exhibits mean to articles or sections hereof or schedules or exhibits hereto, as the case may be. All schedules and exhibits hereto, whether originally part hereof or subsequently filed pursuant hereto, are part hereof.

1.3.5.   Headings are used herein for convenience and reference only, and are not a part hereof for any other purpose.

1.3.6.   All references to payments to be made or amounts to be paid by the Liquidating Agent mean payments to be made or amounts to be paid from the Estate by the Liquidating Agent in its agency capacity as liquidating agent for the Estate, and not as the personal liability of the Liquidating Agent.

1.4.   Plan Controls. If there is any inconsistency between this Plan and the Disclosure Statement, the terms of this Plan will control and prevail.

1.5.   Computation of Time. Bankruptcy Rule 9006(a) applies to computing any period of time prescribed or allowed hereby.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

2.1.   Classification. The following is a designation of the Classes of Claims and Interests in this Plan. In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Expense Claims and Priority Tax Claims (that is, the Nonclassified Priority Claims) have not been classified and are excluded from the following Classes. The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article III (Treatment of Nonclassified Priority Claims). In accordance with Bankruptcy Code Section 1122, a Claim or Interest is deemed classified by this Plan in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and is deemed classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class, as the case may be.

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

Page 7

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-52606-13 Doc# 139   Filed: 05/04/10   Entered: 05/04/10 13:32:38   Page 7 of 64

2.1.1.   Class A (Classified Priority Claims). Class A consists of all Classified Priority Claims, classified in separate subclasses, these being Classes A1 and A2 (with each of those subclasses being a separate Class for all purposes under applicable provisions of the Bankruptcy Code), as follows:

2.1.1.1.   Class A1 (General Priority Claims). Class A1 consists of all General Priority Claims; and

2.1.1.2.   Class A2 (Gift Certificate Priority Claims). Class A2 consists of all Gift Certificate Priority Claims.

2.1.2.   Class B (Secured Claims). Class B consists of all Secured Claims, each of which is classified within a separate subclass, these being Classes B1, B2, and B3 (with each of those subclasses being a separate Class for all purposes under applicable provisions of the Bankruptcy Code), as follows:

2.1.2.1.   Class B1 (ORIX Secured Claim). Class B1 consists of the ORIX Secured Claim;

2.1.2.2.   Class B2 (Financial Pacific Secured Claim). Class B2 consists of the Financial Pacific Secured Claim; and

2.1.2.3.   Class B3 (Other Secured Claims). Class B3 consists of all Secured Claims other than those included in Classes B1 and B2.

2.1.3.   Class C (Unsecured Nonpriority Claims). Class C consists of all Unsecured Nonpriority Claims, including (i) all Gift Certificate Nonpriority Claims; and (ii) all Unsecured Nonpriority Claims arising from or on account of (A) any deficiencies following any abandonment and return of Collateral pursuant to Section 4.4.1.2; (B) any deficiencies following any valuation of Collateral pursuant to Section 4.3.2; (C) rejection of unexpired leases and executory contracts pursuant to Section 6.2 (Rejection); (D) obligations evidenced in bonds, indenture agreements, or other debt instruments; or (E) commercial transactions with the Debtor prior to the Petition Date, classified in separate subclasses, being Classes C1 and C2 (with each of those subclasses being a separate Class for all purposes under applicable provisions of the Bankruptcy Code), as follows:

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

2.1.3.1.     Class C1 (General Unsecured Claims). Class C1 consists of all General Unsecured Claims; and

2.1.3.2.     Class C2 (Insider Unsecured Claims). Class C2 consists of all Insider Unsecured Claims.

2.1.4.     Class D (Interests). Class D consists of all Interests in the Debtor.

2.2.     Impairment. Under this Plan—

2.2.1.     Unimpaired Classes. Allowed Claims within Classes A1, A2, B2, B3, and C1 are not impaired; and

2.2.2.     Impaired Classes. Allowed Claims within Classes B1and C2, and Allowed Interests within Class D, are impaired.

## ARTICLE III

### TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS

Each Allowed Nonclassified Priority Claim will be treated as follows:

3.1.     Amount. Subject to all other sections of this Article III (Treatment of Nonclassified Priority Claims), each holder of an Allowed Nonclassified Priority Claim will receive on account of that Claim Cash equal to the lesser of (i) the amount of that Claim as of, (A) if that Claim is not a Secured Post-Petition Property Tax Claim, the Effective Date; and (B) if that Claim is a Secured Post-Petition Property Tax Claim, the date that Claim is paid; and (ii) that lesser amount, if any, that that holder has agreed with the Proponent to accept on account of that Claim. The amount of a Secured Post-Petition Property Tax Claim will be determined pursuant to applicable nonbankruptcy law and will be an Allowed Claim in that amount.

3.2.     Penalties and Interest. Except as expressly set forth in this Plan or a Final Order of the Court, no holder of a Nonclassified Priority Claim will be entitled to payment on account of any interest or penalties arising with respect to or accruing on that Claim after the Petition Date.

3.3.     Administrative Expense Claim Procedures.

3.3.1.     Administrative Bar Date. No Administrative Expense Claim, including Professional Fees, arising on or before the Effective Date, other than ordinary course expenses,

PRINTED ON
RECYCLED PAPER
ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (May 4, 2010)

will become an Allowed Claim unless (i) an application, request for payment, or proof therefor has been filed in the Case and served on the Debtor, the Proponent, the Liquidating Agent, and the United States Trustee on or before (A) the Administrative Bar Date; or (B) that earlier date as may apply to that Claim pursuant to an earlier Final Order of the Court; or (ii) that Claim has been approved and allowed by the Court pursuant to a Final Order entered prior to the Administrative Bar Date. As soon as is practicable after the Effective Date, the Proponent shall provide notice of the Administrative Bar Date to all parties believed to hold or assert Administrative Expense Claims.

3.3.2. <u>Objections</u>. Only a Permitted Administrative Expense Objector may object to any application, request for payment, or proof of an Administrative Expense Claim. As soon as is practicable after the Administrative Bar Date, the Liquidating Agent shall (i) schedule a hearing with respect to each of those applications, requests, or proofs as to which any dispute exists or for which Court approval is required by the Bankruptcy Rules; and (ii) provide notice of each of those hearings and any objections to the requesting Claimants, any objectors, the Proponent, and the United States Trustee.

3.4. <u>Payment</u>. The Liquidating Agent shall pay to each holder of an Allowed Nonclassified Priority Claim the amount to be received by that holder on account of that Claim pursuant to Section 3.1 (Amount) in Cash on the Effective Date Payment Date with respect to that Claim.

## ARTICLE IV

### <u>TREATMENT OF UNIMPAIRED CLASSES</u>

Each Unimpaired Allowed Claim will be treated as follows:

4.1. <u>Class A1 (General Priority Claims)</u>. Each Allowed General Priority Claim will be treated as follows:

4.1.1. <u>Amount</u>. Each holder of an Allowed General Priority Claim will receive on account of that Claim Cash equal to the lesser of (i) the amount of that Claim as of the Effective Date; and (ii) that lesser amount, if any, that that holder has agreed with the Proponent to accept on account of that Claim.

JMBM | Jeffer Mangels Butler & Marmaro LLP

4.1.2.    <u>Payment</u>. The Liquidating Agent shall pay to each holder of an Allowed General Priority Claim the amount to be received by that holder on account of that Claim pursuant to Section 4.1.1 (Amount) in Cash on the Effective Date Payment Date with respect to that Claim.

4.2.    <u>Class A2 (Gift Certificate Priority Claims)</u>. Each Allowed Gift Certificate Priority Claim will be treated as follows:

4.2.1.    <u>Treatment before Closing</u>. Until the Closing, the legal, equitable, and contractual rights to which that Claim entitles the holder thereof will be left unaltered (*i.e.*, the Liquidating Agent shall honor the Gift Certificate held by that holder that underlies that Claim, up to the allowed amount of that Claim, at the Lodge as a credit against the lodging, food and beverage, goods, and services charges incurred by that holder at the Lodge until the Closing to the extent that those charges are permitted to be covered by the terms of that Gift Certificate); and

4.2.2.    <u>Treatment on Closing</u>.

4.2.2.1.    <u>Amount</u>. Each holder of an Allowed Gift Certificate Priority Claim will receive on account of that Claim Cash equal to the lesser of (i) the amount of that Claim, if any, remaining as of the Closing after any credit given with respect to that Claim pursuant to Section 4.2.1 (Treatment before Closing); and (ii) that lesser amount, if any, that that holder has agreed with the Proponent to accept on account of that Claim.

4.2.2.2.    <u>Payment</u>. The Liquidating Agent shall pay to each holder of an Allowed Gift Certificate Priority Claim the amount to be received by that holder pursuant to Section 4.2.2.1 (Amount) in Cash on the Closing Date Payment Date with respect to that Claim.

4.3.    <u>Class B2 (Financial Pacific Secured Claim)</u>. The Financial Pacific Secured Claim will be treated as follows:

4.3.1.    <u>Characterization</u>. Without regard to its form, the Financial Pacific Lease is deemed to have created a security interest in the equipment that is the subject thereof as contemplated by Commercial Code Section 1203(b) rather than a lease thereof.

PRINTED ON
RECYCLED PAPER

4.3.2.   Amount. The amount of that Claim will be the lesser of (i) the amount thereof as of the Effective Date (*i.e.*, the amount of the Financial Pacific Secured Claim will be the amount due under the Financial Pacific Lease as of the Effective Date, to the extent allowed, including interest and other amounts accrued on and after the Petition Date and through the Effective Date, if any, due in respect thereof pursuant to Bankruptcy Code Section 506(b), all to the extent of the value of the Collateral for that Claim as determined by a Final Order of the Court pursuant to Bankruptcy Code Section 506(a) using that valuation standard determined by the Court as appropriate and taking into account the priority of the liens that encumber that Collateral); or (ii) that lesser amount, if any, that Financial Pacific has agreed with the Proponent to accept on account of that Claim.

4.3.3.   Payment. The Liquidating Agent shall pay to the holder of that Claim the amount to be received by that holder on account of that Claim pursuant to Section 4.3.2 (Amount) in Cash on the Effective Date Payment Date with respect to that Claim.

4.3.4.   Termination of Existing Security Interests. On the payment to the holder of that Claim of the amount to be paid to it pursuant to Section 4.3.3 (Payment), that holder shall execute and deliver to the Liquidating Agent all appropriate documentation reasonably necessary to evidence and effectuate a full release and discharge of all security interests or other liens on that Collateral held by that holder.

4.3.5.   Collection Injunction. Commencing on the Effective Date and continuing until payment in full of the Financial Pacific Secured Claim Payment, the holder of that Claim will be enjoined from exercising any legal or equitable or remedies against the Collateral for that Claim.

4.3.6.   Unsecured Deficiency Claim. The holder of that Claim may file and assert a Claim within Class C for any deficiency resulting from the agreement or Final Order contemplated by Section 4.3.2 (Amount); *provided*, that a proof of claim for that deficiency must be filed in the Case and served on the Proponent and the Liquidating Agent within 30 calendar days after the later of (i) the Effective Date; and (ii) the date of that agreement or Final Order, as the case may be.

PRINTED ON
RECYCLED PAPER

Page 12

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640-3 6 Doc# 0039   Filed: 05/04/10   Entered: 05/04/10 11:32:38   Page 12 of
64

4.4.   Class B3 (Other Secured Claims). Unless that holder thereof has agreed with the Proponent to other treatment thereof, each Secured Claim within Class B3 will be treated, at the election of the Proponent (which election is deemed to be for the treatment that is described in Section 4.4.1.2 (Abandonment/Return of Collateral) unless otherwise stated by the Proponent in a writing served on that holder on or before the Effective Date), under one of the alternative treatments set forth in Section 4.4.1 (Alternative Treatments) below with, if applicable, the treatment set forth in Section 4.4.2 (Unsecured Deficiency Claim) below.

4.4.1.   Alternative Treatments.

4.4.1.1.   Full Satisfaction. The Liquidating Agent shall pay to that holder the lesser of (i) the amount of that Claim as of the Effective Date (*i.e.*, the amount of that Claim will be the amount due thereunder as of the Effective Date, to the extent allowed, including interest and other amounts accrued on and after the Petition Date and through the Effective Date, if any, due in respect thereof pursuant to Bankruptcy Code Section 506(b), all to the extent of the value of the Collateral for that Claim as determined by a Final Order of the Court pursuant to Bankruptcy Code Section 506(a) using that valuation standard determined by the Court as appropriate and taking into account the priority of the liens that encumber that Collateral) in full; or (ii) that lesser amount, if any, that that holder has agreed with the Proponent to accept on account of that Claim, in Cash on the Effective Date Payment Date with respect to that Claim, in exchange for which that holder shall execute and deliver to the Liquidating Agent all appropriate documentation reasonably necessary to evidence and effectuate a full release and discharge of all liens, security interests, and obligations arising from that Claim.

4.4.1.2.   Abandonment/Return of Collateral. That holder will be permitted to remove, after the Effective Date, at its own cost and peril and without damage to the Real Property or any other property of the Estate (other than the property being removed pursuant to this Section 4.4.1.2 (Abandonment/Return of Collateral)), and at a time mutually convenient to that holder and the Liquidating Agent, the Collateral for that Claim, which will be deemed abandoned to that holder.

PRINTED ON
RECYCLED PAPER

Case: 09-53640-3 6  Doc# 089    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 13 of
64

4.4.1.3.    <u>Rights Unaltered</u>. The legal, equitable, and contractual rights to which that Claim entitles that holder will be left unaltered.

4.4.2.    <u>Unsecured Deficiency Claim</u>. If the holder of that Claim is treated under Sections 4.4.1.1 (Full Satisfaction) or 4.4.1.2 (Abandonment/Return of Collateral) above, that holder may file and assert a Claim within Class C for any deficiency resulting from the agreement or Final Order contemplated by 4.4.1.1 (Full Satisfaction) above or the abandonment and return of the Collateral for that Claim; *provided*, that a proof of claim therefor must be filed in the Case and served on the Proponent and the Liquidating Agent within 30 calendar days following the later of (i) the Effective Date; and (ii) the date of that agreement, Final Order, or abandonment and return, as the case may be.

4.5.    <u>Class C1 (General Unsecured Claims)</u>. Each Allowed General Unsecured Claim will be treated as follows:

4.5.1.    <u>Amount</u>. Subject to all other sections of this Section 4.5 (Class C1 (General Unsecured Claims)), each holder of an Allowed General Unsecured Claim will receive on account of that Claim Cash equal to the lesser of (i) the amount of that Claim as of the Effective Date; and (ii) that lesser amount, if any, that that holder has agreed with the Proponent to accept on account of that Claim.

4.5.2.    <u>Penalties and Interest</u>. Except as expressly set forth in this Plan or a Final Order of the Court, no holder of a General Unsecured Claim will be entitled to payment on account of any interest or penalties arising with respect to or accruing on that Claim after the Petition Date.

4.5.3.    <u>Payment</u>.

4.5.3.1.    <u>Payment on Effective Date</u>. The Liquidating Agent shall pay to each holder of an Allowed General Unsecured Claim the amount to be paid to that holder on account of that Claim pursuant to Section 4.5.1 (Amount) in Cash on the Effective Date Payment Date with respect to that Claim.

4.5.3.2.    <u>Supplemental Payment</u>. If (i) (A) all Allowed Class B Secured Claims; (B) all Allowed Administrative Expense Claims; (C) all Allowed Class A Claims;

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

(D) all Allowed Priority Tax Claims; and (E) all Allowed Unsecured Claims are paid in full (including, as to all of the foregoing, except in the case of Allowed Unsecured Claims, all interest to be paid on those Claims, respectively, pursuant to this Plan); and (ii) Net Proceeds remain or become available for distribution, any amounts of Disputed Claims Reserves become available for distribution as Claims become Disallowed Claims, or any amounts of the Tax Reserve become available for distribution after payment in full of the taxes for which that reserve was established, the Liquidating Agent shall as soon as is practicable thereafter pay to each holder of an Allowed General Unsecured Claim, a *pro rata* share with respect to that Claim of those available Net Proceeds or Disputed Claims Reserves as interest on that Claim from the Petition Date until the Effective Date at the legal rate; *provided*, that the aggregate of those payments to that holder may not exceed the amount of that interest.

## ARTICLE V

### TREATMENT OF IMPAIRED CLASSES

Each Impaired Allowed Claim and each Interest will be treated as follows:

5.1.  Class B1 (ORIX Secured Claim). The ORIX Secured Claim will be treated as follows:

5.1.1.  Amount. That Claim will be allowed in the full amount due under the ORIX Loan Documents as of the Closing, including the Effective Date Exit Financing Advance, and including all interest, including interest at the default rate under the ORIX Loan Documents, from time to time applicable thereunder, late charges, fees, costs, and expenses, including attorney's fees and costs, and other amounts due thereunder, all as provided in the ORIX Loan Documents.

5.1.2.  Security Interests Valid, Perfected, Enforceable, and Non-Avoidable. The security interests in the Real Property, the Rents, and the Personal Property under the ORIX Loan Documents are valid, perfected and enforceable under applicable nonbankruptcy law, and not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable nonbankruptcy law.

\\\\

PRINTED ON RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

5.1.3.    <u>Adequate Protection Payments before Closing</u>. Commencing on the first calendar day of the first calendar month following the calendar month in which the Effective Date occurs, and continuing on the first calendar day of each successive calendar month until the Closing, the Liquidating Agent shall pay to the holder of that Claim in Cash the ORIX Adequate Protection Payment.

5.1.4.    <u>Proceeds from Sale If Real Property Sold Other Than to Holder</u>. If the Real Property is sold at the Sale to a person other than the holder of that Claim, the Liquidating Agent shall pay to that holder on the Closing in Cash from the escrow for the Sale the lesser of (i) the Net Proceeds; and (ii) the amount of the ORIX Secured Claim then outstanding after application of the ORIX Adequate Protection Payments theretofore made.

5.1.5.    <u>Credit Against Claim If Real Property Sold to Holder</u>. If the Real Property is sold at the Sale to the holder of that Claim, that holder will be deemed at the Closing to set off against the Cash consideration owed to the Liquidating Agent by that holder on account of that sale the lesser of (i) the amount of that consideration; and (ii) the amount of the ORIX Secured Claim then outstanding after application of the ORIX Adequate Protection Payments theretofore made (*i.e.*, that holder will be permitted to "credit bid" up to that outstanding amount at the Sale pursuant to Bankruptcy Code Section 363(k)).

5.1.6.    <u>Payment of Non-Net Proceeds to Holder</u>. If the ORIX Secured Claim is not (i) paid in full pursuant to Section 5.1.4 (Proceeds from Sale If Real Property Sold Other Than to Holder); or (ii) deemed paid in full pursuant to Section 5.1.5 (Credit Against Claim If Real Property Sold to Holder) on the Closing, then on and after the Closing and until the ORIX Secured Claim has been paid in full together with simple interest on the unpaid amount thereof from time to time outstanding at the then-applicable rate of interest per annum on the ORIX Loan under the ORIX Loan Documents, the Liquidating Agent shall pay to the holder of that Claim all amounts of Cash from time to time held by the Liquidating Agent that are Rents or other ORIX Collateral (including the proceeds of any ORIX Collateral and the Effective Date Exit Financing Advance) that the Liquidating Agent is not holding as a reserve in order to pay (i) the Nonclassified Priority Claims Payments, the General Priority Claims Payments, the Gift

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)
PRINTED ON
RECYCLED PAPER

Certificate Priority Claims Payments, the Other Secured Claims Payments, the Financial Pacific Secured Claim Payment, or the General Unsecured Claims Payments (including as part of the Disputed Claims Reserve on account of any of those payments); or (ii) if the Real Property was sold at the Sale to that holder, the then-unpaid operating expenses of the Real Property through the Closing, the Postconfirmation Liquidating Agent Expenses, the fees and expenses of the Manager, and the Postconfirmation Proponent Expenses.

5.1.7.  <u>Collection Injunction</u>. Commencing on the Effective Date and continuing until the Closing, the holder of that Claim will be enjoined from exercising any legal or equitable or remedies against the Real Property or any other ORIX Collateral. After the termination of the ORIX Collection Injunction, neither the Liquidating Agent nor any other party-in-interest may enjoin, pursuant to Bankruptcy Code Section 105 or otherwise, any foreclosure proceedings commenced by the holder of that Claim.

5.1.8.  <u>Prior Loan Documentation; Preservation of Existing Security Interests</u>. Subject to Section 7.5 (Use of Rents To Make Certain Payments), until the ORIX Secured Claim has been paid in full together with all interest to be paid thereon pursuant to Section 5.1.6 (Payment of Non-Net Proceeds to Holder), (i) all ORIX Loan Documents will remain in full force and effect, subject only to the ORIX Loan Collection Injunction; and (ii) all security interests and other liens, encumbering the Real Property or the other ORIX Collateral granted in favor of or held by the holder of that Claim prior to the Effective Date with respect to the ORIX Loan or under any cash collateral orders entered in the Case with respect thereto are retained by and preserved for the benefit of that holder to secure the obligations under the ORIX Loan and this Plan with respect thereto; *provided*, that holder shall fully release and discharge on the Closing all those liens, security interests, and encumbrances that affect the Sale Assets. That holder and the Liquidating Agent shall each execute and deliver to the other those documents as may be reasonably presented by the other in order to facilitate and implement this Section 5.1 (Class B1 (ORIX Secured Claim)).

\\\\

\\\\

PRINTED ON RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

5.1.9.  <u>Estate Causes of Action against ORIX Waived and Released</u>. All Estate Causes of Action against ORIX and the holder of the ORIX Secured Claim are fully waived and released as of the Effective Date.

5.2.  <u>Class C2 (Insider Unsecured Claims)</u>. Each Allowed Insider Unsecured Claim will be treated as follows:

5.2.1.  <u>Amount</u>. Subject to all other sections of this Section 5.2 (Class C2 (Insider Unsecured Claims)), including the availability of Insider Unsecured Claims Net Proceeds to pay the same, each holder of an Allowed Insider Unsecured Claim will receive on account of that Claim Cash equal to the lesser of (i) the amount of that Claim as of the Effective Date; and (ii) that lesser amount, if any, that that holder has agreed with the Proponent to accept on account of that Claim.

5.2.2.  <u>Penalties and Interest</u>. Except as expressly set forth in this Plan or a Final Order of the Court, no holder of an Insider Unsecured Claim will be entitled to payment on account of any interest or penalties arising with respect to or accruing on that Claim after the Petition Date.

5.2.3.  <u>Payment</u>.

5.2.3.1.  <u>Payment on Sale</u>. The Liquidating Agent shall pay to each holder of an Allowed Insider Unsecured Claim that holder's *pro rata* share as to that Claim of the Insider Unsecured Claims Net Proceeds, if any, in Cash (i) on the Closing Date Payment Date with respect to that Claim; and (ii) from time to time thereafter if and as additional Insider Unsecured Claims Net Proceeds become available for distribution.

5.2.3.2.  <u>Supplemental Payment</u>. If (i) (A) all Allowed Class B Secured Claims; (B) all Allowed Administrative Expense Claims; (C) all Allowed Class A Claims; (D) all Allowed Priority Tax Claims; and (E) all Allowed Unsecured Claims are paid in full (including, except in the case of Allowed Insider Unsecured Claims, all interest to be paid thereon pursuant to this Plan); and (ii) Net Proceeds remain or become available for distribution, any amounts of Disputed Claims Reserves become available for distribution as Claims become Disallowed Claims, or any amounts of the Tax Reserve become available for

PRINTED ON
RECYCLED PAPER
Page 18
Case: 09-52649-3 Doc# 0039    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 18 of
64
ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

distribution after payment in full of the taxes for which that reserve was established, the Liquidating Agent shall as soon as is practicable thereafter pay to each holder of an Allowed Insider Unsecured Claim, a *pro rata* share with respect to that Claim of those available Net Proceeds or Disputed Claims Reserves as interest on that Claim from the Petition Date until the date that Claim was paid hereunder at the legal rate; *provided*, that the aggregate of those payments to that holder may not exceed the amount of that interest.

5.3.  Class D (Interests). Each Interest will be treated as follows:

5.3.1.  No Distribution, Retention, or Control. No Equity Holder will receive or retain any property or distribution from the Estate on account of any Interest or have any right to exercise control over the Estate on or after the Effective Date.

5.3.2.  Payment of Surplus. Notwithstanding the foregoing, to the extent that any Net Proceeds remain after the Liquidating Agent has paid in full all Claims required to be paid pursuant to this Plan (including all interest to be paid thereon pursuant to this Plan), has established the Tax Reserve and paid all taxes with respect to which that reserve was established, and no Disputed Claims remain (all those Claims having become either Allowed Claims or Disallowed Claims), each Equity Holder will be paid its *pro rata* share of those remaining Net Proceeds in accordance with its prior Interest in the Debtor.

**ARTICLE VI**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1.  Generally. Executory contracts and unexpired leases to which the Debtor is a party as of the Effective Date, entered into by the Debtor prior to the Petition Date, will be treated in the manner set forth in this Article VI (Executory Contracts and Unexpired Leases). Nothing in this Article VI (Executory Contracts and Unexpired Leases) to the contrary withstanding, the purported unexpired lease that is the Pacific Financial Lease is deemed to have created a security interest in the equipment that is the subject thereof and not a lease thereof, as provided in Sections 4.3 (Class B2 (Financial Pacific Secured Claim)), and this Article VI (Executory Contracts and Unexpired Leases) is not applicable thereto.

\\\\

PRINTED ON RECYCLED PAPER

ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640-3 Doc #: 89    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 19 of 64

6.2. <u>Rejection</u>. Each executory contract and unexpired lease to which the Debtor is a party that has not been rejected by the Debtor pursuant to a Final Order entered in the Case prior to the Effective Date, including any of those executory contracts or unexpired leases that were assumed by the Debtor pursuant to a Final Order entered in the Case prior to the Effective Date, is deemed rejected as of the Effective Date.

6.3. <u>Approval of Rejection</u>. Entry of the Confirmation Order will constitute the approval, pursuant to Bankruptcy Code Section 365(a), of the rejection of the executory contracts or unexpired leases rejected pursuant to Section 6.2 (Rejection).

6.4. <u>Bar Date for Rejection Claims</u>. Except to the extent that the Court, the Bankruptcy Code, or the Bankruptcy Rules may establish an earlier deadline with regard to the rejection of executory contracts or unexpired leases, any Claims arising out of the rejection of executory contracts or unexpired leases pursuant to Section 6.2 (Rejection) must be filed in the Case and served on the Liquidating Agent and the Proponent no later than 30 calendar days after the Effective Date. Any of those Claims not filed within that time will be forever barred from assertion. Each Claim arising from the rejection of an executory contract or unexpired lease (i) may be asserted only to the extent permitted by Bankruptcy Code Section 365(g); and (ii) will be classified and treated within Class C.

## ARTICLE VII

### MEANS FOR EXECUTION OF PLAN

7.1. <u>Plan Effectiveness</u>. This Plan shall become fully effective and binding upon all parties on the Effective Date.

7.2. <u>Liquidating Agent</u>.

7.2.1. <u>Appointment</u>. As of the Effective Date, the Court will by an order appoint the Liquidating Agent as the liquidating agent under this Plan. If the then-Liquidating Agent resigns or is removed by the Court, or the Court does not approve a nominated person as a successor Liquidating Agent, as soon as is practicable thereafter, the Proponent shall nominate an individual willing to serve as the Liquidating Agent by a writing signed by the Proponent and that person and filed in the Case and served by electronic mail on the Permitted

ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (May 4, 2010)

PRINTED ON
RECYCLED PAPER

Postconfirmation Objectors. As soon as is practicable after five calendar days after that service, the Court, subject to any objection by a Permitted Postconfirmation Objector that is filed in the Case and served by electronic mail on the Proponent and the other Permitted Postconfirmation Objectors, is by an order to appoint that nominated person as the successor Liquidating Agent.

7.2.2.    Estate Representative On the Effective Date, or on the appointment of a successor Liquidating Agent, the Liquidating Agent will become the representative of the Estate under Bankruptcy Code Section 1123(b)(3).

7.2.3.    Authority. Except to the extent otherwise provided in this Plan as to the Proponent, the Liquidating Agent will have full and exclusive authority over all decisions relating to the sale, management, and leasing of the Real Property and the Personal Property, and shall exclusively operate, manage, control, care for, preserve, and maintain the Real Property and the Personal Property, all without interference by the Debtor. The Liquidating Agent will have the powers and duties set forth in this Plan and under applicable law, and those powers and duties will be governed hereby and thereby. The Liquidating Agent shall manage the Estate, including the Real Property and the Personal Property, in a manner consistent with its sound business judgment. The Liquidating Agent shall further act as disbursing agent of the Effective Date Exit Financing Advance, the Net Proceeds after the Allowed Class B1 Claims are paid through escrow at the Closing, and all other amounts to be distributed by the Liquidating Agent pursuant to this Plan.

7.2.4.    Compensation. The Liquidating Agent will be compensated and reimbursed for expenses from the Rents and the rents, issues, profits, and proceeds of the Personal Property after the Effective Date. The Liquidating Agent will be (i) compensated on an hourly basis for services rendered pursuant to this Plan at (A) as to the initial Liquidating Agent, the rate of $150 per hour; or (B) as to any successor Liquidating Agent, (1) at that or any lesser rate if agreed by that successor Liquidating Agent as set forth in the nomination of that Liquidating Agent filed pursuant to Section 7.2.1 (Appointment) above or later agreed between the Proponent and that Liquidating Agent; or (2) if no rate is so set forth or later so agreed between the Proponent and that Liquidating Agent, at a reasonable hourly rate for those

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

services as determined by the Court on a motion in the Case by either that Liquidating Agent or the Proponent after notice to the Permitted Postconfirmation Objectors and an opportunity to be heard; and (ii) reimbursed for his reasonable expenses incurred in connection with those services. Subject to Section 7.2.7 (Postconfirmation Liquidating Agent Expenses) below, that compensation and those reimbursements constitute Postconfirmation Liquidating Agent Expenses.

       7.2.5.   <u>Banking Relations</u>. The Liquidating Agent shall contract with a bank or other depository institution that is approved by the United States Trustee for the deposit of Cash of a debtor's estate in the District in which to maintain custody and safekeeping of Cash in accordance with this Plan.

       7.2.6.   <u>Employment of Agents and Professionals</u>. From time to time after the Effective Date, the Liquidating Agent may employ agents, professionals, and other persons reasonably necessary to assist the Liquidating Agent perform his duties under and in accordance with this Plan, including the Broker and the Manager, and reasonably compensate Liquidating Agent Professionals for services rendered to do so and reimburse them for reasonable expenses incurred in connection therewith. Subject to Section 7.2.7 (Postconfirmation Liquidating Agent Expenses) below, that compensation and those reimbursements, excluding any compensation and reimbursements due the Broker under the Broker Agreement and the Manager under the Management Agreement, constitute Postconfirmation Liquidating Agent Expenses. The Broker, if any, will be compensated in accordance with the Broker Agreement, and the Manager will be compensated in accordance with the Management Agreement.

       7.2.7.   <u>Postconfirmation Liquidating Agent Expenses</u>.

          7.2.7.1.   <u>Statements for Services Rendered and Expenses Incurred</u>. No later than 15 calendar days after the end of each calendar month following the Effective Date, the Liquidating Agent shall deliver to the Proponent and its counsel and the Permitted Postconfirmation Objectors a reasonably detailed statement of any compensation for services rendered and reimbursement for expenses incurred by the Liquidating Agent and the

PRINTED ON RECYCLED PAPER

Liquidating Agent Professionals, other than the Broker and the Manager, requested by the Liquidating Agent for that month.

        7.2.7.2.    <u>Objections to Statements; Resolution of Objections</u>. The Proponent and the Permitted Postconfirmation Objectors will have 15 calendar days from the date of service of that statement to approve or object thereto, in whole or in part. Any objections that the Proponent or the Permitted Postconfirmation Objectors have to that statement that cannot be resolved between the objector and the Liquidating Agent are to be determined by the Court on a motion in the Case by either the Liquidating Agent or the objector after notice to the other, the Proponent, and the Permitted Postconfirmation Objectors (and, if the same involves a Liquidating Agent Professional, that person) and an opportunity to be heard. To the extent that the Court does not approve any requested compensation or reimbursements to which an objection has timely been made and not resolved, the same will not constitute Postconfirmation Liquidating Agent Expenses.

        7.2.7.3.    <u>Payment of Postconfirmation Liquidation Agent Expenses</u>. To the extent that neither the Proponent nor any Permitted Postconfirmation Objector has any objections to any such statement, as soon as is practicable after the expiry of the 15 days' period applicable to that statement; to the extent that there are objections to that statement but those objections are resolved, as soon as is practicable after that resolution; and to the extent that there are objections to that statement that are determined by the Court, as soon as is practicable after the Court's order thereon becomes a Final Order, the Liquidating Agent shall pay those Postconfirmation Liquidating Agent Expenses due himself or the Liquidating Agent Professionals from the Rents and the rents, issues, profits, and proceeds of the Personal Property then on hand.

        7.2.8.  <u>Records and Reporting</u>.

        7.2.8.1.    <u>Records</u>. The Liquidating Agent shall maintain good and sufficient books and records of account relating to all funds paid to him, all transactions undertaken by him, all expenses incurred by or on his behalf, and all payment made by him under this Plan.

7.2.8.2.  Provision of Requested Information. The Liquidating Agent shall provide the Proponent and any Permitted Postconfirmation Objector, on reasonable request, with any information that the Proponent or any Permitted Postconfirmation Objector seeks with respect to the performance by the Liquidating Agent of his duties pursuant to this Plan, without cost or expense to the Proponent or that Permitted Postconfirmation Objector other than in accordance with Section 7.2.7 (Postconfirmation Liquidating Agent Expenses) above.

7.2.8.3.  Reports and Filings. The Liquidating Agent shall prepare and distribute or file those reports that the Liquidating Agent may deem useful or necessary or that may be necessary to cause the Liquidating Agent to be in compliance with the Bankruptcy Code, the Bankruptcy Rules, or applicable nonbankruptcy law.

7.2.9.  Liability of Liquidating Agent.

7.2.9.1.  Standard of Care. Except in the case of fraud, other willful misconduct, or gross negligence, the Liquidating Agent will not be liable for any loss or damage by reason of any action taken or omitted by him pursuant to the discretion, power, and authority conferred by this Plan or orders of the Court.

7.2.9.2.  No Personal Liability. Except in the case of fraud, other willful misconduct, or gross negligence, the Liquidating Agent will have no personal liability for any obligation of the Estate, the Debtor, or any Equity Holder, including for any taxes due by or on account of the Estate, the Debtor, or any Equity Holder.

7.2.9.3.  No Liability for Acts of Predecessors. Except as provided in this Plan or applicable law, unless the Liquidating Agent or a Liquidating Agent Professional expressly assumes that responsibility, neither the Liquidating Agent nor any Liquidating Agent Professional will be personally liable for the acts or omissions of any predecessor Liquidating Agent; of the Debtor, any Equity Holder, or any of their respective officers, directors, members, employees, agents, or professionals; or of any Claimant.

7.2.9.4.  Advice of Professionals. In the exercise of any rights or powers granted under this the Plan or in the performance of any of any duties hereunder, the

ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (May 4, 2010)
PRINTED ON RECYCLED PAPER

Liquidating Agent may consult with and act directly or through any Liquidating Agent Professional. The Liquidating Agent will not be liable for anything done, suffered, or omitted in good faith in accordance with the advice or opinion of any Liquidating Agent Professional so long as that advice or opinion pertains to matters that the Liquidating Agent may reasonably presume to be within the scope of that professional's expertise.

       7.2.9.5.    <u>Exculpation of Liquidating Agent</u>. The Liquidating Agent will have no duties or obligations with respect to the Debtor except as set forth in Section 7.12 (Dissolution Documents) below, including, except as so set forth, with respect to corporate governance, corporate reporting, preparation of income tax returns, or provision of information for securities law compliance.

       7.2.10. <u>Resignation or Removal of Liquidating Agent</u>.

       7.2.10.1.    <u>Right to Resign; Right to Remove</u>. The Liquidating Agent may resign on 30 days' written notice to the Proponent. The Proponent has the right to remove the Liquidating Agent for "cause" on written notice to the Liquidating Agent. On the resignation or removal of the Liquidating Agent, the Liquidating Agent will be discharged from his duties as Liquidating Agent. In the case of resignation, that discharge will be effective on the appointment of a successor Liquidating Agent in accordance with this Plan; and in the case of removal, that discharge will be effective immediately.

       7.2.10.2.    <u>Rights and Powers of Successor Liquidating Agent</u>. Upon a successor Liquidating Agent being appointed pursuant to Section 7.2.1 (Nomination and Appointment) above, the successor Liquidating Agent will immediately succeed to all title of the prior Liquidating Agent and all powers, rights, discretions, obligations, immunities, and indemnifications of prior Liquidating Agent under this Plan with the same effect as though that successor Liquidating Agent had originally been named as Liquidating Agent under this Plan; *provided* that the Proponent and the successor Liquidating Agent may agree to a different hourly rate or the Court shall determine a different hourly rate in accordance with Section 7.2.4 (Compensation and Reimbursement) above.

\\\\

PRINTED ON
RECYCLED PAPER

7.2.10.3.  <u>Continuance</u>. The death, incompetency, resignation, or removal of the Liquidating Agent will not operate (i) to terminate the Estate; (ii) to revoke any existing agency created pursuant to this Plan; or (iii) to invalidate any action previously taken by the Liquidating Agent. If the Liquidating Agent resigns or is removed, that resigned or removed Liquidating Agent shall (i) promptly execute and deliver such documents, instruments, and other writing as may be reasonably requested by the successor Liquidating Agent to effect the termination of that resigned or removed Liquidating Agent's capacity under this Plan and the conveyance of the authority then held by such resigned or removed Liquidating Agent to the successor Liquidating Agent; and (ii) otherwise assist and cooperate in effecting the assumption of his obligations and functions by that successor Liquidating Agent.

7.2.11. <u>Tax Identification Number</u>. The Liquidating Agent may require that any person to whom the Liquidating Agent is to make a payment pursuant to this Plan furnish to the Liquidating Agent that person's employer or taxpayer identification number as assigned by the Internal Revenue Service, and the Liquidating Agent may condition any payment to that person on receipt of that identification number.

7.2.12. <u>Termination</u>. Unless otherwise provided by this Plan, the Liquidating Agent will be discharged from his duties as Liquidating Agent, and that discharge will be effective immediately, on the entry of a final decree closing the Case in accordance with this Plan.

7.3.  <u>Management of Real Property</u>. The Liquidating Agent shall appoint an individual or management company as the Manager for the Real Property pursuant to the Management Agreement; *provided*, that individual's or company's appointment and compensation are subject to the written approval of the Proponent, which approval the Proponent may not unreasonably withhold; and *provided, further*, that appointment of Horwath HTL as the Manager for the compensation provided in this Section 7.3 (Management of Real Property) is approved by the Proponent. The Manager may, at the discretion of the Liquidating Agent, manage the Personal Property under the Management Agreement as well. The Manager will be

PRINTED ON
RECYCLED PAPER

compensated from the Rents and the rents, issues, profits, and proceeds of the Personal Property after the Effective Date, such compensation not, without the approval of the Court on notice to the Proponent and the Permitted Postconfirmation Objector and an opportunity to be heard, to exceed (i) on a monthly basis, terminating on the transfer of the Lodge to the purchaser thereof following the Closing and *pro-rated* for any partial month, the greater of (A) three percent of gross revenues of the Lodge; and (B) $6,000; and (ii) a one-time post-Closing transfer fee of $1,500. The Manager's compensation and right to reimbursement of expenses are described in the Management Agreement.

7.4.   Effective Date Exit Financing Advance. On the Effective Date, the holder of the ORIX Secured Claim shall make the Effective Date Exit Financing Advance to the Liquidating Agent in Cash. The Effective Date Exit Financing Advance will be (i) part of the ORIX Secured Claim; and (ii) fully secured by the ORIX Deed of Trust; and the funds so advanced will be deemed to be ORIX Collateral, all without the necessity of any writing or the filing or recording of any document.

7.5.   Use of Rents To Make Certain Payments. Nothing in the ORIX Loan Documents, any cash collateral orders previously entered in the case with respect to any ORIX Collateral, or this Plan to the contrary withstanding, the holder of the ORIX Secured Claim will not, from and after the Effective Date and through the Closing, be paid on account of that Claim any Rents or the proceeds of other ORIX Collateral held by the Estate on, or received or collected by the Liquidating Agent after, the Effective Date other than the ORIX Adequate Protection Payments; and the Liquidating Agent may use those Rents and other proceeds (i) as otherwise provided by this Plan to fund the management and operations of the Estate, the Real Property, and the Personal Property, and to pay the Postconfirmation Liquidating Agent Expenses, the fees and expenses of the Manager, and the Postconfirmation Proponent Expenses; (ii) to pay the Nonclassified Priority Claims Payments, the General Priority Claims Payments, the Gift Certificate Priority Claims Payments, the Other Secured Claims Payments, the Financial Pacific Secured Claim Payment, and the General Unsecured Claims Payments; and (iii) to fund the Disputed Claims Reserve on account of Administrative Expense Claims, Priority Tax

Claims, General Priority Claims, Gift Certificate Priority Claims, Other Secured Claims, the Financial Pacific Secured Claim, and General Unsecured Claims to the extent that those Claims are Disputed Claims and the holders of those Claims would, if those Claims became Allowed Claims, be entitled to receive the payments identified in preceding clause (ii).

7.6.   <u>Sale of Real and Personal Property</u>. The Liquidating Agent shall as soon as is practicable after the Effective Date implement the Sale Procedures and proceed to sell the Sale Assets pursuant hereto and thereto, and shall use its best efforts to do so and to consummate the Sale. Except as otherwise provided in the Sale Procedures, all of the Debtor's right, title, and interest in and to the Sale Assets will be sold free and clear of all liens pursuant to Bankruptcy Code Sections 363(f) and 1125(a)(5)(D). Those liens will attach to the proceeds of the Sale with the same validity, priority, and extent as they had with respect to the Sale Assets. The holder of the ORIX Secured Claim may bid at the Sale, and, if it purchases the Sale Assets at the Sale, it may offset up to the amount of the ORIX Secured Claim then outstanding after application of the ORIX Adequate Protection Payments theretofore made against the Cash consideration that it will owe to the Liquidating Agent on account of the Sale pursuant to Bankruptcy Code Section 363(k). The Liquidating Agent may retain a real estate broker, including the broker that has previously been retained by the Debtor in the Case, in connection with the Sale under a written agreement (*i.e.*, the Broker). The Liquidating Agent will have the authority to negotiate an appropriate real estate broker's commission for the sale of the Sale Assets. The appointment of the Broker by the Liquidating Agent and that agreement, including the commission provided for therein, will be subject to the written approval of the Proponent in its sole discretion; *provided*, in no event will a commission be paid to the Broker if the Property is sold to the holder of the ORIX Secured Claim as contemplated in Section 5.1.5 (Credit Against Claim If Real Property Sold to Holder). The Liquidating Agent shall provide written status reports to the Proponent every two weeks after the Effective Date on the progress, if any, that has been made to sell the Sale Assets. The Net Proceeds shall be paid to holders of Allowed Claims in the priority and amounts as set forth herein. The Liquidating Agent may not sell the Real Property and any Personal Property that is ORIX Collateral for Net Proceeds after

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

the establishment of the Tax Reserve that would be less than the full amount of the ORIX Secured Claim without the prior written consent of the holder of that Claim in that holder's sole discretion.

7.7. <u>Taxes Due on or As Consequence of Sale of Real Property</u>. Prior to the Sale, the Liquidating Agent shall retain those consultants that the Liquidating Agent believes are reasonably necessary to assist it in determining the capital gains or other taxes, fees, or charges, if any, that will be owed by the Estate to any governmental unit upon or as a consequence of the Sale. If necessary, the Liquidating Agent may apply to the Court for the determination of the capital gains taxes or other taxes, fees, or charges so applicable to the Sale in accordance with Bankruptcy Code Section 505. Each Equity Holder shall cooperate with the Liquidating Agent and any of those consultants in determining the Estate's capital gains tax or other such tax, fee, or charge liability, if any, in connection with the Sale. The Liquidating Agent may not close the Sale unless sufficient Net Proceeds will be generated to pay any capital gains taxes or those other taxes, fees, or charges to be owed by the Estate in connection with the Sale and shall, if necessary, establish the Tax Reserve to pay any capital gains taxes or those other taxes, fees, or charges to be owed by the Estate in connection with the Sale.

7.8. <u>Vesting of Estate Property</u>. As of the Effective Date, pursuant to Bankruptcy Code Sections 1123(a)(5) and 1141(b) and otherwise, all title, ownership, possession, and interests of the Estate in any property are deemed fully preserved and retained by, and remain vested in, the Estate, subject to all of the powers provided to the Liquidating Agent as set forth in this Plan and the Liquidating Agent Agreement, free and clear of any and all claims, interests, liens, security interests, and obligations other than those that are expressly created or preserved by this Plan or the Confirmation Order. Accordingly, if the Case is subsequently converted to a case under Chapter 7 of the Bankruptcy Code, the estate in that converted case will consist of all title, ownership, possession, and interests of the Estate in any property not theretofore administered under this Plan.

7.9. <u>Liquidation and Dissolution</u>. As of the Closing Date, (i) the Debtor will be deemed to have been dissolved and liquidated and its affairs wound up; and (ii) all Interests in the

Case: 09-53640-3 6 Doc#0039    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 29 of
64

JMBM | Jeffer Mangels Butler & Marmaro LLP

Debtor will be deemed to have been cancelled and extinguished, all without the need for any further action by the Court or any entity.

7.10. <u>Preservation of Estate Causes of Action</u>. As of the Effective Date, all Estate Causes of Action other than those waived or released by the express terms of this Plan or the Confirmation Order, are deemed fully preserved and retained by, and vested in, the Estate, subject to all of the powers provided to the Liquidating Agent as set forth in this Plan and the Liquidating Agent Agreement, free and clear of any and all claims, interests, liens, security interests, and obligations other than those that are expressly created or preserved by this Plan or the Confirmation Order. The Liquidating Agent may pursue Estate Causes of Action, or not, in its sole discretion, under those arrangements with counsel and the holders of Allowed General Unsecured Claims as are agreed by them. No part of the Net Proceeds, the Rents, or the rents, issues, profits, or proceeds of any Personal Property may be used, and neither the Proponent, the Liquidating Agent, nor any other entity will have any obligation to fund the prosecution of any Estate Causes of Action.

7.11. <u>Effective Date Actions</u>. As of the Effective Date, the Liquidating Agent, the Proponent, and others shall take the following actions, and execute and deliver the following documents:

7.11.1. <u>Liquidating Agent Agreement and Management Agreement</u>. The Liquidating Agent and the Manager shall execute the Management Agreement.

7.11.2. <u>Other Documents and Actions</u>. The Debtor, the Liquidating Agent, the Proponent, and other parties in interest, as appropriate, shall execute and deliver those other documents, and take those other actions, as are reasonably necessary to effectuate the transactions contemplated by this Plan to occur on or as of the Effective Date.

7.12. <u>Dissolution Documents</u>. Notwithstanding Section 7.9 (Liquidation and Dissolution), on or as soon as is practicable after the Closing, the Liquidating Agent shall, on behalf of the Debtor, execute and file a certificate of cancellation with respect to the Debtor, together with all other necessary limited liability company documents in connection therewith, with the California Secretary of State.

PRINTED ON
RECYCLED PAPER

Page 30

Case: 09-53640-3 Doc#: 89    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 30 of
64

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

JMBM | Jeffer Mangels Butler & Marmaro LLP

7.13. <u>Other Actions</u>. On, or as soon as is practicable after, the Effective Date, the Liquidating Agent, the Debtor, and other parties, as appropriate, shall execute and deliver those documents, and take those actions, as are reasonably necessary to complete and evidence the transactions contemplated and described herein; *provided*, that if any of those parties fails to so act, the Liquidating Agent is be authorized to so act on that party's behalf, pursuant to an order of the Court issued on no less than five calendar days' notice under Bankruptcy Code Section 1142(b).

7.14. <u>Objections to Claims</u>. On and after the Effective Date, only a Permitted Claim Objector may file or prosecute objections to Nonclassified Priority Claims, Priority Tax Claims, and Claims within Classes A, B2, or C. Those objections, to the extent prosecuted, must be filed in the Case and served on the respective holders of those Claims within 180 calendar days following the later of (i) the Effective Date; and (ii) the service of a proof of claim in respect of that Claim on the Proponent, the Liquidating Agent, and their respective counsel. At any time after the Effective Date, each of the Proponent and the Liquidating Agent may abandon, defer, narrow, dismiss, or compromise any objection it is entitled to prosecute, in its sole discretion and business judgment, without review or further order by the Court.

7.15. <u>Unclaimed Distributions</u>. If any holder of a Claim cannot be located, or fails to deposit or accept a payment tendered by the Liquidating Agent to that holder with respect to that Claim, within 60 calendar days following the date of that payment, the Liquidating Agent shall make a reasonable effort to locate that holder or determine why that holder has failed to deposit or accept that payment and, if those efforts are unavailing, then the payment with respect to that holder will be cancelled, that Claim will be deemed fully released, waived, and discharged, and there will be no further distributions or payments required with respect to that Claim.

7.16. <u>No Distributions Pending Allowance</u>. No Cash or other property shall be distributed under this Plan on account of any Claim unless and until that Claim becomes an Allowed Claim.

\\\\

7.17. <u>Distributions under Plan</u>. The Liquidating Agent shall make distributions to holders of Allowed Claims under this Plan at the address of each holder as set forth in the Schedules unless superseded by a new address set forth (i) on a proof of claim filed by that holder, (ii) in a writing from that holder notifying the Liquidating Agent of a change of address for that holder, or (iii) in a request for payment of an Administrative Expense Claim, as the case may be, in which case the Liquidating Agent shall make the distribution to that holder at that new address. Subject to Section 7.15 (Unclaimed Distributions), if any holder's distributions are returned as undeliverable, no further distributions to that holder are to be made unless and until the Liquidating Agent has been notified of that holder's then-current address. The Liquidating Agent shall establish a Disputed Claims Reserve for potential payments on account of Disputed Claims based on the assumption that all those Disputed Claims will become Allowed Claims in full by opening and funding the Disputed Claims Reserve Account. All interest, dividends, and profits earned in connection with the establishment of the Disputed Claims Reserve Account are will be property of the Estate and may be utilized solely by the Liquidating Agent to pay for the management and operations of the Estate, the Real Property, and the Personal Property as provided by this Plan, and to pay the fees and expenses of the Liquidating Agent. If a Disputed Claim becomes an Allowed Claim in whole or part, then within 30 calendar days following the allowance of that Claim by a Final Order, or by agreement as provided for in this Plan, the Liquidating Agent shall distribute to the holder of that Claim out of the Disputed Claims Reserve Account an amount equal to that which that holder would have been entitled to receive as a distribution pursuant to this Plan without, unless expressly provided for by this Plan, interest thereon. After (i) all Disputed Claims have become either Allowed Claims or Disallowed Claims pursuant to a Final Order or agreement as provided for in this Plan, and (ii) all post-Effective Date Claims and other Claims required to be paid pursuant to this Plan have been paid in full according to this Plan, the Liquidating Agent shall make a final determination of surplus property, taking into account the resolution of Disputed Claims, taxes incurred but not yet paid or expected to be incurred, and other amounts required to be paid

\\\\

PRINTED ON
RECYCLED PAPER
Page 32

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640-3 Doc#: 689    Filed: 05/04/10    Entered: 05/04/10 13:32:38    Page 32 of
64

pursuant to this Plan, and all that surplus property shall be distributed as provided for in this Plan.

7.18. <u>Quarterly Reports and Fees</u>. At all times on and after the Effective Date until the Case has been closed, converted, or dismissed, the Liquidating Agent shall (i) timely file quarterly reports with the Court and serve the same on the United States Trustee, all on the then current form for those reports prescribed by the United States Trustee; and (ii) pay quarterly fees owing to the United States Trustee pursuant to Judiciary Code section 1930(a)(6), which fees are deemed to be part of the expenses of operating the Estate.

7.19. <u>Term of Injunctions and Stays</u>. Unless otherwise provided herein or by a Final Order, any injunctions or stays issued or effective as of the Confirmation Date in the Case, whether under Bankruptcy Code Sections 105 or 362 or otherwise, will remain in full force and effect until the Effective Date.

7.20. <u>Postconfirmation Proponent Expenses</u>. From time to time after the Effective Date, the Liquidating Agent shall, subject to the right of the Liquidating Agent or any Permitted Postconfirmation Objector to object thereto as set forth below, on request of the Proponent, reimburse the Proponent as soon as is practicable from available Cash of the Estate for the Postconfirmation Proponent Expenses. Any such objection, or any motion to compel that reimbursement, must be made, noticed, served on either the Proponent, the Liquidating Agent, and the Permitted Postconfirmation Objectors (other than the one of them that is making that objection or motion), briefed, prosecuted, heard, and otherwise governed by the applicable Bankruptcy Rules. If the Permitted Objector with respect thereto is the Liquidating Agent, it may abandon, defer, narrow, dismiss, or compromise any of its objections, in its sole discretion and business judgment, without review or further order by the Court.

## ARTICLE VIII

### DISCHARGE AND EXCULPATION

8.1. <u>Discharge</u>. The rights afforded herein, and the treatment of all Claims and Interests set forth herein, will be in full exchange for, and in complete satisfaction, discharge, and release of, all Claims and Interests of any kind or nature whatsoever, whether known or

PRINTED ON
RECYCLED PAPER

unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due, prior to the Effective Date, including any Claims, or interest on Claims, accruing on or after the Petition Date, against the Estate, or any assets or property thereof. Except as, and to the extent, expressly provided in this Plan or the Confirmation Order, at all times on and after the Effective Date, (i) all those Claims against the Estate, and all those Interests in the Debtor, will be deemed fully and finally satisfied, discharged, and released; (ii) all persons will be fully and finally barred, enjoined, and precluded from asserting against the Estate or any of its assets, any Claims or Interests based on any act or omission, transaction, agreement, right, privilege, duty, entitlement, obligation, or other event or activity of any kind or nature whatsoever that occurred prior to the Effective Date; and (iii) all Claims and Interests shall be fully and finally discharged and deemed satisfied to the fullest extent permitted by Bankruptcy Code Section 1141.

8.2. <u>Exculpation of Certain Persons</u>. As of the Effective Date, this Plan will be deemed to satisfy, waive, and release in full any and all claims of the Debtor or the Estate against any of the officers, directors, agents, advisors, servicers, representatives, consultants, attorneys, or accountants of the Proponent (whether as the holder of the ORIX Loan or any other capacity) from any claims arising out of or in connection with any act or failure to act in connection with rights and duties arising under or related to the Case from the Petition Date to and including the Effective Date, except any claims expressly created or preserved under the terms of this Plan or any documents executed, or to be executed, in connection with this Plan. Except as expressly provided in this Plan or any other document executed or to be executed in connection with this Plan, neither the Proponent (in any capacity) nor any of its officers, directors, shareholders, partners, members, managers, agents, advisors, representatives, servicers, consultants, attorneys, or accountants, will have any liability to or on behalf of the Estate for actions taken or omitted to be taken under or in connection with this Plan or the Case from the Petition Date to and including the Effective Date.

\\\\

\\\\

RECYCLED PAPER

Page 34

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640-3 Doc#: 689 Filed: 05/04/10 Entered: 05/04/10 11:32:38 Page 34 of 64

# ARTICLE IX

## RETENTION OF JURISDICTION

9.1.   <u>Generally</u>. Until the Case has been closed, and thereafter upon a motion to reopen the Case, the Court will have exclusive jurisdiction of all matters concerning the allowance of Claims and Interests, and the interpretation and implementation of this Plan, pursuant to, and for the purposes of, Bankruptcy Code Sections 105(a) and 1142, including the following purposes:

9.1.1.   To determine any and all claims, causes of action, adversary proceedings, applications, and contested matters that are pending on the Effective Date or that are thereafter commenced by or related to the Estate or the Liquidating Agent;

9.1.2.   To hear and determine any objection to, or request for estimation of, Administrative Expense Claims or Claims, or any objection to or request for reimbursement of Postconfirmation Proponent Expenses;

9.1.3.   To enter and implement those orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

9.1.4.   To issue those orders in aid of execution of this Plan, to the extent authorized by Bankruptcy Code Section 1142;

9.1.5.   To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency, in any order of the Court, including the Confirmation Order;

9.1.6.   To hear and determine all applications for Professional Fees accrued through the Effective Date;

9.1.7.   To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

9.1.8.   To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146; and

9.1.9.   To enter a final decree closing the Case, and orders reopening the Case, as appropriate.

\\\\

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

Page 35

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640-3 Doc#: 0039   Filed: 05/04/10   Entered: 05/04/10 13:32:38   Page 35 of 64

# ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1. <u>Exemption from Transfer Taxes</u>. Pursuant to Bankruptcy Code Section 1146(a), the issuance, transfer, or exchange of a security under this Plan, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

10.2. <u>Binding Effect</u>. This Plan is be binding upon and inures to the benefit of the Proponent, the Liquidating Agent, the Debtor, all holders of Claims and Interests, and their respective successors and assigns, whether or not they have accepted this Plan.

10.3. <u>Notices</u>. Any notice or other paper required or permitted to be served or provided under this Plan must be in writing and served or given by the quickest practical available method of delivery (which, as to the Liquidating Agent, the Proponent, and their respective counsel, if any, is conclusively presumed to be (i) by hand delivery; or (ii) by facsimile with hard copy to follow by overnight courier). All of those notices and other papers to the Liquidating Agent or the Proponent must be served or otherwise delivered as follows (or as otherwise directed by that party by notice given pursuant hereto):

If to the Proponent, to:

ORIX Capital Markets, LLC
1717 Main Street, 9th Floor
Dallas, Texas 75201
Attention:     Sara Owen
               Senior Asset Manager
Facsimile:     (214) 237-2018

With a copy to:

Jeffer, Mangels, Butler & Marmaro LLP
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Attention:     Robert B. Kaplan, Esq.
Facsimile:     (415) 398-5584

\\\\

\\\\

\\\\

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

If to the Liquidating Agent, to:

Anthony C. Dimond
1050 Northgate Drive, Suite 440
San Rafael, California 94903
Facsimile:     (415) 925-8804

With a copy to:

Counsel for the Liquidating Agent, if any, identified in a Notice of Appearance filed in the Case by that counsel, at that counsel's address set forth therein.

10.4. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the laws of the State of California, without giving effect to the conflict of laws provisions thereof, will govern the rights and obligations arising under this Plan, and this Plan is to be construed and enforced in accordance therewith.

10.5. <u>Closing Case</u>. At such point as the Court determines, upon a motion of the Proponent or the Liquidating Agent, and following ten Business Days' notice and an opportunity for hearing to all parties listed in the Postconfirmation List, that all pending claims objections, contested matters, and adversary proceedings have been resolved, or that the Case need remain open no longer despite the pendency of any of those objections, matters, or proceedings, the Case may be closed by the terms of a final decree of the Court; *provided*, that the Case will be reopened thereafter if necessary in order to facilitate any of the actions contemplated by this Plan.

10.6. <u>Expenses</u>. If any action, motion, contested matter, complaint, answer, counterclaim, cross-claim, or other action is filed or taken by the Proponent or the Liquidating Agent after the Effective Date, either in the Court or otherwise, in order to enforce or interpret this Plan or the Confirmation Order, or any order or agreement made in implementation of this Plan, the prevailing party in that matter (as determined by a court of competent jurisdiction) will be entitled to recover from any opposing party its expenses, including reasonable attorneys' fees and costs, incurred in that matter.

\\\\

\\\\

\\\\

10.7. <u>Modification and Enforcement</u>. The following apply, in addition to applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, to the modification or enforcement of this Plan:

10.7.1.  <u>Modification</u>. Following the Effective Date, the Court may, on a motion in the Case by the Proponent, after notice to all parties listed in the Postconfirmation List (or those other parties as authorized by the Court) and an opportunity to be heard, remedy any defects or omissions, or to reconcile any inconsistencies, in this Plan or the Confirmation Order.

10.7.2.  <u>Enforcement</u>. The Proponent may take those actions, including the initiation of proceedings or the prosecution of a motion, as may be reasonably necessary in order to interpret or enforce the purposes and intent of this Plan.

Dated: May 4, 2010.

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT B. KAPLAN
NICOLAS DE LANCIE


By:     /s/ Nicolas De Lancie
            Nicolas De Lancie

Attorneys for Secured Creditor and Plan
Proponent ORIX CAPITAL MARKETS, LLC

PRINTED ON
RECYCLED PAPER

Page 38

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640-3 Doc #0039   Filed: 05/04/10   Entered: 05/04/10 11:32:38   Page 38 of
64

# EXHIBIT A

## SCHEDULE OF DEFINITIONS

As used in this Plan, the following terms have the meanings specified below, unless the context otherwise requires:

**"Administrative Bar Date"** means the first Business Day that more than 30 calendar days after the Effective Date.

**"Administrative Expense Claim"** means any Claim, except for Claims that are Secured Claims or Secured Post-Petition Property Tax Claims, arising on or after the Petition Date and before the Effective Date under Bankruptcy Code Sections 503(b) or 507(a)(1), including (i) any actual and necessary expenses of preserving the Estate; (ii) any actual and necessary expenses of operating the business of the Debtor; (iii) all compensation or reimbursement of expenses allowed by the Court under Bankruptcy Code Sections 330, 331, or 503; (iv) any fees or charges assessed against the Estate under Judiciary Code Section 1930; and (v) all Claims arising from employment with the Debtor.

**"Allowed"** means, with respect to a Claim, a Claim that is neither a Disputed Claim nor a Disallowed Claim, and proof of which was timely and properly filed or, if no proof of claim was filed, that has been or is hereafter listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent. An Allowed Claim, including an Allowed Administrative Expense Claim, does not include interest on that Claim from and after the Petition Date except as expressly provided by this Plan.

**"Allowed [x] Claim"** means an Allowed Claim within the particular Class or category "[x]" identified.

**"Ballot"** means each of the voting forms to be distributed with this Plan and the Disclosure Statement to holders of Claims or Interests in Classes that are impaired under this Plan and entitled to vote in connection with the solicitation of acceptances of this Plan.

**"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time.

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including the Local Rules.

"**Broker**" means a licensed real estate broker that may be retained by the Liquidating Agent in connection with the Auction Sale under the Broker Agreement, which broker is reasonably acceptable to the Propoenet.

"**Broker Agreement**" means a written agreement between the Liquidating Agent and the Broker for the retention of the Broker by the Liquidating Agent, which agreement, including the commission provisions thereof, is reasonably acceptable to the Proponent.

"**Business Day**" means any day on which commercial banks are generally open for business in San Francisco, California, other than a Saturday, Sunday, or legal holiday in the State of California.

"**Case**" means the case pending before the Court under Chapter 11 of the Bankruptcy Code in which the Debtor is the debtor, styled *In re Lighthouse Lodge, LLC*, bearing Case No. 09-52610.

"**Cash**" means the legal tender of the United States of America and cash equivalents denominated in United States currency.

"**Claim**" means (i) any right to payment from the Debtor, whether or not that right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (ii) any right to an equitable remedy for breach of performance if that breach gives rise to a right to payment from the Debtor, whether or not that right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; or (iii) any "claim" as that term is defined by Bankruptcy Code Section 101(5).

"**Claimant**" means a person asserting a Claim against the Debtor or the Estate.

"**Class**" means a category of holders of Claims or Interests as established by Article II (Classification of Claims and Interests; Impairment).

"**Classified Priority Claim**" means a Priority Claim other than a Nonclassified Priority Claim.

PRINTED ON
RECYCLED PAPER

Page 40

Case: 09-52610   Doc# 139   Filed: 05/04/10   Entered: 05/04/10 11:32:38   Page 40 of
64

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

JMBM | Jeffer Mangels Butler & Marmaro LLP

"**Closing**" means the date on which the Sale is consummated.

"**Closing Date Payment Date**" means, with respect to a Claim, the latest of (i) 30 calendar days after the Closing; (ii) that later date as to which the holder of that Claim may have consented to the payment thereof; and (iii) if that Claim was a Disputed Claim or if applicable provisions of the Bankruptcy Code otherwise require Court approval thereof, the date that is as soon as practicable for the payment thereof after an order allowing that Claim as an Allowed Claim or otherwise approving that Claim becomes a Final Order.

"**Collateral**" means, with respect to an Allowed Claim, any property or interest in property of the Debtor or the Estate that is subject to a lien to secure the payment or performance of that Claim, which lien is valid, perfected, and enforceable under applicable nonbankruptcy law, and not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable nonbankruptcy law.

"**Commercial Code**" means the California Commercial Code, as amended from time to time.

"**Confidentiality Agreement**" means that certain Confidentiality Agreement to be entered into by a person in order to become a Prospective Bidder pursuant to Section 6 (Prospective Bidders) of the Sale Procedures in substantially the form to be filed in the Case at least seven calendar days prior to the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Clerk of the Court enters the Confirmation Order.

"**Confirmation Hearing**" means the hearing before the Court for the purpose of determining whether this Plan will be confirmed by the Court pursuant to Bankruptcy Code Section 1129.

"**Confirmation Order**" means the order of the Court confirming this Plan pursuant to Bankruptcy Code Section 1129.

"**County**" means The County of Monterey, California.

\\\\

\\\\

PRINTED ON
RECYCLED PAPER

Page 41

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

Case: 09-53640/3 6 Doc #:039    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 41 of
64

JMBM | Jeffer Mangels
Butler & Marmaro LLP

**"Court"** means the United States Bankruptcy Court for the Northern District of California, San Jose Division, the Honorable Roger L. Efremsky presiding, or that other judge or court having competent jurisdiction over the Case.

**"Creditor"** means any person that has a Claim against the Debtor that arose on or before the Petition Date, or a claim against the Debtor of any kind specified in Bankruptcy Code Sections 502(f), 502(g), 502(h), or 502(i).

**"Debtor"** means Lighthouse Lodge, LLC, a California limited liability company.

**"Disallowed Claim"** means (i) any Claim (A) proof of which was not timely and properly filed; and (B) if that Claim is not an Administrative Expense Claim, that is listed in the Schedules as unliquidated, disputed, or contingent, or is not listed in the Schedules; or (ii) any Claim that (A) has not been allowed by an earlier Final Order of the Court or by this Plan; and (B) as to which (1) prior to the Effective Date, any party in interest has filed an objection or request for estimation; or (2) on or after the Effective Date, any Permitted Objector with respect thereto has filed an objection or request for estimation within (I) 180 calendar days following the later of (a) the Effective Date; and (b) the filing and service of that Claim on the Liquidating Agent and the Proponent; or (II) that other applicable limitation period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, to the extent that that Claim is disallowed by a Final Order.

**"Disclosure Statement"** means that certain Joint Disclosure Statement for (1) Debtor's Second Amended Plan of Reorganization (Dated May 3, 2010); and (2) ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (Dated May 4, 2010) filed by the Debtor in the Case on May 4, 2010 **[Docket No. ___]**, as approved by the Court on **[disclosure statement approval order date]**, pursuant to Bankruptcy Code Section 1125.[*]

**"Disputed Claim"** means any Claim (i) that has not been allowed by an earlier Final Order of the Court or by this Plan; and (ii) as to which (A) prior to the Effective Date, any party in interest has filed an objection or request for estimation; or (B) on or after the Effective

---

[*] **[N.B.: All bracketed items in this definition will be completed before distribution of this Plan after entry of the order approving the Disclosure Statement.]**

PRINTED ON
RECYCLED PAPER

Date, any Permitted Objector with respect thereto has filed an objection or request for estimation within (1) 180 calendar days following the later of (I) the Effective Date; and (II) the filing and service of that Claim on the Liquidating Agent and the Proponent; or (2) that other applicable limitation period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, except to the extent that that objection or request for estimation has been withdrawn or determined by a Final Order.

**"Disputed Claims Reserve"** means the reserve established pursuant to Section 7.17 (Distributions under Plan).

**"Disputed Claims Reserve Account"** means a deposit account, interest bearing, if possible, opened by the Liquidating Agent with a Federal Deposit Insurance Corporation insured depository institution into which the Liquidating Agent shall deposit Cash sufficient to fund the Disputed Claims Reserve.

**"District"** means the Northern District of California.

**"Effective Date"** means the Business Day that is no fewer than 11 and no more than 30 calendar days after the Confirmation Date or, if effectuation of this Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no more than 30 calendar days following expiration of that stay or injunction designated by the Proponent as the date on which this Plan will become effective.

**"Effective Date Exit Financing Advance"** means an advance under the ORIX Deed of Trust in Cash by the holder of the ORIX Secured Claim to the Estate in an amount equal to the sum of (i) the Nonclassified Priority Claims Payments, the General Priority Claims Payments, the Gift Certificate Priority Claims Payments, the Other Secured Claims Payments, the Financial Pacific Secured Claim Payment, and the General Unsecured Claims Payments; and (ii) the amounts necessary to fund the Disputed Claims Reserve on account of Administrative Expense Claims, Priority Tax Claims, General Priority Claims, Gift Certificate Priority Claims, Other Secured Claims, the Financial Pacific Secured Claim, and General Unsecured Claims to the extent that those Claims are Disputed Claims and the holders of those

\\\\

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

PRINTED ON
RECYCLED PAPER

Claims would, if those Claims became Allowed Claims, be entitled to receive the payments identified in preceding clause (i).

**"Effective Date Payment Date"** means, with respect to a Claim, the latest of (i) the Effective Date; (ii) that later date as to which the holder of that Claim may have consented to the payment thereof; (iii) as to a Claim that is not a Secured Post-Petition Property Tax Claim, the date that that Claim becomes due according to contractual, statutory, or other terms applicable thereto; (iv) as to a Secured Post-Petition Property Tax Claim, the date that that Claim becomes last payable without interest or penalty according to statutory terms applicable thereto; and (v) if that Claim was a Disputed Claim or if applicable provisions of the Bankruptcy Code otherwise require Court approval thereof, the date that is as soon as practicable for the payment thereof after an order allowing that Claim as an Allowed Claim or otherwise approving that Claim becomes a Final Order.

**"Equity Holder"** means a holder of an Interest.

**"Estate"** means the Chapter 11 estate of the Debtor in the Case.

**"Estate Causes of Action"** means each and every claim, right, cause of action, claim for relief, or other entitlement held by the Debtor in favor of the Debtor or the Estate, whether arising under Bankruptcy Code Sections 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, or 553, or otherwise.

**"Final Order"** means an order of the Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing are then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing has been waived, or, in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, that order has been determined by the highest court to which that order was appealed, or certiorari, reargument, or rehearing has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing has expired.

\\\\

"**Financial Pacific**" means Financial Pacific Leasing, LLC, a Washington limited liability company, and any affiliates thereof.

"**Financial Pacific Claim**" means the Claim of Financial Pacific arising from or under the Financial Pacific Lease.

"**Financial Pacific Lease**" means all indebtedness, loans, liability, and obligations of the Debtor to Financial Pacific evidenced or governed by a purported equipment lease by and between the Debtor and Financial Pacific, as amended, and any and all instruments, agreements, and other documents related thereto and secured by that equipment, including the principal thereof and all accrued but unpaid interest and all fees and costs (including attorneys' fees and costs) and other amounts due thereunder.

"**Financial Pacific Secured Claim**" means the Financial Pacific Claim to the extent that it is a Secured Claim.

"**Financial Pacific Secured Claim Payment**" means the payment to be made on account of the Financial Pacific Secured Claim pursuant to Section 4.3.3 (Payment).

"**General Priority Claim**" means a Classified Priority Claim other than a Gift Certificate Priority Claim.

"**General Priority Claims Payments**" means the payments to be made on account of Allowed General Priority Claims pursuant to Section 4.1.2 (Payment).

"**General Unsecured Claim**" means an Unsecured Nonpriority Claim other than an Insider Unsecured Claim.

"**General Unsecured Claims Net Proceeds**" means the lesser of (i) the Net Proceeds, if any, remaining after (A) payment has been made to, or a Disputed Claims Reserve has been established on account of (and as from time to time adjusted by the Liquidating Agent as Claims become Allowed Claims or Disallowed Claims), as provided by this Plan, (1) all Allowed Class B Secured Claims; (2) all Allowed Administrative Expense Claims; (3) all Allowed Class A Claims; and (4) all Allowed Priority Tax Claims; and (B) the establishment of the Tax Reserve; and (ii) the aggregate of the amounts to be paid on account of all Allowed General Unsecured Claims pursuant to Section 4.5.1 (Amount) and the Disputed Claims

ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (May 4, 2010)

PRINTED ON RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

Reserve for General Unsecured Claims, less the payments made to the holders of General Unsecured Claims pursuant to Section 4.5.3.1 (Payment on Effective Date).

"**General Unsecured Claims Payments**" means the payments to be made on account of General Unsecured Claims pursuant to Section 4.5.3.1 (Payment on Effective Date).

"**Gift Certificate**" means (i) a writing signed and issued by the Debtor evidencing the deposit with or payment to the Debtor of money on account of or redeemable for future lodging, food, beverages, goods, or services at the Lodge, whether or not held by the person that made or paid that money; or (ii) any other deposit with or payment to the Debtor of money on account of or redeemable for future lodging, food, beverages, goods, or services at the Lodge held by the person that made or paid that money.

"**Gift Certificate Nonpriority Claim**" means a Claim arising from or under a Gift Certificate that is not a Gift Certificate Priority Claim.

"**Gift Certificate Priority Claim**" means a Claim arising from or under a Gift Certificate that is held by an individual, to the extent of $2,425.

"**Gift Certificate Priority Claims Payments**" means the payments to be made on account of Allowed Gift Certificate Priority Claims pursuant to Section 4.2.2.2 (Payment).

"**Horwath HTL**" means HTL Management, LLC, a California limited liability company.

"**Impaired Allowed Claim**" means an Allowed Claim designated as impaired pursuant to Section 2.2.2 (Impaired Classes).

"**Insider Unsecured Claim**" means an Unsecured Nonpriority Claim originally due to or now or hereafter held by an insider of the Debtor.

"**Insider Unsecured Claims Net Proceeds**" means the lesser of (i) the Net Proceeds, if any, remaining after (A) payment has been made to, or a Disputed Claims Reserve has been established on account of (and as the Disputed Claims Reserve is from time to time adjusted by the Liquidating Agent as Claims become Allowed Claims or Disallowed Claims), as provided by this Plan, (1) all Allowed Class B Secured Claims; (2) all Allowed Administrative Expense Claims; (3) all Allowed Class A Claims; (4) all Allowed Priority Tax

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

PRINTED ON
RECYCLED PAPER

Claims; and (5) all Allowed General Unsecured Claims; and (B) the establishment of the Tax Reserve, if any (and as the Tax Reserve is from time to time adjusted by the Liquidating Agent, including by the release of amounts therein no longer necessary to pay any taxes on account of which it was established); and (ii) the aggregate of the amounts to be paid on account of all Allowed Insider Unsecured Claims pursuant to Section 5.2.1 (Amount) and the Disputed Claims Reserve for Insider Unsecured Claims.

"**Interest**" means an equity security interest in the Debtor.

"**Judiciary Code**" means Title 28 of the United States Code, as amended from time to time.

"**Liquidating Agent**" means Anthony C. Dimond as the liquidating agent under this Plan, and any substitute or replacement liquidating agent appointed under this Plan.

"**Liquidating Agent Professionals**" means the agents, professionals, and other persons, including the Broker and the Manager, employed by the Liquidating Agent pursuant to Section 7.2.6 (Employment of Agents and Professionals) above.

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Northern of District California.

"**Lodge**" means the lodging and related facilities known as the "Lighthouse Lodge and Suites", and the furniture, fixtures, equipment, and inventory thereof, comprising the Real Property .

"**Management Agreement**" means that certain Management Agreement to be entered into between the Liquidating Agent and the Manager for the management of the Real Property substantially in the form to be filed in the Case at least seven calendar days prior to the Confirmation Hearing pursuant to Section 7.3 (Management of Real Property).

"**Manager**" means the manager appointed under the Management Agreement.

"**Nationsbank**" means Nationsbank, N.A.

"**Net Proceeds**" means the Cash consideration received from the Sale less (i) the reasonable, necessary, and customary expenses attributable to that sale and customarily borne by a seller in the County, including proration of real property taxes and assessments, transfer or

PRINTED ON
RECYCLED PAPER
ORIX Capital Markets, LLC, Creditor's Second Amended Plan of Liquidation (May 4, 2010)

JMBM Jeffer Mangels Butler & Marmaro LLP

other taxes accruing in connection with that sale, brokerage fees, commissions, escrow and closing costs, and the like; and (ii) those reserves that the Liquidating Agent deems, in its discretion using its sound business judgment and taking into account any Rents then on hand, necessary for the payment of the then-unpaid operating expenses of the Real Property through the Closing, the expenses and fees of the Liquidating Agent and the Manager, and the Postconfirmation Proponent Expenses.

"**Nonclassified Priority Claim**" means a Priority Claim that is either a Priority Tax Claim, a Secured Post-Petition Property Tax Claim, or an Administrative Expense Claim.

"**Nonclassified Priority Claims Payments**" means the payments to be made on account of Allowed Nonpriority Claims pursuant to Section 3.4 (Payment).

"**Official Records**" means the Official Records of the County.

"**ORIX**" means ORIX Capital Markets, LLC, a Delaware limited liability company, successor in interest to Wells Fargo Minnesota as to the ORIX Loan and the ORIX Loan Documents.

"**ORIX Adequate Protection Payment**" means, as of the day that each of those payments is to be made pursuant to Section 5.1.3 (Adequate Protection Payments before Closing), a payment on account of the ORIX Secured Claim in Cash in the amount of the lesser of (i) $71,542.40; and (ii) the amount of Cash held by the Liquidating Agent that is neither (A) necessary to cover payments of Allowed Claims (other than the ORIX Secured Claim) due or to become due under this Plan; (B) part of the Disputed Claims Reserve; nor (C) reasonably held by the Liquidating Agent, in its discretion using its sound business judgment and taking into account any Rents anticipated thereafter to be received and any other available Cash on hand, for the payment of the operating expenses of the Real Property through the Closing, the Postconfirmation Liquidating Agent Expenses, the fees and expenses of the Manager, and the Postconfirmation Proponent Expenses.

"**ORIX Collateral**" means the Collateral for the ORIX Loan.

"**ORIX Collection Injunction**" means the injunction described in Section 5.1.7 (Collection Injunction).

PRINTED ON
RECYCLED PAPER
Jeffer Mangels
Butler & Marmaro LLP
JMBM

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

"**ORIX Deed of Trust**" means that certain Deed of Trust, Assignment of Leases and Rents, and Security Agreement dated as of September 16, 1998, made by the Debtor, as trustor, to the trustee named therein, as trustee, for the benefit of Nationsbank, as beneficiary, and recorded in the Official Records on that date as Document No. 9862470, encumbering the Real Property, to secure the ORIX Loan, as thereafter amended, which is now held by ORIX.

"**ORIX Loan**" means all indebtedness, loans, liabilities, and obligations of the Debtor to ORIX Capital governed, evidenced, or secured by the ORIX Loan Agreement, the ORIX Loan Note, the ORIX Loan Deed of Trust, and the others of the ORIX Loan Documents, including all principal of the ORIX Loan Note; all accrued but unpaid interest due under the ORIX Loan Note (including interest at any default rate thereunder as provided therein); any prepayment premium due under the ORIX Loan Note; and all fees and costs (including attorneys' fees and costs) and other amounts due under the ORIX Loan Documents.

"**ORIX Loan Agreement**" means that certain Loan Agreement dated as of September 16, 1998, made by the Debtor and Nationsbank with respect to the ORIX Loan, as thereafter amended, including by the ORIX Loan Modification Agreement, the Prior Plan, and the Prior Confirmation Order, now held by ORIX.

"**ORIX Loan Documents**" means the ORIX Loan Agreement, the ORIX Note, the ORIX Deed of Trust, and any and all other instruments, agreements and other documents made by the Debtor related to the ORIX Loan prior to the Effective Date, as thereafter amended, which is now held by ORIX.

"**ORIX Loan Modification Agreement**" means that certain Loan Modification Agreement dated as of October 18, 2004, made by the Debtor and ORIX with respect to the ORIX Note and the ORIX Loan Agreement in order to implement the Prior Plan.

"**ORIX Note**" means that certain Promissory Note dated September 16, 1998, in the original principal amount of $9,300,000, made by the Debtor in favor of Nationsbank, as thereafter amended, including by the ORIX Loan Modification Agreement, the Prior Plan, and the Prior Confirmation Order, which is now held by ORIX.

\\\\

Case: 09-53640-3 6 Doc #0039    Filed: 05/04/10    Entered: 05/04/10 11:32:38 Page May of 2010)
64

1    **"ORIX Secured Claim"** means the entire Claim held by ORIX arising from or
2    under the ORIX Loan.

3    **"Other Secured Claims Payments"** means the payments to be made on account
4    of Secured Claims within Class B3 pursuant to Section 4.4.1.1 (Full Satisfaction).

5    **"Permitted Administrative Expense Objector"** means the Proponent, the
6    Liquidating Agent, or any Permitted Postconfirmation General Objector.

7    **"Permitted Claim Objector"** means the Proponent, the Liquidating Agent, or any
8    Permitted Postconfirmation Objector.

9    **"Permitted Objector"** means (i) with respect to an Administrative Expense Claim,
10   including a Professional Fee, any Permitted Administrative Expense Objector; (ii) with respect
11   to a Postconfirmation Proponent Expense, the Liquidating Agent and any Permitted
12   Postconfirmation Objector; and (iii) with respect to any Claim that is not an Administrative
13   Expense Claim, any Permitted Claim Objector.

14   **"Permitted Postconfirmation Objector"** means any Creditor holding an Allowed
15   Class C2 Claim, any Interest Holder, the Debtor, and the United States Trustee.

16   **"Personal Property"** means all tangible or intangible personal property that is
17   property of the Debtor or the Estate that is not included within the definition of the Real
18   Property.

19   **"Petition"** means the Voluntary Petition filed by the Debtor with the Court on the
20   Petition Date by which the Case was commenced.

21   **"Petition Date"** means April 9, 2009, the date upon which the Debtor filed the
22   Petition with the Court.

23   **"Plan"** means this ORIX Capital Markets, LLC, Creditor's Second Amended Plan
24   of Liquidation (Dated May 4, 2010) (including all exhibits and schedules annexed hereto or
25   filed separately), either in its present form or as it may hereafter be altered, amended, or
26   modified from time to time.

27   **"Postconfirmation List"** means the United States Trustee, the Proponent, the
28   Liquidating Agent, and those parties who, subsequent to the Confirmation Date, file in the Case

PRINTED ON
RECYCLED PAPER

Case: 09-53640-3 Doc#: 639  Filed: 05/04/10  Entered: 05/04/10 11:32:38  Page 50 of
64

and serve on the United States Trustee, the Proponent, and the Liquidating Agent written requests for special notice as provided by the Plan; *provided*, that any of those requesting parties may be eliminated from that list from time to time by consent of that party or by Final Order of the Court on notice to the then-constituted Postconfirmation List upon a showing that that party no longer holds material Interests or Claims in the Case.

**"Postconfirmation Liquidating Agent Expenses"** means the reasonable compensation for services rendered and the reasonable reimbursement for expenses incurred of the Liquidating Agent and the Liquidating Agent Professionals, other than the Broker and the Manager, arising after the Confirmation Date in connection with the matters that the Liquidating Agent and the Liquidating Agent Professionals are authorized or required to address under this Plan as provided in Section 7.2 (Liquidating Agent) above.

**"Postconfirmation Proponent Expenses"** means the fees and costs (including reasonable attorneys' fees and costs) of the Proponent arising after the Confirmation Date in connection with the matters that the Proponent is authorized or required to address under this Plan.

**"Prior Case"** means the case that was pending before the Prior Court under Chapter 11 of the Bankruptcy Code in which the Debtor was the debtor, styled *In re Lighthouse Lodge, LLC*, bearing Case No. 03-11635-A-11.

**"Prior Court"** means the United States Bankruptcy Court for the Eastern District of California, Fresno Division.

**"Prior Confirmation Order"** means that certain Order Confirming Debtor's Sixth Amended Plan of Reorganization (Dated August 23, 2004) filed in the Prior Case on October 7, 2004, with respect to the Prior Plan.

**"Prior Plan"** means that certain Debtor's Sixth Amended Plan of Reorganization filed in the Prior Case on August 23, 2004.

**"Priority Claim"** means a Claim (or the portion thereof) entitled to priority treatment under Bankruptcy Code Section 507(a).

\ \ \ \

PRINTED ON
RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

1    **"Priority Tax Claim"** means a Priority Claim of a governmental unit entitled to

2    priority treatment pursuant to Bankruptcy Code Sections 502(i) and 507(a)(8), other than a

3    Secured Claim.

4    ***"pro rata"*** means, with respect to Claims, at any time, the ratio of (i) the amount at

5    that time of an Allowed Claim in a particular Class (or designated group of Claims), including

6    any interest due on that Claim as provided by this Plan, after giving effect to any prior

7    payments on account of that Claim as provided by this Plan; to (ii) the aggregate amount at that

8    time of all Allowed Claims in that Class or designated group, including any interest due on

9    those Claims as provided by this Plan, after giving effect to any prior payments on account of

10    those Claims as provided by this Plan, together with the Disputed Claims Reserve for that Class

11    or designated group.

12    **"Professional Fees"** means a Claim for compensation or reimbursement of

13    expenses of a professional retained in the Case in accordance with Bankruptcy Code

14    Sections 327, *et seq.*

15    **"Proponent"** means ORIX.

16    **"Proposed Asset Purchase Agreement"** means that certain form of Asset

17    Purchase Agreement to be proposed by the Liquidating Agent to each a Qualified Bidder for

18    the purchase of the Sale Assets pursuant to Section 7 (Proposed Asset Purchase Agreement;

19    Due Diligence) of the Sale Procedures to be filed in the Case at least seven calendar days prior

20    to the Confirmation Hearing.

21    **"Real Property"** means that certain real property and improvements thereon,

22    including the Lodge, owned by the Debtor and located at 1150 and 1249 Lighthouse Avenue,

23    Pacific Grove, California, and associated personal property, all as is more particularly

24    described in the ORIX Deed of Trust, excluding the Rents.

25    **"Rents"** means the rents, issues, profits, revenues, and proceeds of the Real

26    Property, including all fees, charges, accounts, or other payments for the use or occupancy of

27    rooms or other public facilities in the Lodge, the consumption of food or beverages at the

28    \ \ \ \

Lodge, the purchase of goods from the Estate, or the use or receipt of services at the Lodge or from the Estate.

**"Sale"** means the public auction sale by the Liquidating Agent on behalf of the Estate of the Sale Assets pursuant to Section 7.6 (Sale of Real and Personal Property) and the Sale Procedures.

**"Sale Assets"** means (i) the Lodge (*i.e.*, the Real Property); and (ii) so much of the Personal Property (excluding Cash) as the Liquidating Agent determines to sell together therewith at the Sale.

**"Sale Date"** means the first Business Day that is more than 120 calendar days after the Effective Date unless the Proponent and the Liquidating Agent, each in its sole discretion, agree to an extension of thereof, in which case, the Sale Date will be the date from time to time so agreed.

**"Sale Procedures"** means the procedures for the Sale set out on **Exhibit B**.

**"Schedule of Definitions"** means this **Exhibit A**.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor in the Case on or about April 13, 2009 [Docket No. 18], and all amendments or modifications filed with respect thereto.

**"Secured Claim"** means an Allowed Claim, other than a Secured Post-Petition Property Tax Claim, including interest and other amounts accrued on and after the Petition Date and through the Effective Date, if any, due in respect thereof pursuant to Bankruptcy Code Section 506(b), held by any entity to the extent of the value of the Collateral for that Claim as (i) set forth in this Plan; (ii) determined by a Final Order of the Court pursuant to Bankruptcy Code Section 506(a) using that valuation standard determined by the Court as appropriate and taking into account the priority of the liens that encumber that Collateral; or (iii) agreed on by that entity and the Proponent.

**"Secured Creditor"** means the holder of a Secured Claim.

**"Secured Post-Petition Property Tax Claim"** means a Claim, including interest and penalties under applicable nonbankruptcy law, arising on or after the Petition Date under

PRINTED ON
RECYCLED PAPER
Page 53

Case: 09-53640 Doc#: 689 Filed: 05/04/10 Entered: 05/04/10 11:32:38 Page 53 of 64

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

JMBM | Jeffer Mangels Butler & Marmaro LLP

Bankruptcy Code Sections 503(b) or 507(a)(1) for real property taxes and assessments secured by a lien on the Real Property held by a governmental unit and due and last payable without interest or penalty before the Closing.

"**Tax Reserve**" means the reserve established in accordance with Section 7.7 (Taxes Due on or As Consequence of Sale of Real Property).

"**Unimpaired Allowed Claim**" means an Allowed Claim designated as unimpaired pursuant to Section 2.2.1 (Unimpaired Classes).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or a Priority Claim.

"**Unsecured Nonpriority Claim**" means an Unsecured Claim other than a Priority Claim.

"**Wells Fargo Minnesota**" means Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of Nationslink Funding Corporation, Commercial Mortgage Pass-Through Certificates, Series 1999-1, successor in interest to Nationsbank as to the ORIX Loan and the ORIX Loan Documents.

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

PRINTED ON
RECYCLED PAPER

# EXHIBIT B

## SALE PROCEDURES

The procedures to be used for the Sale are set forth below.

1.  <u>Manner of Sale</u>. The Sale Assets will offered for sale to one or more Qualified Bidders (defined in Section 10 (Qualified Bidders) of these Sale Procedures) by the Liquidating Agent on behalf of the Estate at a public auction sale with competitive bidding as set forth in these Sale Procedures (*i.e.*, the Sale).

2.  <u>Assets to Be Sold</u>. The Sale Assets will consist of the Lodge (*i.e.*, the Real Property) and so much of the Personal Property (excluding Cash) as the Liquidating Agent determines to sell together therewith at the Sale (*i.e.*, the Sale Assets). The Sale Assets will be more specifically identified in the Proposed Asset Purchase Agreement. For the avoidance of doubt, the Estate will retain all rights to the Lodge and the other Sale Assets, or any portion thereof, that are not subject to a bid accepted by the Estate.

3.  <u>General Terms of Sale</u>.

    (a)  <u>Sale Free and Clear of Liens</u>. Except as otherwise provided in the Proposed Asset Purchase Agreement, all of the Debtor's right, title, and interest in and to the Sale Assets will be sold free and clear of all liens pursuant to Bankruptcy Code Sections 363(f) and 1125(a)(5)(D). Those liens will attach to the proceeds of the Sale with the same validity, priority, and extent as they had with respect to the Sale Assets.

    (b)  <u>"As Is, Where Is, with All Faults"</u>. Except to the extent set forth in the Bid APA (defined in Section 8 (Bids) of these Sale Procedures) of the Successful Bidder (defined in Section 11(c) (Auction Procedures) of these Sale Procedures), the sale of the Sale Assets will be on an "as is, where is, with all faults" basis and without representations or warranties of any kind, nature, or description by the Debtor, the Estate, the Liquidating Agent, the Proponent, or any of their respective principals, members, affiliates, employees, agents, attorneys, or other representatives.

\\\\

PRINTED ON
RECYCLED PAPER

(c)     Closing. Except as provided in Sections 12(a) (Scheduling) and 14 (Failure to Close) of these Sale Procedures, the Closing must occur on a Business Day that is not later than 30 calendar days after the Sale.

4.     Solicitations of Interest. From and after the Effective Date, the Liquidating Agent shall use commercially reasonable efforts to interest persons in becoming bidders at the Sale.

5.     Broker. The Liquidating Agent may utilize a Broker in connection with the Sale as its agent, but it will not be obligated to do so. Subject to the requirements set out in the definition of the "Broker" on the Schedule of Definitions, the Broker may be the prior real estate broker of the Debtor or an affiliate of the Liquidating Agent. No order of the Court will be required for the Liquidating Agent to retain the Broker or to perform under the written agreement for the Broker's retention, including for the payment by the Liquidating Agent of a real estate sale commission to the Broker in connection with the Sale. Without the express provision in that agreement for the payment of a real estate sale commission to the Broker in connection with a sale of the Sale Assets to the Proponent by a credit bid at the Sale, no real estate sale commission is to be paid to the Broker in connection with such a sale.

6.     Prospective Bidders. Any person interested in becoming a bidder at the Sale should contact the Liquidating Agent at **[Liquidating Agent's address]**, Attention: **[Liquidating Agent's name]**, **[Liquidating Agent's telephone number]**, **[Liquidating Agent's facsimile number]**, **[Liquidating Agent's e-mail address]**, to express that interest and to request due diligence information about the Sale Assets. The Liquidating Agent shall, as soon as is practicable after a person indicates to the Liquidating Agent an interest in becoming a bidder at the Sale, send a Confidentiality Agreement to that person. In order for a person to receive due diligence information about the Sale Assets and to be considered as a bidder at the Sale, that person must complete, sign, and deliver to the Liquidating Agent a Confidentiality Agreement (each person who does so, a **"Prospective Bidder"**).*

\\\\

---

*     **[N.B.: All bracketed items in this section will be completed on or before the Effective Date after the Liquidating Agent has been appointed.]**

JMBM | Jeffer Mangels
Butler & Marmaro LLP

7.     Proposed Asset Purchase Agreement; Due Diligence. The Liquidating Agent shall, as soon as is practicable after a person becomes a Prospective Bidder, (i) deliver to that Prospective Bidder a copy of the Proposed Asset Purchase Agreement; and (ii) provide that Prospective Bidder with reasonable access to the books, records, and management of the Lodge for the purpose of conducting due diligence about the Sale Assets. That access may, in the discretion of the Liquidating Agent, be provided by the establishment of a "due diligence room" and the scheduling for a number of Prospective Purchasers at the same time of meetings with management representatives of the Lodge and inspections of the Lodge. The Liquidating Agent will not be obligated to furnish any information of any kind whatsoever relating to the Sale Assets to any person that the Proponent does not believe is capable of becoming a Qualified Bidder.

8.     Bids.

(a)     Bid Packages. Each Prospective Bidder desiring to bid at the Sale for the Sale Assets must submit a written bid package (each, a **"Bid Package"**) to the Liquidating Agent in accordance with this Section 8 (Bids).

(b)     Deadline. Each Bid Package must be submitted so that it is actually received no later than 4:00 p.m. (prevailing Pacific Time) on the last Business Day that is more than 14 calendar days before the Sale (the **"Bid Deadline"**) by the Liquidating Agent at its address set forth above, with copies to (i) counsel for the Proponent, Jeffer, Mangels, Butler & Marmaro LLP, Two Embarcadero Center, Fifth Floor, San Francisco, California 94111-3824, Attention: Robert B. Kaplan, Esq.; (ii) counsel to the Debtor, Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, 5260 North Palm Avenue, Suite 217, Fresno, California 93704, Attention: Hagop T. Bedoyan, Esq.; and (iii) the Office of the United States Trustee, 280 South First Street, Room 268, San Jose, California 95113, Attention: John Wesolowski, Esq.

(c)     Requirements. Each Bid Package must contain the following:

(i)     A completed and, to the extent desired by the Prospective Bidder, revised Proposed Asset Purchase Agreement containing all the terms and conditions of that Prospective Bidder's bid for the Sale Assets, including the amount of the consideration to be

PRINTED ON
RECYCLED PAPER
Page 57

Case: 09-53640   Doc# 139   Filed: 05/04/10   Entered: 05/04/10 13:32:38   Page 57 of
64

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

paid, which must be all Cash, in at least the amount of $**[minimum bid amount]**[*] (the **"Minimum Bid Amount"**), and not subject to any financing contingency, marked to show the changes made to the Proposed Asset Purchase Agreement by that Prospective Bidder (each, a **"Marked APA"**);

(ii) A "clean" version of the Marked APA signed by the Prospective Bidder and suitable for signing by the Liquidating Agent such that if so signed it would become a legally binding and enforceable contract for the sale of the Sale Assets between that Prospective Bidder and the Liquidating Agent (each, a **"Bid APA"**);

(iii) A good faith Cash deposit under the Bid APA in the amount of $500,000 in the form of a certified or cashier's check made payable to the Liquidating Agent, as liquidating agent for the Estate (each, a **"Deposit"**);

(iv) Evidence (in the form of cash on hand, an unconditional commitment letter, an irrevocable letter of credit, or like evidence) of the Prospective Bidder's financial ability to purchase the Sale Assets pursuant to the Bid APA (the **"Adequate Assurance Package"**); and

(v) A facsimile number or e-mail address to be used to communicate with the Prospective Bidder.

(d) <u>Irrevocable Offer</u>. By submitting a Bid Package, a Prospective Bidder irrevocably offers for a period of 75 calendar days after the Sale to purchase the Sale Assets pursuant to the terms of the Prospective Bidder's Bid APA if that Bid APA Markup is accepted by the Liquidating Agent as provided in these Sale Procedures (that date, **"Outside Closing Date"**).

(e) <u>Supplements to Adequate Assurance Package</u>. Following submission of a Bid Package, each Prospective Bidder must provide to the Liquidating Agent and the other

---

[*] **[N.B.: The Minimum Bid Amount will be (i) the sum of (A) 95% of the amount of the ORIX Secured Claim as of the Effective Date but prior to the Effective Date Exit Financing Advance; (B) the estimated amount of the Effective Date Exit Financing Advance; and (C) the estimated amount that would be needed for the Tax Reserve if the amount of the Successful Bid were the Minimum Bid Amount; and (ii) announced at the Confirmation Hearing.]**

PRINTED ON
RECYCLED PAPER

Page 58

Case: 09-52649-3 6 Doc #: 0039    Filed: 05/04/10    Entered: 05/04/10 11:32:38    Page 58 of 64

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

recipients of its Bid Package at their respective addresses set forth above that other information as the Proponent or the Liquidating Agent reasonably request to demonstrate that Prospective Bidder's authority and ability timely to consummate its purchase the Sale Assets pursuant to its Bid APA if that Bid APA is accepted by the Liquidating Agent as provided in these Sale Procedures, which information, when so provided, will constitute a part of its Adequate Assurance Package. Provision of that information is a continuing condition for becoming or continuing to be a Qualified Bidder and participating in the Sale, even after a Prospective Bidder has become a Qualified Bidder.

(f)     Bid Confidentiality. Except as set forth in these Sale Procedures, all Bid Packages are to be kept confidential with access thereto limited to the Liquidating Agent, the Proponent, the Debtor, the United States Trustee, and other Qualified Bidders. Bid Packages may, however, be disclosed to any other person in the sole discretion of the Proponent.

9.     Handling Deposits. The Liquidating Agent shall hold each Deposit without negotiating the same until the conclusion of Sale Hearing (defined in Section 12 (Sale Hearing) of these Sale Procedure). At or as soon as practicable after the conclusion of the Sale Hearing, the Liquidating Agent (i) shall return to each person that has submitted a Deposit other than the Successful Bidder and the Runner-Up Bidder (defined in Section 12(b) of these Sale Procedures), if any; (ii) shall negotiate the Successful Bidder's Deposit; and (iii) shall continue to hold the Runner-Up Bidder's Deposit without negotiating the same until the Closing with the Successful Bidder occurs, if at all, whereupon, as soon as is practicable thereafter, the Liquidating Agent shall return to the Runner-Up Bidder its Deposit. If the Closing with the Successful Bidder fails occurs as contemplated in Section 14 (Failure to Close) of these Sale Procedures, the Liquidating Agent may negotiate the Runner-Up Bidder's Deposit and otherwise proceed in accordance with Section 14 (Failure to Close) of these Sale Procedures in connection therewith.

10.     Qualified Bidders.

(a)     Selection. No later than four Business Days before the Sale, the Proponent shall identify to the Liquidating Agent each of those Prospective Bidders that submitted a Bid

PRINTED ON
RECYCLED PAPER

Package that is acceptable to the Proponent in its sole discretion (each Prospective Bidder so identified, a **"Qualified Bidder"**; and each Qualified Bidder's Bid Package, a **"Qualified Bid"**).

(b)  Noncomplying Bid Packages. The Proponent may, in its sole discretion, consider any Bid Package or Prospective Bidder that does not timely comply with all of the foregoing requirements and accept that Bid Package as a Qualified Bid and identify that Prospective Purchaser as a Qualified Bidder.

(c)  The Proponent Deemed Qualified Bidder. Nothing in these Sale Procedures to the contrary withstanding, if the Proponent submits a Marked APA and a Bid APA, the same will be deemed a Qualified Bid and it will be deemed a Qualified Bidder notwithstanding that (i) it submits no Deposit or Adequate Assurance Package; and (ii) the consideration offered in its Bid APA is less than the Minimum Bid Amount and is to be paid by an offset against the ORIX Secured Claim pursuant to Bankruptcy Code Section 363(k).

(d)  Notification. No later than three Business Days before the Sale, the Liquidating Agent shall notify each of those Prospective Bidders that submitted a Bid Package in accordance with these Sale Procedures and each other Qualified Bidder by facsimile or e-mail of the identities of each Qualified Bidder, the location of the Sale, the Sale Date, and the time during regular business hours on that date that the Sale will be conducted (the **"Sale Time"**).

(e)  Adequate Opportunity to Conduct Due Diligence; No Reliance. By its submission of a Bid Package, each Qualified Bidder is deemed to acknowledge and represent that (i) it has had an opportunity to inspect and examine the Lodge and to conduct any and all due diligence regarding the Sale Assets prior to submitting its Bid Package; (ii) it has relied solely upon its own independent review, investigation, and inspection of all matters pertaining to the Sale Assets that it deems necessary or desirable in connection with submitting it Bid Package; and (iii) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Lodge, the other Sale Assets, or the completeness of any information

PRINTED ON
RECYCLED PAPER

ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

provided in connection with the Sale process, in each case except as expressly stated in its Bid APA.

11. <u>Sale</u>.

(a) <u>When and Where to Be Held; Postponement</u>. If there is at least one Qualified Bid for any of the Sale Assets, the Liquidating Agent shall conduct the Sale on the Sale Date at **[sale location]** at the Sale Time. If there is a postponement of the Sale as permitted herein or a change in the time or location thereof, the Liquidating Agent shall as soon as is practicable notify all Qualified Bidders thereof by facsimile or e-mail.[*]

(b) <u>Presale Procedures</u>. Not later than two Business Days prior to the Sale, the Liquidating Agent shall provide copies of the Qualified Bid the Proponent considers the highest or otherwise best Qualified Bid (the **"Opening Qualified Bid"**) to all Qualified Bidders. Not later than one Business Day prior to the Sale, each Qualified Bidder must inform the Liquidating Agent and the Proponent whether it intends to participate in the Sale.

(c) <u>Auction Procedures</u>.

(i) All Qualified Bidders desiring to participate in the Sale must appear at the Sale in person or through a duly authorized representative in person. Only Qualified Bidders will may make further bids for the Sale Assets at the Sale.

(ii) All bids at the Sale must be made with the opportunity for all Qualified Bidders to be present, consistent with the procedures authorized in these Sale Procedures.

(iii) At the start of the Sale, the Liquidating Agent shall inform the Qualified Bidders participating in the Sale of the procedures governing the conduct of the Sale, which procedures must be consistently and uniformly applied. The Proponent may, in its sole discretion, set all Sale procedures.

(iv) Each bid submitted after the Opening Qualified Bid must be in an increment of not less than $$50,000 (the **"Incremental Bid Amount"**) above the amount of the

---

[*] **[N.B.: The location of the Sale will be determined by the Liquidating Agent in consultation with the Proponent and the bracketed item in this section will be completed on or before the Effective Date after the Liquidating Agent has been appointed.]**

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

prior bid and will be deemed to be a Qualified Bid on the terms of that Qualified Bidder's Bid APA other than as to the amount of the consideration to be paid; *provided*, that any Qualified Bidder may in connection with any bid it submits after the Opening Qualified Bid adopt as its Bid APA the form of any other Qualified Bidder's Bid APA. During the course of the Sale, the Liquidating Agent shall inform each Qualified Bidder participating in the Sale which Qualified Bid reflects the then highest or otherwise best Qualified Bid, as determined by the Proponent in its sole discretion.

(v)     As soon as is practicable after the conclusion of the Sale, the Proponent shall determine, in good faith, the highest or otherwise best Qualified Bid for the Sale Assets submitted by a Qualified Bidder (to the extent that bid is acceptable, the **"Successful Bid"**; and the Qualified Bidder making the Successful Bid, the **"Successful Bidder"**) and advise the Liquidating Agent thereof; *provided*, that the Proponent may reject any and all bids.

(vi)    If there is a Successful Bid, (i) the Liquidating Agent shall as soon as practicable thereafter notify each Qualified Bidder that participated in the Sale and the Debtor thereof; (ii) the Successful Bidder shall as soon as is practicable after being so notified sign and deliver to the Liquidating Agent a revision of the Successful Bidder's Bid APA to conform to the terms of the Successful Bid (including to conform to the form of any other Qualified Bidder's Bid APA adopted by the Successful Bidder pursuant to Section 11(c)(iv) of these Sale Procedures); and (iii) the Liquidating Agent shall as soon as is practicable after receipt of that revised Bid APA, or, if no revised Bid APA is needed because the Successful Bid was the Opening Qualified Bid, as soon as practicable after that determination, sign a counterpart of the revised Bid APA signed by the Successful Bidder or the Opening Qualified Bid, as the case may be, and deliver that counterpart to the Successful Bidder (the revised Bid APA or the Opening Qualified Bid signed by the Successful Bidder and the Liquidating Agent, the **"Final APA"**).

12.     <u>Sale Hearing</u>.

(a)     <u>Scheduling</u>. If there is a Successful Bidder, the Liquidating Agent shall schedule a hearing in the Court to confirm the Sale to Successful Bidder pursuant to the Final

PRINTED ON
RECYCLED PAPER
Page 62
Case: 09-52630-3 Doc# 0089     Filed: 05/04/10     Entered: 05/04/10 11:32:38     Page 62 of
64
ORIX Capital Markets, LLC, Creditor's Second
Amended Plan of Liquidation (May 4, 2010)

JMBM | Jeffer Mangels Butler & Marmaro LLP

APA (the **"Sale Hearing"**) to be held as soon as is practicable after the Sale; *provided*, in the discretion of the Proponent, the Sale Hearing may be adjourned or rescheduled without notice other than by an announcement in Court of the adjournment at or immediately before the then-scheduled Sale Hearing; *provided, further*, that, unless the Successful Bidder in its sole discretion otherwise agrees, if the Sale Hearing is not held and concluded within five Business Days after the Sale, the Closing will be postponed by the number of Business Days that elapse after that fifth day until the Sale Hearing is concluded.

(b)     If there is a Successful Bidder and there was at least one other Qualified Bidder at the Sale, at the Sale Hearing the Liquidating Agent shall identify the next highest or otherwise best Qualified Bid, if any, that was acceptable to the Proponent (the Qualified Bidder so identified, the **"Runner-Up Bidder"**).

(c)     The Proponent reserves the right in its sole discretion not to submit any bid to the Court for approval that is not acceptable to the Proponent.

(d)     Nothing in these Sale Procedures confers standing on any potential purchaser, including any Qualified Bidder, to seek relief from the Court for any alleged failure by the Liquidating Agent or the Proponent to comply with the provisions of these Sale Procedures or any order entered in connection herewith.

13.     <u>Closing</u>. The Closing of the Sale of the Sale Assets to the Successful Bidder pursuant to the Successful Bid and the Final APA shall occur in accordance with the Final APA (including any amendments or modifications thereto agreed by the Liquidating Agent and the Successful Bidder to which the Proponent, in its sole discretion, consents), but in no event (except as provided by Sections 12(a) (Scheduling) and 14 (Failure to Close) of these Sale Procedures) later than 30 calendar days after the Sale.

14.     <u>Failure to Close</u>. If, following a Sale Hearing at which the sale of the Sale Assets to the Successful Bidder pursuant to the Successful Bid and the Final APA is approved, that Successful Bidder fails to consummate that sale due to a breach or failure to perform on the part of that Successful Bidder, the Liquidating Agent may, but without any obligation to do so, with the consent of the Proponent in its sole discretion, deem the bid of the Runner-Up Bidder,

PRINTED ON
RECYCLED PAPER

if any, to be the Successful Bid and the Runner-Up Bidder to the Successful Bidder, and to consummate a sale of the Sale Assets to that new Successful Bidder pursuant to that new Successful Bid and its Final APA without further order of the Court, subject to adjustment of the date of the Closing to a date not sooner than (without that new Successful Bidder's consent) 20 calendar days after the date the Liquidating Agent notifies the new Successful Bidder that it has become so; *provided*, the Runner-Up Bidder will have no obligation to close that sale after the Outside Closing Date. If that failure to consummate the purchase is the result of a breach by the Successful Bidder, the Successful Bidder's Deposit will without further order of the Court be deemed forfeited to the Estate and the Estate will retain the right to pursue any and all remedies against that Successful Bidder.

15.  <u>Reservation of Rights and Control and Amendment of Sale Procedures</u>. The Proponent reserves the right, in its sole discretion to modify these Sale Procedures and have the Sale Assets offered for sale by the Liquidating Agent in any manner whatsoever as the Proponent may determine will result in the highest or otherwise best price for the Sale Assets (other than changing the manner of sale from a public auction sale), including, on reasonable notice to Prospective Bidders until Qualified Bidders are identified, and, thereafter, to Qualified Bidders, by verbal announcement at the Sale or at the Sale Hearing, or otherwise by facsimile or e-mail, (i) to extend, postpone, or adjourn the deadlines set forth in these Sale Procedures, including the Bid Deadline and Sale Date; and (ii) to cancel the Sale altogether.

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP